COPY

E-filing

1  LATHAM & WATKINS LLP
     John D. Minton (Bar No. 223823)
2  140 Scott Drive
   Menlo Park, CA 94025
3  Telephone: (650) 328-4600
   Facsimile: (650) 463-2600
4  Email: john.minton@lw.com

5  Attorneys for Defendant
   MICHAEL ZACCARO

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    OAKLAND DIVISION

11  PHARMACEUTICAL INVENTORIES, INC.          CASE NO. C07-05063
    d/b/a PHARMACEUTICAL RETURNS
12  SERVICE,

13            Plaintiff,                      **DECLARATION OF JOHN D. MINTON IN
                                              SUPPORT OF DEFENDANT MICHAEL
14      v.                                    ZACCARO'S MOTION TO COMPEL
                                              PRODUCTION OF DOCUMENTS FROM
15  MICHAEL ZACCARO and RETURNS R US          THIRD PARTY EXP PHARMACEUTICAL
    INC. d/b/a PHARMA LOGISTICS, LTD.,        SERVICES CORP.**
16
              Defendants.
17                                            Date:       November 6, 2007
                                              Time:       1:00 p.m.
18                                            Courtroom:  3, 3rd Floor
                                              Judge:      Hon. Saundra Brown Armstrong
19

20

21

22

23

24

25

26

27

28

I, John D. Minton, declare as follows:

1.     I am an associate at the law firm of Latham & Watkins LLP, counsel of record for Michael Zaccaro, plaintiff and counterclaim defendant in the above-captioned matter.  I have personal knowledge of the facts set forth below and if called as a witness could testify competently to them.

2.     A true and correct copy of the subpoena served by Michael Zaccaro on EXP Pharmaceutical Services Corp. ("EXP"), together with the cover letter provided therewith, is attached hereto as Exhibit A.

3.     A true and correct copy of the underlying complaint in this action is attached hereto as Exhibit B.

4.     A true and correct copy of the list identifying the more narrow set of representative screen prints sought by Michael Zaccaro with his subpoena is attached hereto as Exhibit C.

5.     A true and correct copy of the protective order entered in the United States District of the Northern District of Illinois to address the confidentiality concerns of the parties and third parties is attached hereto as Exhibit D.

6.     I understand that the parties' counsel have engaged in substantial meet and confer discussions in an effort to resolve the issues raised by the Subpoena.  Upon information and belief, Zaccaro counsel Matt Walch and EXP counsel Chico Meyers engaged in multiple phone discussions over July and August regarding the scope of the subpoena.  I am informed and believe that, while EXP produced one of the two categories of documents that Zaccaro requested with respect its Subpoena as modified by discussions with counsel, it refused to produce the second category of documents.  In particular, I am further informed and believe that EXP produced representative samples of reports that its pharmaceutical processing software generates, but refused to produce representative screen prints of that software in operation.

/ / /

/ / /

/ / /

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DECLARATION OF JOHN D. MINTON IISO DEFENDANT MICHAEL
ZACCARO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY EXP PHARMACEUTICAL SERVICES CORP.

1    I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct, and that this declaration was executed on October 1, 2007, in

3  Menlo Park, California.

4

5                                                        John D. Minton

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DECLARATION OF JOHN D. MINTON IISO DEFENDANT MICHAEL
ZACCARO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THIRD PARTY EXP PHARMACEUTICAL SERVICES CORP.

# EXHIBIT A

Matthew W. Walch
Direct Dial: (312) 876-7603
matthew.walch@lw.com

Sears    er, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois 60606
Tel: +312.876.7700  Fax: +312.993.9767
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

July 13, 2007

## VIA HAND DELIVERY

EXP Pharmaceutical Services Corp.
C/O Gus J. Changaris Or Person Authorized To Accept Service
48021 Warm Springs Boulevard
Fremont, California 94539

Re:    *Pharmaceutical Inventories, Inc., v. Zaccaro*, Case No. 05 6483

To Whom it May Concern:

Enclosed please find a subpoena issued to EXP Pharmaceutical Services Corp. ("EXP") in the above-captioned case. As described in Exhibit A, the subpoena seeks the production of documents sufficient to show the design and screen layouts of any pharmaceutical returns software owned by EXP as well as the production of a sample report generated by such software. In certain discovery responses served in the above-referenced case, the plaintiff has alleged that Mr. Zaccaro copied the "look and feel" of PRS's software by using certain fields, commands and functionality that are commonplace in the pharmaceutical returns industry. The requested information regarding the software program(s) used by EXP will help prove to PRS and its counsel that software within this industry has to incorporate certain fields, commands and functionality to serve the needs of the customer in this industry and that such fields, commands and functionality are not and cannot be owned by any one business in this industry.

Please note that we fully appreciate the potential highly confidential nature of the requested information, and to that end we have enclosed a copy of the Restricting Order entered by the court in this case. Pursuant to this Restricting Order, none of the parties in the underlying litigation will be able to see any information designated as Highly Confidential Information. Indeed, access to such information is limited to outside counsel for the parties, Independent Experts, court personnel and court reporters and all such persons are explicitly bound by the terms of the Restricting Order. For your information, Section 7.8 specifically addresses the application of the protective order to documents produced by non-parties to the litigation.

The subpoena also asks for the deposition of a company representative. Such a deposition would be necessary only if we have to verify the genuineness and establish the admissibility of any documents that EXP would produce in response to the subpoena. We would be happy to discuss a Rule 901 verification if that would be more convenient and if plaintiff's

CH\955511.1

July 13, 2007
Page 2

**LATHAM&WATKINS**LLP

counsel would agree to such a verification and otherwise agree to the admissibility of the information produced by EXP.

Please do not hesitate to call me if you want to discuss the subpoena or the enclosed Restricting Order any further.

Sincerely,

Matthew W. Walch

Enclosure

cc:    George Jackson (outside counsel for Pharmaceutical Inventories, Inc.)

CH\955511.1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT                    DISTRICT OF                    CALIFORNIA

PHARMACEUTICAL INVENTORIES, INC.          **SUBPOENA IN A CIVIL CASE**

V.

MICHAEL ZACCARO AND RETURNS R US          Case Number:[1]  05 C 6483 (N.D. Ill.)

TO:  EXP Pharmaceutical Services Corp.
     C/O Gus J. Changaris/Person Authorized To Accept Service
     48021 Warm Springs Boulevard
     Fremont, California  94539

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |
| *(Deposition for person most knowledgeable of authenticity of produced documents) | |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  505 Montgomery Street, Suite 2000 San Francisco, CA  94111 (to be recorded by stenographic means)* | DATE AND TIME 8/13/2007 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

PLEASE SEE EXHIBIT A ATTACHED HERETO.

| PLACE  505 Montgomery Street, Suite 2000 San Francisco, CA  94111 | DATE AND TIME 8/13/2007 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Matt W. W. , Attorney for Michael Zaccaro* | 7/13/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
MATTHEW W. WALCH, LATHAM & WATKINS LLP, 233. S. WACKER DRIVE, SUITE 5800, CHICAGO, IL 60606

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

'UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF CALIFORNIA

PHARMACEUTICAL INVENTORIES,
INC.
                        )
                   Plaintiff    )   05 C 6483 (N.D. III)
                        )   RETURN OF AUTHORIZED SERVICE
       -vs-               )
MICHAEL ZACCARO AND RETURNS
R US                       )   Letter, Subpoena and Restricting Order
               Defendant )

Received by 1-800-SERVE-EM on July 16, 2007 at 10:12 AM to be served on EXP Pharmaceutical
Services Corp., .

I, Kathy Watson, who being duly sworn, depose and say that on July 16, 2007 at 12:09 PM , I:

Served EXP Pharmaceutical Services Corp. by delivering a true copy of the Letter, Subpoena and
Restricting Order with the date and hour of service endorsed thereon by me, to Gus J. Changaris ,
authorized to accept service at 48021 Warm Springs Boulevard Fremont, CA 94539.

I am over the age of 18, have no interest in the above action, and am authorized to serve process in the
county in which the process was served.

Kathy Watson
1-800-SERVE-EM
800.737.8336
Job Serial Number: 2007227878
Reference: 05 C 6483 (N.D. III)

1-800-SERVE-EM

AO 88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHARMACEUTICAL INVENTORIES, INC., d/b/a PHARMACEUTICAL RETURNS SERVICE, | ) ) ) ) | |
| Plaintiff, | ) ) | **Case No. 05 C 6483** |
| v. | ) ) ) | **Judge Gottschall** **Magistrate Judge Ashman** |
| MICHAEL ZACCARO and RETURNS R US INCORPORATED d/b/a PHARMA LOGISTICS, LTD., | ) ) ) ) ) | |
| Defendants. | ) | |

## EXHIBIT A TO SUBPOENA DUCES TECUM

## INSTRUCTIONS AND DEFINITIONS

1.      The term "document," as used herein, shall mean all material defined in Federal Rule of Civil Procedure 34 and each and every writing or record of every type that is or has been in the possession, custody or control of a responding party or to which a responding party or its counsel has access, including without limitation correspondence, memoranda, stenographic or handwritten notes, drafts, studies, blueprints, journals, invoices, sales slips, vouchers, production records, service records, warranty records, catalogs, advertisements, bulletins, pamphlets, books, publications, pictures, films, voice or other recordings, maps, reports, storage discs or other data records.

2.      The phrase "referring or relating to," as used herein, shall mean all information, facts and/or documents that directly, indirectly or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to and/or are otherwise connected with the subject matter about which a request is being made.

3. The term "EXP," as used herein, shall mean EXP/Pharmaceutical Services Corp., as well as its agents, attorneys, representatives, employees, officers, directors, shareholders and any other person or persons acting for or purportedly acting on its behalf.

4. The words "and" and "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests any information that might be deemed outside their scope by any other construction.

5. The term "pharmaceutical returns software" shall mean any computer software that assists in performing any of the following functions with respect to the management of expired, short dated or recalled pharmaceuticals and physician samples: (1) receive; (2) count; (3) data capture; (4) inventory; (5) determine credit status; (6) determine waste status; (7) generate Returned Goods Authorizations; (8) create debit memo numbers; (9) reconcile credit transactions; (10) generate rebate checks; (11) generate credit letters; (12) generate credit reports; (13) generate inventory management reports; (14) interpret and apply manufacturer return policies; (15) store manufacturer returned goods policies; and (16) validate for credit or disposal.

6. Unless stated differently in any of the individual document requests, the relevant time frame for each document request is between 1994 and the present.

## SPECIFICATIONS

1. Training or user manuals for any pharmaceutical returns software owned or licensed by EXP.

2. Documents sufficient to show the overall design of any pharmaceutical returns software owned or licensed by EXP.

3. Documents sufficient to show representative computer screen layouts for any pharmaceutical returns software owned or licensed by EXP.

2

      4.     Representative sample reports generated by any pharmaceutical returns software owned or licensed by EXP.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# 05C 6483

PHARMACEUTICAL RETURN )
SERVICE, **FILED** )
*LAL* )
NOV 1 4 2005        Plaintiff, )
)
vs.    **MICHAEL W. DOBBINS** )
**CLERK, U.S. DISTRICT COURT** )
MICHAEL ZACCARO, an individual, )
)
Defendant. )

JUDGE COTTSCHALL

MAGISTRATE JUDGE ASHMAN

Case No.:

**JURY DEMAND**

## COMPLAINT FOR INJUNCTIVE RELIEF, COPYRIGHT INFRINGEMENT AND OTHER RELIEF

Plaintiff, Pharmaceutical Return Service ("PRS"), by and through its attorneys, Aronberg

Goldgehn Davis & Garmisa, for its Complaint against Defendant, Michael Zaccaro ("Zaccaro"),

states as follows:

### PARTIES

1.      Plaintiff PRS is an Illinois sole proprietorship with its principal place of business

located in Kane County, Illinois.  PRS is in the pharmaceutical return and inventory business.

John DeMars ("DeMars") is the President of PRS.

2.      At all times relevant to this action, Defendant Zaccaro was and is a citizen of the

State of Illinois and resides in this district.

### JURISDICTION AND VENUE

3.      Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C.

§§1331 and 1338 because this action arises under the laws of the United States, particularly 17

U.S.C. §§101, et seq., 15 U.S.C. §§1125 and 18 U.S.C. §1030.  Jurisdiction exists over all other

claims pursuant to 28 U.S.C. §§1367.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400. Personal jurisdiction and venue are proper because Zaccaro resides in this district, and a substantial part of the events giving rise to this action occurred in this district.

## FACTS COMMON TO ALL COUNTS

5.    On or about September 1990, DeMars and his brother, Kevin DeMars, began writing source code for computer software (the "PRS software") that would automate the inventory process for returns of prescription drugs to manufacturers and distributors for PRS. PRS is a service business that provides physical inventory and processing for credit of outdated pharmaceuticals and proper disposal of non-returnables for pharmacies. The typical inventory and returns service includes performing pharmacy inventory on-site and pulling a pharmacy's outdated pharmaceuticals and over the counter medicines which then go to the PRS office for processing and shipping to the respective manufacturers for pharmacy credit.

6.    In or about the end of 1992, DeMars and his brother, Kevin DeMars, completed the development of a first version of source code for the PRS software. The PRS software became operational at that time.

7.    DeMars installed the PRS software in the in-house processing department of PRS. Over the next year and a half, the processing department used the PRS software and gave DeMars feedback regarding any bugs or flaws or additional automation required. DeMars made changes to the PRS software accordingly.

8.    In or about 1992, PRS hired Zaccaro. Zaccaro was assigned to perform inventories, office work, phone sales and processing of outdated pharmaceuticals. Zaccaro did not aid in the development of the PRS software.

9.    In 1995, a revised version of the source code for the PRS Software that was operable in UNIX and DOS was completed.

2

10.     Upon information and belief, from in or about 1994 through in or about 1995, Zaccaro became interested in entering the pharmaceutical returns and inventory business. In order to do so, he required software to perform processing of outdated inventory and returns for his business.

11.     At sometime while Zaccaro was employed at PRS, Zaccaro obtained unauthorized access to the PRS source code for the PRS software in both UNIX and DOS and, without authorization from any person at PRS, copied the source code and the PRS software.

12.     In or about July, 1996, Zaccaro terminated his employment with PRS, without explanation or notice.

13.     Shortly after Zaccaro left PRS, Zaccaro created a pharmaceutical returns and inventory business. Upon information and belief, Zaccaro used the PRS source code and software that he had misappropriated in conjunction with the operation of his business.

14.     In or about 1996 or 1997, Zaccaro hired a programmer to change the look of the software and started "Returns".

15.     Upon information and belief, from 1997 through 2004, PRS began to lose customers to Zaccaro because he was selling and/or using PRS source code and software or software substantially similar to the misappropriated PRS software.

16.     In February of 2004, Zaccaro, who was running a company called "Returns R' Us, Inc. d/b/a Pharma Logistics, Ltd." ("Returns R' Us"), hired Dwight Arant ("Arant"), a business consultant.

17.     In or about May 2005, Zaccaro told Arant that while he was employed at PRS, he was interested in entering the pharmaceutical returns business. Zaccaro also told Arant that while he was employed at his previous employer [PRS], Zaccaro knew someone who could get into the UNIX operating system and the PRS software and take it, which would allow him to open his own business.

3

18.    In or about May 2005, Zaccaro admitted to Arant that he had taken the source code, all databases and software from PRS which Returns had been using, licensing and selling to several pharmacies, wholesalers, other returns services and hospitals.

19.    In June 2005, Arant contacted DeMars and informed him that Zaccaro had told him that he had taken the source code and software from PRS and used it to start his company.

20.    Zaccaro has been and is currently operating "Returns" using the source code and/or software that is a copy of or substantially similar to the PRS software and/or source code he misappropriated from PRS. Upon information and belief, Zaccaro plans on selling rights to the source code, software and Returns R' Us to other companies.

21.    As the creator and owner of the source code and software, PRS has an exclusive right to use and sell the PRS software. PRS has a legitimate interest in need of protection, in particular, an interest in protecting its software from being stolen, duplicated, licensed, used and/or sold without authorization by any company(ies) or person(s) other than PRS.

22.    If Zaccaro is allowed to continue to use and/or sell the stolen software or any unauthorized duplication thereof, PRS will be irreparably harmed. PRS has lost and continues to lose the ability to maintain exclusive use and sale of the PRS software.

23.    Since money damages are difficult to ascertain at this time, PRS does not have any adequate remedy at law.

24.    PRS will likely succeed on the merits of its claim that it has an exclusive right to use and sell the PRS software.

25.    PRS is, therefore, entitled to injunctive relief.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.    Enter an injunction enjoining Zaccaro from using, licensing and/or selling the PRS software;

B.    Enter an injunction enjoining Zaccaro from using, licensing and/or selling any software that is based upon or is a duplication of the PRS software;

4

C.    Enter an injunction enjoining Zaccaro from using, licensing and/or selling any software that uses or duplicates elements of the PRS software; and

D.    Enter such other relief the court deems just and appropriate.

## COUNT I
## (COPYRIGHT INFRINGEMENT – ZACCARO)

26.    PRS restates, realleges and incorporates by reference, Paragraphs 1-33 as if they were fully set forth herein.

27.    PRS is the owner of a valid copyright to the PRS software that has been registered with the United States Copyright Office, a copy of which registration is appended hereto as **Exhibit A**. The PRS software is an original piece of authorship fixed in a tangible medium of expression.

28.    Zaccaro is not licensed by PRS, and at all relevant times was not licensed by PRS to engage in the activities described herein.

29.    Zaccaro, on information and belief, intends to continue to, infringe PRS's copyright in the PRS software without Plaintiff's consent, in violation of 17 U.S.C. §§ 106 and 501.

30.    Said conduct by Zaccaro, on information and belief, was and is willfully done with knowledge of PRS' copyright.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.    Declare that Zaccaro has infringed PRS's copyright in PRS software;

B.    Order an accounting of all profits of Zaccaro and award PRS its actual and/or statutory damages, including increased damages for willful violation;

C.    Enter a permanent injunction under 17 U.S.C. § 502 enjoining Zaccaro, and anyone acting in concert with him, including all his or their employees, servants, agents, distributors and persons in active concert with them from using and/or selling the PRS software;

D.    Enter an injunction enjoining Zaccaro from using and/or selling any software that is the same as or substantially similar to the PRS copyright of its software;

E.     Enter an injunction enjoining Zaccaro from using and/or selling any software that uses elements that are the same as or substantially similar to the PRS copyright of its software;

F.     Award PRS its costs and attorneys' fees; and

G.     Enter such other relief the court deems just and appropriate.

## COUNT II
## (CLAIM FOR INJUNCTIVE RELIEF – RETURNS R US, INC., D/B/A PHARMA LOGISTICS, LTD.)

31.     PRS restates, realleges and incorporates by reference, Paragraphs 1-30 as if they were fully set forth herein.

32.     As the owner of the software, PRS has an exclusive right to use and sell the PRS software. PRS has a legitimate interest in need of protection, in particular, an interest in protecting its software from being stolen, duplicated, licensed, used and/or sold without authorization by any compan(ies) or person(s) other than PRS.

33.     If Zaccaro is allowed to continue to use, license and/or sell the stolen software or any unauthorized duplication thereof, PRS will be irreparably harmed. PRS has lost and continues to lose the ability to maintain exclusive use and sale of the PRS software.

34.     Since money damages are difficult to ascertain at this time, PRS does not have any adequate remedy at law.

35.     PRS will likely succeed on the merits of its claim that it has an exclusive right to use and sell the PRS software.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.     Enter an injunction enjoining Zaccaro from using, licensing and/or selling the PRS software;

B.     Enter an injunction enjoining Zaccaro from using, licensing and/or selling any software that is based upon or is a duplication of the PRS software;

C.     Enter an injunction enjoining Zaccaro from using, licensing and/or selling any software that uses or duplicates elements of the PRS software;

6

D.    Enter an injunction enjoining Zaccaro and Returns R' US from including the PRS software, any software that is based upon or is a duplication of the PRS software and any software that uses elements of the PRS software as part of transaction for the sale of Returns R' Us to any other entity;

E.    Enter such other relief the court deems just and appropriate.

## COUNT III
## (VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT)

36.    PRS repeats and realleges Paragraphs 1 through 30 above as if fully set forth herein.

37.    PRS operates "protected computers" within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, in that PRS' computers are used in interstate commerce and communication. 18 U.S.C. §1030 (e)(2)(B). The Computer Fraud and Abuse Act provides for a civil cause of action against anyone who:

(5)(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage;

18 U.S.C. §1030(a)(5)(B) and (C).

38.    Zaccaro has intentionally accessed PRS' computer system without authorization, and as a result, has caused damage to PRS' computer system through his use of PRS' computers without authorization.

39.    PRS has suffered irreparably, and continues to suffer irreparably as the PRS software, which was copied, has been used, licensed and sold to others, including PRS' competitors. Damages will continue unless and until Zaccaro and all those to whom he has licensed or sold the PRS software are enjoined, their access to PRS' computers is completely foreclosed and any and all information which they have accessed, and any copies of the same, are recovered.

40.     Though no adequate remedy at law exists in this instance because damages are

difficult to approximate, PRS has been damaged economically by Zaccaro's actions in excess of

$5,000.00.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the Court:

A.     Enter a temporary and/or permanent injunction, pursuant to 18 U.S.C. §1030(g), without bond, enjoining Zaccaro, and anyone acting in concert with him or on his behalf from accessing or attempting to access any computer, of PRS;

B.     Enter an order allowing PRS through the United States Marshals to confiscate any and all computers, discs, drives, software and other related devices from Zaccaro and impound same in order to determine to what extent Zaccaro has accessed PRS' computers and taken PRS' copyrighted, confidential and proprietary information and copied the same;

C.     Enter an order requiring Zaccaro to preserve any and all evidence of his unauthorized access to PRS' computers;

D.     Enter an order requiring the return of any and all information, in whatever format saved or copied, which Zaccaro has copied, downloaded, or transmitted as a result of his unauthorized access to PRS' computers;

E.     Enter an order awarding Plaintiff compensatory damages in excess of $100,000 for Zaccaro's wrongful actions;

F.     Enter an order awarding Plaintiff punitive damages in the amount of $10 million for Zaccaro's malicious, willful and wanton conduct; and

G.     Enter an order awarding Plaintiff's its attorneys' fees and costs, and such other and further relief as this Honorable Court finds reasonable.

## COUNT IV
## (VIOLATIONS OF COMPUTER CRIME PREVENTION LAW)

41.     PRS repeats and realleges Paragraphs 1 through 30 above as if fully set forth

herein.

42.     The Illinois Computer Crime Prevention Law provides, in relevant part, as

follows:

Computer Tampering.

(a) A person commits the offense of computer tampering when he knowingly and without authorization of a computer's owner, as defined by Section 15-2 of this Code, or in excess of the authority granted to him:

8

* * *

(1) Accesses or causes to be accessed a computer or any part thereof, or a program or data;

(2) Accesses or causes to be accessed a computer or any part thereof, or a program or data, and obtains data or services;

(3) Accesses or causes to be accessed a computer or any part thereof, or a program or data, and damages or destroys the computer or alters, deletes or removes a computer program or data.

720 ILCS 5/16D-3(a)

43.    A civil remedy exists under the Computer Crime Prevention Law, 720 ILCS

5/16D-3(c), to obtain whatever appropriate relief is necessary.

44.    In violation of the Computer Crime Prevention Law, Zaccaro (1) accessed or

caused to be accessed one or more of PRS' computers, programs and data, (2) accessed or caused

to be accessed one or more of PRS' computers, programs and data, and obtained data which was

contained within PRS' computer, and (3) damaged, destroyed, removed, or deleted data

belonging to PRS, which was contained within PRS' computer.

45.    As a result of Zaccaro's violations of the Illinois Computer Crime Prevention

Law, PRS has suffered, and continues to suffer, loss and irreparable harm, as set forth above for

which no adequate remedy at law exists.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, respectfully requests as

follows:

A.    Enter a temporary and/or permanent injunction, pursuant to 18 U.S.C. §1030(g), without bond, enjoining Zaccaro, and anyone acting in concert with him or on his behalf from accessing or attempting to access any computer, of PRS;

B.    Enter an order allowing PRS through the United States Marshals to confiscate any and all computers, discs, drives, software and other related devices from Zaccaro and impound same in order to determine to what extent Zaccaro has accessed PRS' computers and taken PRS' copyrighted, confidential and proprietary information and copied the same;

C.    Enter an order requiring Zaccaro to preserve any and all evidence of his unauthorized access to PRS' computers;

9

D.    Enter an order requiring the return of any and all information, in whatever format saved or copied, which Zaccaro has copied, downloaded, or transmitted as a result of his unauthorized access to PRS' computers;

E.    Enter an order awarding Plaintiff compensatory damages in excess of $100,000 for Zaccaro's wrongful actions;

F.    Enter an order awarding Plaintiff punitive damages in the amount of $10 million for Zaccaro's malicious, willful and wanton conduct; and

G.    Enter an order awarding Plaintiff its attorneys' fees and costs, and such other and further relief as this Honorable Court finds reasonable.

## COUNT V
## (VIOLATION OF ILLINOIS TRADE SECRETS ACT - ZACCARO)

46.    PRS restates, realleges and incorporates by reference, Paragraphs 1-33 as if they were fully set forth herein.

47.    The PRS software, created and owned by PRS, is a trade secret of PRS.

48.    Zaccaro misappropriated the PRS software through improper acquisition, disclosure and/or use of the PRS software.

49.    PRS has been damaged by Zaccaro's misappropriation of the PRS software.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.    Enter judgment for damages against Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, in an amount to be proven at trial;

B.    Enter an injunction enjoining Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, from using and/or selling the PRS software;

C.    Enter an injunction enjoining Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, from using and/or selling any software that is based upon or is a duplication of the PRS software;

D.    Enter an injunction enjoining Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, from using and/or selling any software that uses or duplicates elements of the PRS software;

E.    Award all costs and attorneys' fees to PRS; and

10

F.    Enter such other relief the court deems just and appropriate.

## COUNT VI
## (VIOLATION OF SECTION 43(A) OF THE LANHAM ACT (15 U.S.C. §§1125(A)) – ZACCARO)

50.    PRS restates, realleges and incorporates by reference, Paragraphs 1-33 as if they were fully set forth herein.

51.    Zaccaro has misappropriated the PRS software and misrepresented it or an unauthorized copy that is substantially similar to the PRS software or elements thereof as his own.

52.    In doing so, Zaccaro has used a false designation of the origin of the software he has used and/or sold.

53.    Zaccaro has used a false designation of the origin of the software he has used and/or sold in interstate commerce.

54.    Zaccaro has used and/or sold the software in connection with goods or services.

55.    The designation has caused confusion, mistake or deception as to the origin, sponsorship or approval of Zaccaro's goods, services or commercial activities by other persons and/or entities.

56.    PRS has been damaged as a result.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.    Enter judgment for damages against Zaccaro for all profits he or any company owned by him has obtained resulting from any violation of 15 U.S.C. §§1125(a), in an amount to be proven at trial;

B.    Enter judgment for damages against Zaccaro for all other damages sustained by PRS as a result of any violation of 15 U.S.C. §§1125(a), in an amount to be proven at trial;

C.    Award all costs and attorneys' fees to PRS; and

D.    Enter such other relief the court deems just and appropriate.

## COUNT VII
## (VIOLATION OF SECTION THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT – ZACCARO)

57.    PRS restates, realleges and incorporates by reference, Paragraphs 1-33 as if they were fully set forth herein.

58.    Zaccaro has stolen the PRS software and misrepresented it or an unauthorized copy of the PRS software or elements thereof as his own.

59.    Zaccaro has made false, misleading or deceptive statements regarding PRS' services to several of PRS' customers.

60.    In doing so, Zaccaro has disparaged the services or business of PRS by a false or misleading representation of fact.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.    Enter an injunction enjoining Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, from using and/or selling the PRS software and/or any duplication of or software resembling the PRS software;

B.    Award all costs and attorneys' fees to PRS; and

C.    Enter such other relief the court deems just and appropriate.

## COUNT VIII
## (BREACH OF FIDUCIARY DUTY –ZACCARO)

61.    PRS restates, realleges and incorporates by reference, Paragraphs 1-33 as if they were fully set forth herein.

62.    Zaccaro, as a former employee of PRS, owed and continues to owe PRS a fiduciary duty to PRS.

63.    In misappropriating the PRS software or elements thereof, making an unauthorized duplication of the PRS software, and/or selling the stolen PRS software or an unauthorized duplication, Zaccaro has breached his fiduciary duties to PRS.

12

64.    PRS has been damaged as a direct and proximate result of Zaccaro's breach of

fiduciary duty.

WHEREFORE, Plaintiff, Pharmaceutical Return Service, requests that the court:

A.    Enter judgment for damages against Zaccaro in an amount to be proven at trial; and

B.    Enter such other relief the court deems just and appropriate.

### JURY DEMAND

Plaintiff requests a jury demand on all issues so triable.

PHARMACEUTICAL RETURN SERVICE

By: _____
One of its attorneys

Dated:  November ___, 2005

John M Riccione
William J. Serritella, Jr.
Elvis D. Gonzalez
Aronberg Goldgehn Davis & Garmisa
Attorneys for Pharmaceutical Return Service
One IBM Plaza - Suite 3000
Chicago, Illinois 60611
(312) 828-9600

375039.5

13



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM TX**
For a Literary Work
UNITED STATES COPYRIGHT OFFICE
REGIS

**TX 1 – 159 – 722**

EFFECTIVE DATE OF REGISTRATION

| 8 | 29 | 05 |
|---|---|---|
| Month | Day | Year |

---

ARATE CONTINUATION SHEET

**1**

TITLE OF THIS WORK ▼

Processing Software for Outdated Pharmaceuticals

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical serial or collection give information about the collective work in which the contribution appeared    Title of Collective Work ▼

If published in a periodical or serial give    Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**a** NAME OF AUTHOR ▼

Kevin Demars

DATES OF BIRTH AND DEATH
Year Born ▼ 9/11/1965    Year Died ▼

Was this contribution to the work a work made for hire ?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions

NATURE OF AUTHORSHIP    Source Code    Briefly describe nature of material created by this author in which copyright is claimed ▼

**b** NAME OF AUTHOR ▼

Pharmaceutical Inventories Inc

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire ?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes" see detailed instructions

NATURE OF AUTHORSHIP    Source Code    Briefly describe nature of material created by this author in which copyright is claimed ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire ?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions

NATURE OF AUTHORSHIP    Briefly describe nature of material created by this author in which copyright is claimed ▼

**NOTE**

Under the law the author of a 'work made for hire' is generally the employer not the employee (see instructions) For any part of this work that was 'made for hire' check 'Yes' in the space provided give the employer (or other person for whom the work was prepared) as 'Author' of that part and leave the space for dates of birth and death blank

---

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED    This information must be given    2001    ◀ Year    in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK    Complete this information ONLY if this work has been published

Month ▶    Day ▶    Year ▶    ◀ Nation

---

**4**

COPYRIGHT CLAIMANT(S)    Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Pharmaceutical Inventores Inc
443 W Fullerton
Elmhurst IL 60126

APPLICATION RECEIVED
AUG 29 2005
ONE DEPOSIT RECEIVED
AUG 29 2005
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

See instructions before completing this space

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Written Assignment from Kevin Demars to Pharmaceutical Inventories Inc on 8/22/05

**EXHIBIT A**

---

MORE ON BACK ▶    Complete all applicable spaces (numbers 5-11) on the reverse side of this page
See detailed instructions    Sign the form at line 10

DO NOT WRITE HERE
Page 1 of 2 pages

Amended by C O  from phone call to Brian
Sodikoff on September 15, 2005

| EXAMINED BY | | FORM TX |
|---|---|---|
| CHECKED BY | | |

☐ CORRESPONDENCE
   ☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE  CONTINUATION SHEET**

---

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is  Yes  why is another registration being sought? (Check appropriate box)▼
a  ☐ This is the first published edition of a work previously registered in unpublished form
b  ☐ This is the first application submitted by this author as copyright claimant
c  ☐ This is a changed version of the work, as shown by space 6 on this application
If your answer is  Yes  give   **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

---

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation
a  Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼
  Source Code written before 1999  as outlined in table accompanying application

b  Material Added to This Work Give a brief  general  statement of the material that has been added to this work and  in which copyright is claimed▼
  Source Code written after 1999 - 2000  as outlined in table accompanying application - New and revised programming text

**6**

See instructions
before completing
this space

---

## — space deleted —

**7**

---

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS** A signature on  this form  at space 10  and a check in one
of the boxes here in space 8 constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and
under the conditions and limitations prescribed by the regulations of the Copyright Office (1) copies of the work identified in space 1 of this application in Braille (or similar tactile
symbols)  or (2) phonorecords embodying a fixation of a reading of that work  or (3) both

a  ☐ Copies and Phonorecords          b  ☐ Copies Only          c  ☐ Phonorecords Only

See instructions

**8**

---

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account
Name ▼                                    Account Number ▼

**9**

---

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent   Name/Address/Apt/City/State/ZIP▼
Brian J  Sodikoff
Welsh & Katz  Ltd
120 S  Riverside Plaza, 22nd Floor,  Chicago, IL  60606
                    Area Code and Telephone Number   ▶

Be sure to
give your
daytime phone
◀ number

---

**CERTIFICATION\*** I the undersigned  hereby certify that I am the
                                        Check only one▶  ☐ author
                                                          ☐ other copyright claimant
                                                          ☐ owner of exclusive right(s)
                                                          ☒ authorized agent of  Pharmaceutical Inventories  Inc
of the work identified in this application and that the statements made                Name of author  or  other copyright claimant  or owner of exclusive right(s) ▲
by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date
Brian J  Sodikoff                                                                  date ▶  8-23-05

☞  Handwritten signature (X) ▼

**10**

---

| **MAIL CERTIFI-CATE TO** | Name ▼ |
|---|---|
| | Brian J  Sodikoff |
| | Welsh & Katz, Ltd |
| Certificate will be mailed in window envelope | Number/Street/Apartment Number ▼ |
| | 120 S  Riverside Plaza  22nd Floor |
| | City/State/ZIP ▼ |
| | Chicago  IL  60606 |

**11**

17 U S C  section 506(e)  Any person who knowingly makes a  false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in
connection with the application  shall be fined not more than $2 500

# EXHIBIT C

## Walch, Matthew (CH)

| | |
|---|---|
| **From:** | Walch, Matthew (CH) |
| **Sent:** | Monday, August 06, 2007 4:56 PM |
| **To:** | 'Chico Myers' |
| **Subject:** | RE: Zaccaro Subpoena; EXP Response |
| **Attachments:** | dr mww zaccaro sample screen outline(961679_2_CH).DOC |

Dear Mr. Myers:

Following up on our conversation today, I have attached a list of representative screen print information that we are looking for in addition to the reports that you have already provided.  Please contact me if you have any questions regarding these descriptions or need further clarification on what we are looking for.

Thanks,

**Matthew W. Walch**

**LATHAM & WATKINS** LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Direct Dial: +1.312.876.7603
Fax: +1.312.993.9767
Email: matthew.walch@lw.com
http://www.lw.com

---

**From:** Chico Myers [mailto:chicolaw@worldnet.att.net]
**Sent:** Thursday, July 26, 2007 3:57 PM
**To:** Walch, Matthew (CH)
**Cc:** Alexander P. Myers
**Subject:** Zaccaro Subpoena; EXP Response

Dear Mr. Walch:

   This e-mail follows our conversation of a few minutes ago.  Attached is the EXP response to the Subpoena along with 11 reports generated from the EXP software.  Please review and contact me at your earliest convenience.

   Chico

Chico Myers
Myers, Hawley, Morley, Myers & McDonnell
166 Main Street
Los Altos, CA 94022
Tel. 650-948-1600
Fax. 650-949-3581
e-mail: chicolaw@att.net

**SAMPLE SCREEN PRINTS**

1.    **Facility and/or Wholesaler Information**

This screen contains information about the pharmacy, facility or wholesaler being processed, including Name, Address, City, State, Zip, Phone Number, Fax Numbers, Contact Names, Contact Titles, DEA Number and may contain additional fields

2.    **Manufacturer Direct Account Numbers**

Pharmacies purchase certain items direct from the manufacturer. These direct account numbers may be identified and collected in the software. This screen may contain the manufacturer's information and the direct account number used by the pharmacy.

3.    **Jobs/Orders**

Lists the Jobs/Orders that were processed or are going to be processed. Usually identified by a Job/Order or Customer Number.

4.    **Data Entry**

This is where processors spend most of their time. At this screen, NDC number, expiration date, lot number, cost (perhaps) and/or quantity may be entered or collected either by 10 key data entry or scanning. May display information about the drug item including Description, Dosage Form, Package Size, Manufacturer, etc.

5.    **Reports**

Screen where the user would select the reports to be printed.

6.    **Manufacturer Information**

This will include the names of pharmaceutical manufacturers and may also include a list of companies where the expired goods will be returned. It may also include name, address, phone numbers, fax numbers, and other contact info.

7.    **Manufacturer Outdate Policies**

This is the screen where the returns company may enter the policies that are established by the manufacturer. Included here may be details like how many months past expiration are acceptable for return, does the manufacturer accept partial containers, do they accept indated product, etc.

8.    **Manufacturer/RGA Return Instructions**

Each manufacturer has specific instructions to follow when a packing list is printed by their processing software. These instructions may tell the employee what to do with the product and this information appears on the packing list.

9.    **Drug Information**

Each company uses some type of drug database either provided by Micromedex (Redbook), First Data Bank and others. This screen contains that drug information including NDC number, drug name, package size, pricing, dosage form, previous NDC number, DEA Number (if applicable) and other fields.

10.    **Disposal Codes**

This is the screen where a company may identify their disposal codes that are applied to drugs in their drug database.

11.    **Re-sequencing Jobs/Lines**

When an item is deleted by a user, the item may no longer be seen but there may be a place holder for that item depending on the nature of the program. Running this feature may remove that space and then reorder the lines.

12.    **Create Merge/Backup File**

This feature relates to backing up data that has been entered by one person on a non-networked computer. Data may also need to be merged if multiple entries are made.

# EXHIBIT D

*HC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHARMACEUTICAL INVENTORIES, )
INC., d/b/a PHARMACEUTICAL )
RETURNS SERVICE, )          Case No. 05 C 6483
          )          Judge Gottschall
          Plaintiff, )          Magistrate Judge Ashman
          )
          v. )
MICHAEL ZACCARO, an Individual, and )
RETURNS R US, INCORPORATED d/b/a )
PHARMA LOGISTICS, LTD. )
          )
          Defendant. )
          )

RESTRICTING ORDER

This matter having come before the Court on the separate motions of Plaintiff

Pharmaceutical Inventories, Inc. d/b/a Pharmaceutical Returns Service ("PRS") and Defendant

Michael Zaccaro ("Mr. Zaccaro") for entry of a restricting order, the Court hereby holds pursuant

to Fed. R. Civ. P. 26(c) and Local Rule 26.2 that certain documents or other information or

materials in the encaptioned lawsuit, that have been or will be exchanged in discovery or

otherwise, are confidential and/or proprietary or contain confidential and/or proprietary

information. These documents, materials and information are properly usable by the other

parties solely in connection with such lawsuit and should otherwise be kept and remain

confidential through the course of the litigation and thereafter and not be used for any other

purpose. The following restrictive provisions govern certain documents or other information and

materials that are confidential and/or proprietary, or that contain confidential and/or proprietary

information as defined below, be, and hereby are, imposed upon all discovery and litigation

proceedings described herein, whether such discovery and litigation proceedings be directed at a

party to the litigation or at any other person or entity. The parties have agreed on this form of the Restricting Order.

## I.    DEFINITIONS

1.1.    When used herein, the word "document" means all written, recorded, or graphic matter whatever, including but not limited to interrogatory answers, responses to requests for admission, documents produced in response to document requests or voluntarily, including writings, drawings, graphs, charts, maps, recordings or other materials within the contemplation of Fed. R. Civ. P. 34, deposition testimony, deposition transcripts and exhibits, trial exhibits, hearing or trial transcripts, any portion or summary of any of the foregoing, and any other papers that quote from, reflect, reveal or summarize any of the foregoing.

1.2.    "Confidential Information" means such information that is used by a party in, or pertaining to, its business or its personal dealings, which information is not generally known and which that party would normally not reveal to third parties or, if disclosed, would require such third parties to maintain in confidence. Confidential Information includes, but is not limited to, the following:

    (a)    Documentation relating to copyrights owned by the parties to this action, and any assignments of the copyrights;

    (b)    Documents relating to licenses of any of the exclusive rights in the parties' Software or Source Code;

    (c)    Other private, confidential and/or proprietary information that the parties believe in good faith should be kept Confidential.

1.3.    When used herein, "Confidential Material" means any and all documents or things that contain, reflect or reveal Confidential Information.

1.4.    When used herein, "Highly Confidential Information" means particularly sensitive technical, financial, and business documents, information, and material, both business

2

and personal that relate to proprietary information that the producing party reasonably believes is

of such nature and character that disclosure of such information would be harmful to the

producing party. Highly Confidential Information includes, but is not limited to, the following:

    (a)    The pharmaceutical returns processing software utilized by Returns "R" Us, Inc., d/b/a Pharma Logistics ("the Pharma Logistics Software")'

    (b)    The pharmaceutical returns processing software utilized by PRS ("the PRS Software");

    (c)    Documentation related to any modifications to the Pharma Logistics Software and/or the PRS Software;

    (d)    All design documentation for the Pharma Logistics Software and the PRS Software;

    (e)    All current and prior versions of the Pharma Logistics Software source code and the PRS Software source code;

    (f)    Documentation related to work performed on the Pharma Logistics Software;

    (g)    The parties' customer files;

    (h)    Files on the hard drives of the parties' personal, home and business computers, and DeMars' business computers, to the extent that they contain any of the foregoing information;

    (i)    Income tax returns;

    1.5.    When used herein, "Highly Confidential Material" means any and all

documents or things that contain, reflect or reveal Highly Confidential Information.

    1.6.    When used herein, the term "lawsuit" shall include the above-captioned

action, and any ancillary proceedings such as those brought in connection with subpoenas to

non-parties, including without limitation, motions to compel or motions for protective orders by

or in connection with subpoenas to non-parties.

3

2.    **USE OF INFORMATION AND MATERIAL**

All Confidential and Highly Confidential Information or Material discovered or

produced in this lawsuit shall be used by the receiving party solely for the prosecution and/or

defense of the lawsuit and for purposes of evaluation of settlement and for settlement

negotiations, and not for any other purpose, including without limitation, any competitive or

business purpose. Nothing contained herein shall restrict or prevent any party from disclosing or

otherwise using any information or documents not obtained under this Stipulation, in which case

this Stipulation shall not apply to such information or documents

3.    **DESIGNATION OF CONFIDENTIAL OR HIGHLY**
      **CONFIDENTIAL INFORMATION OR MATERIAL**

3.1.    <u>Standard Designation Procedure</u>. Confidential Information and Material

disclosed or discovered in this lawsuit may be designated by the counsel of the disclosing party

as such and thus made subject to the limitations of this Order. Except for Confidential

Information disclosed during the course of a deposition or hearing in this lawsuit, Confidential

Information shall be so designated in writing by the counsel for the party making the designation

prior to or at the time of the disclosure of such information. Confidential Material shall be so

designated by stamping or otherwise placing on the face of the document(s) the legend "[PRS or

ZACCARO or PHARMA LOGISTICS or THIRD-PARTY] CONFIDENTIAL

INFORMATION: SUBJECT TO RESTRICTING ORDER." All things containing Confidential

Information that cannot be conveniently labeled shall be designated as Confidential by letter to

the receiving party.

3.2.    <u>Highly Confidential Information</u>. A party may further designate certain

categories of Confidential Information, specified in paragraph 1.4 above, as Highly Confidential

Information if the counsel for the disclosing party in good faith believes that such a designation

is necessary to prevent the party from potentially incurring serious economic, competitive injury, or an unwarranted invasion of privacy. Highly Confidential Material disclosed or discovered in this lawsuit may be designated by the counsel of the disclosing party as such and thus made subject to the limitations of this Order. Highly Confidential Information shall be so designated in writing. Highly Confidential Material shall be so designated by stamping or otherwise placing on the face of the document(s) the legend "[PRS or ZACCARO or PHARMA LOGISTICS or THIRD-PARTY] HIGHLY CONFIDENTIAL: ATTORNEYS' EYES ONLY." All things containing Highly Confidential Information that cannot be conveniently labeled shall be designated as Highly Confidential by letter to the receiving party.

      3.3.   Copies and Derivative Items. Any copy made of any document or thing so designated, or any document or thing created (e.g., any abstract, summary, memorandum or exhibit) containing information designated pursuant to this Order shall bear on its face the appropriate legend specified in paragraphs 3.1 and 3.2. All things containing Confidential or Highly Confidential Information that cannot be conveniently labeled shall be designated as such by letter to the receiving party.

      3.4.   Inspections. If, during the course of discovery in this action, a party hereto, or its representative, is authorized to inspect another party's facilities, any documents or things generated as a consequence of any such inspection shall be deemed by the inspecting party to be Highly Confidential Information and shall be treated as such.

      3.5.   Designation of Information Disclosed during Depositions or Hearings. Confidential or Highly Confidential Information disclosed during the course of a deposition or hearing in this lawsuit, including the use of documents or materials designated as Confidential or Highly Confidential at any depositions or hearing, shall be so designated by advising other

parties and the court reporter at the conclusion of such deposition or hearing that the information

disclosed is confidential and that the transcript, or a portion thereof, should be treated as

Confidential or Highly Confidential under this Order and by instructing the court reporter at the

conclusion of the deposition or hearing to note the appropriate designation on the transcript.

Further, a party may also designate a transcript, or portion thereof, as Confidential or Highly

Confidential by advising the other parties and the court reporter, in writing, of such designation

within 30 days after receipt of the transcript and instructing the court reporter to add the

appropriate legend to the transcript. During such 30-day period, all deposition and hearing

transcripts shall be treated as Highly Confidential under paragraph 4 herein.

      3.6.   Court filings. Documents containing Confidential or Highly Confidential

Information or Material shall NOT be filed with the Clerk of Court. Such documents requiring

the Court's review shall be submitted to chambers *in camera* in a sealed envelope bearing the

caption of the case, case number, the title of the motion or response to which the submitted

confidential information pertains, and the name and telephone number of counsel submitting the

documents. A redacted copy of the pleading shall be filed with the Clerk of Court for the record.

The parties are ordered to retain copies of all documents containing Confidential or Highly

Confidential Information or Material that are provided in discovery under this Order. The

disclosing party shall maintain the original documents intact for any further review.

## 4.    TREATMENT OF CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION AND MATERIAL

      4.1.   Confidential Information and Material. The only individuals who shall be

permitted to learn of Confidential Information or to view another party's or non-party's

Confidential Material produced pursuant to this Order or to learn about their contents or

substance, other than the person or entity producing or providing such Confidential Information

or Material and the other parties to the lawsuit, are:

    4.1.1.  Any trial, appellate, or magistrate judge of any Court presiding over the

lawsuit or any proceeding ancillary to the lawsuit, and any clerk, secretary, reporter or other

personnel employed by such Court;

    4.1.2.  Outside and inside legal counsel for the parties who are participating in the

prosecution or defense of the lawsuit, and legal assistants, clerical personnel, secretaries and

other regular or temporary employees or agents working under the direction of such attorneys

and to whom it is necessary that Confidential Information or Material be disclosed;

    4.1.3.  Stenographic reporters, copying services, and imaging services in the

lawsuit;

    4.1.4.  Independent consultants or experts advising the parties' outside legal

counsel concerning the lawsuit (and only when essential to the experts' or consultants' activities

in connection therewith), including any person designated or to be designated as a controlled

expert witness in the lawsuit;

    4.1.5.  Mock jurors, focus group members, and the like selected by counsel or

trial consultants or jury consultants in preparation for proceedings in the lawsuit;

    4.1.6.  Employees of each party who have a legitimate need to know or review

the Confidential Information or Material in connection with this lawsuit;

    4.1.7.  Any former employee of the designating party or any former employee of

such party who was involved with the matters the item is directed to at the time the events to

which the item is directed occurred.

4.1.8.  Any individual who authored or received the item prior to its production to the receiving party.

4.2.    Highly Confidential Information and Material.  The only individuals who shall be permitted to learn of Highly Confidential Information or to view another party's or non-party's Highly Confidential Material produced pursuant to this Order or to learn about their contents or substance, other than the person or entity producing or providing such Highly Confidential Information or Material, are:

4.2.1.  Persons described in subparagraph 4.1.1;

4.2.2.  Outside legal counsel for the parties who are participating in the prosecution or defense of the lawsuit, and legal assistants, clerical personnel, secretaries and other regular or temporary employees or agents working under the direction of such attorneys and to whom it is necessary that Highly Confidential Information or Material be disclosed;

4.2.3.  Persons described in subparagraph 4.1.3;

4.2.4.  Persons described in subparagraph 4.1.4;

4.2.5.  Any individual who authored or received the item prior to its production to the receiving party.

4.3.    Except for the persons authorized by this paragraph 4, no other employees, agents or representatives of any party, nor any other persons or entities, shall be permitted access to any Confidential or Highly Confidential Information or Material.

4.4.    All persons to whom Confidential or Highly Confidential Information or Material are disclosed or given shall maintain the confidentiality of same, subject to the terms of this Order.

8

4.5.    Except for persons described in subparagraphs 4.1.1, 4.1.2, 4.1.3, 4.1.6,
4.1.8, 4.2.1, 4.2.2, 4.2.3, and 4.2.5 above, all persons to whom any Confidential or Highly
Confidential Information or Material are disclosed shall, prior to any disclosure to them, execute
a "Restricting Agreement" in the form attached hereto as Exhibit A. Said signed agreement shall
be retained by counsel for the receiving party until termination of the lawsuit, or until such copy
is reasonably requested by the designating party for use in an investigation of a violation of this
Restricting Order.

4.6.    Before any disclosure of Confidential Information or Material to any
person described in subparagraph 4.1.5, any such person shall execute a "Non-Disclosure
Agreement" in the form attached as Exhibit B. Said signed agreement shall be retained by
counsel for the receiving party until termination of the lawsuit, or until such copy is reasonably
requested by the designating party for use in an investigation of a violation of this Restricting
Order. No documents or physical things embodying Confidential Information or Material shall
be left in the possession of any such person.

4.7.    In the event counsel for any party determines that any person other than
those referred to in this paragraph 4 should have access to Confidential or Highly Confidential
Information or Material, counsel shall confer with counsel for all other parties in an effort to
resolve the matter. In the absence of agreement, any party may move the Court to allow such
access.

4.8.    Nothing shall prevent disclosure of an item designated as Confidential or
Highly Confidential Information or Material to any entity by the party who designated such item
as Confidential or Highly Confidential.

4.9.    Nothing shall prevent disclosure beyond the terms of this Order if the party designating the information consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders such disclosure.

4.10.    The receiving party and its counsel shall incur no liability for disclosures made prior to notice of any designation of confidentiality, except for the 30-day period described in Paragraph 3.5.

4.11.    Nothing in this Order shall prevent or otherwise restrict any counsel from rendering advice to counsel's client and, in the course thereof, relying generally on counsel's examination of materials designated confidential under this Order; provided, however, that in rendering such advice and otherwise communicating with such client, counsel shall not make a specific disclosure of any materials or information so designated as Highly Confidential Information.

4.12.    In the event that any person in receipt of Confidential or Highly Confidential Information or Material shall receive a written request, subpoena, or Court Order seeking disclosure of such information, such person shall immediately upon receipt of such request, subpoena or Court Order, notify counsel for the designating party of the request, subpoena or Court Order, and shall provide counsel for the designating party with a copy of the same.

4.13.    All persons described in subparagraph 4.1.4 to whom any Highly Confidential Information or Material is disclosed shall not accept employment with or provide any services to either party or any third party in direct competition with either party for one (1) year following the termination of this lawsuit.

5.    **GREATER PROTECTION AND LIMITATION OF ACCESS**

10

5.1.    Nothing contained in this Order shall constitute a waiver of any party's right to assert that particular Confidential or Highly Confidential Information or Material is entitled to greater protection and/or limitation of access than afforded by this Order, including an assertion that certain such information or materials should not be produced at all.

5.2.    In the event that counsel for any party asserts that Confidential or Highly Confidential Information or Material is entitled to such greater protection and/or limitation of access, counsel shall confer with counsel for all other parties in an effort to resolve the matter. If resolved by agreement, counsel shall submit a stipulated form of Order to the Court reflecting any terms of agreement providing any such greater protection or limitations of access than otherwise provided by this Order. In the absence of agreement, any party may move the Court for an Order further protecting, limiting or denying access.

### 6.    INFORMATION DESIGNATED IMPROPERLY

6.1.    The restrictions set forth in this Order shall not apply to:

6.1.1.    Any information which at the time of disclosure is available to the public;

6.1.2.    Any information which after disclosure becomes available to the public through no act, or failure to act, on behalf of the receiving party, its counsel or independent consultant; and

6.1.3.    Any information which the receiving party, its counsel or independent consultants can show (i) was lawfully known by the receiving party before it was disclosed by the disclosing party, (ii) as a matter of written record was independently developed by the receiving party, (iii) was obtained from the furnishing party without having been identified as Confidential or Highly Confidential Information, or (iv) was received after the time of disclosure hereunder from a third party having the right to make such disclosure and was not required to be held in confidence.

11

6.2.    Any party or an interested member of the public may challenge any
designation of confidentiality by giving written notice to the designating party (which notice
shall specify with particularity the document or other matter pursuant to which the challenge is
made). Within ten (10) days of receipt of such notice, counsel for the party that produced the
material must determine whether to withdraw the designation. If the designation is withdrawn,
counsel for the designating party shall give written notice of the change and shall substitute
undesignated copies of the items. If counsel for the designating party does not withdraw the
designation, the party making the challenge may file a motion with the Court with respect
thereto. The parties agree that before seeking any relief from the Court they will make a good
faith effort to resolve any disputes concerning the appropriate treatment of such materials. Until
this Court enters an order changing the designation, the material shall be treated in accordance
with their initial designation.

6.3.    No party shall be obligated to challenge the propriety or correctness of the
designation of information as Confidential or Highly Confidential Information or Material and a
failure to do so shall not preclude a subsequent challenge to such status. The burden of proof
with respect to the propriety or correctness in the designation of information or material as
Confidential or Highly Confidential shall rest on the designating party, except that the burden of
proving the exceptions set forth in Paragraph 6.1 shall rest on the party asserting the exceptions.

6.4.    A party that inadvertently fails to designate Confidential or Highly
Confidential Information or Material at the time of its production shall have thirty (30) days
thereafter in which to correct its failure, or for good cause shown after the expiration of the thirty
days. Such correction, and notice thereof, shall be made in writing, accompanied by substitute

12

copies of each affected item, designated as described above, or any claim of confidentiality under this Order will be deemed waived.

      6.5.    If a producing party inadvertently discloses to a receiving party information that is privileged or otherwise immune from discovery, said producing party shall promptly upon discovery of such disclosure so advise the receiving party in writing and request that the item or items of information be returned, and no party to this action shall thereafter assert that such disclosure waived any privilege or immunity. It is further agreed that the receiving party will return such inadvertently produced item or items of information and all copies thereof within ten (10) days of the earliest of (i) discovery by the receiving party of its inadvertent production, or (ii) receiving a written request for the return of such item or items of information unless the receiving party has, within that 10 day period, submitted an application to the court asserting that the information was properly produced and that the assertion of privilege or immunity is not valid.

### 7.    MISCELLANEOUS

      7.1.    The fact that a document or transcript contains both Confidential or Highly Confidential Information or Material and other non-confidential information or material does not affect the protected nature of the Confidential or Highly Confidential Information and Material therein, and with regard to the procedures in this Order, the entire document shall be treated as Confidential or Highly Confidential Information or Material, unless only portions thereof are designated, in accordance herewith. Upon request of a receiving party, the producing party shall designate those portions of a document or transcript which contain Confidential or Highly Confidential Information or Material.

      7.2.    This Order does not supersede any existing confidentiality agreement to which a party is bound, which shall continue in full force; however, production or disclosure of

13

Confidential or Highly Confidential Information or Material under this Order shall be deemed to be disclosure pursuant to a Court Order. In the event that any agreement with a third party prohibits such production without consent, then the party from whom production is sought shall, in good faith, seek consent from such third party. If consent is not provided within 10 days after such request, the party from whom the information is sought shall notify the party requesting the information, who may thereafter apply to the court, by order to show cause with notice to the third party, for an order compelling production of the information. In the event that any agreement with a third party requires such third party to be given notice and an opportunity to object to such production, then the party from whom the information is sought shall promptly advise such third party of the request and shall produce the information unless the party or the third party applies to the court for a protective order within 10 days after receiving such notice or such other time as the agreement provides.

7.3.    The provisions of Paragraph 7.1 requiring entire documents and, during the 30-day period addressed in Paragraph 3.5, entire deposition transcripts to be treated as Confidential or Highly Confidential Material even when only portions thereof contain Confidential or Highly Confidential Information are intended to protect and control dissemination of the Confidential or Highly Confidential Information. Confidential or Highly Confidential portions of any such transcript or document shall be disclosed only to persons entitled to see the same pursuant to this Order. Portions of any such document or transcript that are not designated as Confidential or Highly Confidential Information may be copied or quoted in connection with the lawsuit (after redaction of any designated Confidential or Highly Confidential Information appearing on the same page) without further action being required

14

under this Order. The parties should endeavor, however, to avoid over-designating documents or transcripts as Confidential or Highly Confidential to the extent possible.

       7.4.    Any party shall have the right to apply to the Court, after efforts by counsel to resolve the matter, for an Order permitting further disclosure or declassification of Confidential or Highly Confidential Information or Material hereunder upon a showing that such is necessary to an adequate preparation of the movant's case, is otherwise necessary to protect the interests of such party, that the designation of Confidential or Highly Confidential Information or Material was unnecessary, unjustified or otherwise inappropriate within the contemplation of this Order, or for any other just cause. The party requesting disclosure or declassification shall adhere to all terms of this Order except to the extent permitted by the Court's ruling on such application.

       7.5.    Nothing in this Order shall constitute an admission by any party or impose a duty upon any party to produce any documents, information and materials that are not discoverable pursuant to the Federal Rules of Civil Procedure for reasons other than the confidentiality concerns addressed by this Order.

       7.6.    Nothing in this Order shall be construed to affect the admissibility of any document, material or information at any trial or hearing. Any request for confidentiality, closure, or sealing of any hearing or trial must be made to the judge then presiding.

       7.7.    Upon conclusion of the lawsuit, including all appeals therefrom, all Confidential or Highly Confidential Information or Material produced by a party (including any duplicates thereof) shall, at the option of the producing party be destroyed. Counsel shall verify proper disposition thereof.

7.8.    Any non-party from whom discovery is sought in the lawsuit may invoke the protection of this Order to designate documents or other information and materials as Confidential or Highly Confidential Information or Material hereunder. In such event, the non-party agrees to be bound by the terms of this Order, and all parties agree that the non-party's Confidential or Highly Confidential Information and Material shall be treated in a manner consistent with this Order in all respects.

7.9.    After the conclusion of this action, including without limitation, any appeal or retrial, this Order shall continue to be binding upon the parties hereto, and all persons to whom designated materials have been disclosed or communicated. This Court retains jurisdiction over the parties hereto indefinitely with respect to any dispute regarding the improper use of information produced under this Order.

7.10.   Local Rule 26.2 Statement.

7.10.1. The identity of the persons who are to have access to the documents without further order of court are as follows: Any attorneys, paralegals or staff associated with either Aronberg Goldgehn Davis & Garmisa, or Latham & Watkins LLP, including but not limited to John M. Riccione, Elvis Gonzalez, Matthew W. Walch and Cameron R. Krieger.

7.10.2. Instructions for the disposition of the filed restricted documents following the conclusion of the case: Following the final disposition of the case in the District Court, the party who initially produced these documents and who initially requested such documents be designated as confidential or restricted by the District Court must file a motion for the return of previously sealed or restricted documents within 60 days after the case is closed. Any documents that are not so withdrawn will become part of the public case file.

16

SO ORDERED.

Sept 27, 2006

_____
United States Magistrate Judge Ashman

Prepared by:

_____
Matthew W. Walch
Cameron R. Krieger
LATHAM & WATKINS LLP
233 South Wacker Drive Suite 5800
Chicago, Illinois 60606
Telephone:    (312) 876-7700
Facsimile:    (312) 993-9767

*Attorneys for Defendants*

## EXHIBIT A: RESTRICTING AGREEMENT

I, _____, hereby acknowledge that I have received a

copy of the Restricting Order entered in *Pharmaceutical Inventories, Inc. d/b/a Pharmaceutical*

*Returns Service, v. Michael Zaccaro, et al.* Case No. 05 C 6483, In the United States District

Court for the Northern District of Illinois. I have read that Order, I understand the terms,

conditions, and restrictions imposed by that Order on one who is given access to confidential

documents and information represented by the parties as confidential pursuant to that Order, and

I agree to be bound by all of the terms, conditions, and restrictions imposed by that Order.

I will return all documents, material and information designated as confidential I

receive to counsel who provided them to me. I acknowledge that the return or subsequent

destruction of such documents, material, and information shall not relieve me from any of the

obligations imposed on me by that Order.

I further acknowledge that I understand that I may be subject to sanctions

imposed by the Court, including an order of contempt, if I fail to abide by and comply with that

Order.

Dated: _____     _____

                                                              Name

                                                              _____

                                                              Occupation

                                                              Business Address and Telephone:

                                                              _____
                                                              _____
                                                              _____
                                                              _____

## EXHIBIT B: NON-DISCLOSURE AGREEMENT

I, _____, hereby acknowledge:

1.    I understand that the focus group study in which I have been requested to participate will result in the receipt by me of information considered by third parties to be confidential and proprietary.

2.    In consideration of my selection to participate in the focus group and my receipt of compensation for my participation in that study, I agree to keep all information disclosed to me during the course of such study as confidential, and I will not disclose such information to any other person.

Dated: _____        _____
                                   Name

                                   Business Address and Telephone:
                                   _____
                                   _____
                                   _____
                                   _____