1  PAUL I. MYERS III, Bar No. 72067
   ALEXANDER P. MYERS, Bar No. 136370
2  MYERS, HAWLEY, MORLEY, MYERS & McDONNELL
   166 Main Street
3  Los Altos, California 94022-2905
4  Telephone: (650) 948-1600
   Fax: (650) 949-3581
5  e-mail: chicolaw@att.net

6  Attorney for Third Party Respondent
7  EXP PHARMACEUTICAL SERVICES CORP.

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

| | |
|---|---|
| PHARMACEUTICAL INVENTORIES, INC. d/b/a PHARMACEUTICAL RETURNS SERVICE, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL ZACCARO and RETURNS R US, INC. d/b/a/ PHARMA LOGISTICS, LTD., <br><br> Defendants. | Case No. CV-07-80231-MSC SBA <br><br> **OPPOSITION OF THIRD PARTY EXP PHARMACEUTICAL SERVICES CORP. TO DEFENDANT MICHAEL ZACCARO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION** <br><br> Date: November 6, 2007 <br> Time: 1:00 p.m. <br> Courtroom: 3, 3rd Floor <br> Judge: Hon. Saundra Brown Armstrong |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................3

STATEMENT OF FACTS......................................................................3

STATEMENT OF ISSUES TO BE DECIDED..................................................5

ARGUMENT....................................................................................6

    1.    Application of Rule 26 of the Federal Rules of Civil Procedure

         Supports a Denial of the Motion to Compel.................................6

    2.    Documents Requested Are Trade Secrets of EXP..........................6

    3.    The Discovery Request is Vague, Overbroad, and Not Designed

         to Seek Information Relevant to the Primary Action......................7

    4.    The Production of Documents Creates an Undue Burden on EXP.......11

    5.    Defendants Have Received Documents from Competitors, and

         from EXP, that Satisfy the Subpoena and Preclude the Need

         for Additional Screen Prints from EXP......................................12

    6.    The Restricting Order Does Not Protect EXP...............................14

SUMMARY.....................................................................................15

## PRELIMINARY STATEMENT

On or about July 13, 2007 defendants Michael Zaccaro and Returns R. Us d/b/a Pharma Logistics, Ltd. ("Defendants") served a Subpoena Duces Tecum (the "Subpoena") upon Third Party EXP Pharmaceutical Services Corp., ("EXP"). (See Declaration of Gus Changaris ("Changaris Dec.") and Declaration of Paul I. Myers III ("Myers Dec."), Exhibit C). EXP served a response to the Subpoena on counsel for Defendants on July 26, 2007 (Myers Dec., Exhibit D). In addition, EXP provided Defendants with certain documents, sample computer-generated reports, in response to the Subpoena. Defendants, in response, requested twelve Screen Prints generated by EXP internal software (Myers Dec., Exhibits E and F). EXP responded that it would not produce these Screen Prints as to do so would disclose trade secrets and proprietary information of EXP. On October, 1, 2007, Defendants filed a Motion to Compel EXP to produce the twelve Screen Prints. This Memorandum of Points and Authorities is submitted in opposition to the Motion to Compel. EXP is informed that counsel for Zaccaro also represents Returns R Us d/b/a Pharma Logistics Ltd, and that this Motion to Compel, and underlying Subpoena, were issued by both Defendants.

## STATEMENT OF FACTS

1. On or about November 15, 2005, Pharmaceutical Return Service ("Plaintiff) filed suit against Defendants in the United States District Court for the Northern District of Illinois (Case Number 05C 6483). (See Declaration of John D. Minton in support of the Motion to Compel ("Minton Dec."), Exhibit B). Several causes of action are stated in the complaint, but the alleged acts wrongdoing of Defendants are described in paragraphs 11, 12, and 13 of the Complaint (Minton Dec., Exhibit B). These allegations are continued in the First Amended Complaint. (Myers Dec., Exhibit, Paragraphs 11, 12, 13, and 14). In short, Plaintiff accuses

Defendants of gaining unauthorized access to Plaintiff's business computer source code, illegally copying said source code, and using this source code to start an independent and rival business.

2.  Plaintiff and Defendants are competitors in a business referred to as the reverse distribution of pharmaceutical products. EXP is also a competitor of Plaintiff and Defendants.

3.  EXP is not a party to the lawsuit involving Plaintiff and Defendants. EXP has never been affiliated with Plaintiff or Defendants (except as a competitor), has not received copies of source code, software, or screen images, from either Plaintiff or Defendants, and has not used source code from either Plaintiff or Defendants in the development of its own internal computer source code. (Changaris Dec., Paragraph 2).

4.  The pharmaceutical product reverse distribution business is highly competitive. During the fourteen years of its operation EXP has been in the constant exercise of developing, refining, and adapting is internal computer source code, and software. By its own estimates, this process has involved an investment of over $8,000,000.00 of EXP funds, and in excess of 100,000 labor hours of time. The development of this software was done without reference to any other competitor software. EXP is of the opinion that this software, which maintains its reverse distribution business, provides customer support, and guarantees regulatory compliance, is proprietary to EXP, is a trade secret of EXP, and provides EXP with a unique competitive advantage. The compromise of this software, or its disclosure to a competitor, under any circumstance, would cause irreparable harm to EXP. (Changaris Dec., Paragraph 4).

5.  Based upon the allegation of wrongdoing (unauthorized access, copying, and use of source code by Defendants), Defendants issued at least ten subpoenas, virtually identical to the one received by EXP, to competitors of Plaintiff, Defendants, and EXP. (See Certification of Interested Parties and Entities filed herewith). EXP is not informed as to the responses of all

parties, but EXP is informed that two recipients have filed suit to quash the subpoenas (See Certification of Interested Entities and Parties, filed herewith), some recipients have responded by providing information and documents to Defendants, and EXP responded by serving a written objection on Defendants, and providing some written reports that are produced by the EXP software, and which are commonly circulated and available in the industry. (Myers Dec., Exhibit D)

6. Based upon the EXP response, Defendants reduced their request to twelve computer Screen Prints, or screen images produced from the EXP software. EXP believes that the production of these images, which are not part of the public domain and which would, if disclosed, provide a window to the EXP source code, is an unwarranted and unjustifiable invasion of its property rights, a violation of its trade secrets, and beyond the legitimate needs of Defendants in the primary litigation.

## STATEMENT OF ISSUES TO BE DECIDED

In ruling on the Motion to Compel, the Court will need to address the following issues:

1. Are the documents and information sought by Defendants relevant to the issues in the primary action?

2. Have Defendants already received information from other subpoena recipients, or from EXP, such that there is no further need to seek information from EXP?

3. Is the information requested a trade secret or proprietary information of EXP.

4. Is the information requested obtainable from some other source that is more convenient, less burdensome, and less expensive to EXP?

5. Does the burden or expense of the proposed discovery outweigh its likely benefits, taking into account the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery?

6.  Is the Request for Screen Prints Vague and Overbroad?

7.  Does the Restricting Order adequately protect the interests of EXP?

## ARGUMENT

1.  <u>Application of Fed.R.Civ.P.26(b)(2) Supports a Denial of the Motion to Compel.</u>

Fed.R.Civ.P.26(b)(2), states in part:

Limitations. (C) The frequency or extent of the use of discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sough is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had amply opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery.

Thus, "even if relevant, discovery is not permitted where no need is shown, or where compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." <u>Micro Motion, Inc., v. Kane Steel Co.,</u> 894 F.2d 1318, 1323 (Fed. Cir. 1990). As set forth below, the potential harm to EXP, and the burden of production that falls upon EXP, outweighs any benefit the documents will have to Defendants.

2.  <u>The Documents Requested Represent Trade Secrets of EXP.</u>

Under California Civil Code Section 3426.1(d) a trade secret is information that:

(1)  Is not generally known in the industry, to the public, or to others who can realize economic value from its disclosure or use;

(2)  Has independent economic value, whether actual or potential, that derives from its secrecy, and

(3)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

It is widely recognized that computer source code and related information constitute trade secrets. Rivendell Forest Products v. Georgia-Pacific Corp. (10th Cir 1994) 28 F3d 1042. Computer generated screen images, internally designed by EXP, and protected by EXP, would constitute trade secrets of EXP.

Defendants concur that the information requested represents trade secrets and proprietary information of EXP. In the letter sent with the Subpoena, counsel for Defendants acknowledges the "potential highly confidential nature of the information requested." EXP contends that this Court should apply the strictest standards of relevancy and accord the acknowledged trade secret interests of EXP the highest possible weight when ruling on the Motion to Compel. It is submitted, that the only reasonable result is a denial of the Motion to Compel.

3.   <u>The Discovery Request is Vague, Overbroad and Not Designed to Seek Information Relevant to the Primary Action.</u>

Fed.R.Civ.P. 26(b)(1) provides, in part, that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…" This Court should consider the relevancy of the information requested, either as addressing the issue of undue burden, or in determining whether the relevancy standard has been met as an underlying requirement of the Subpoena

EXP has not participated in any way in the primary litigation. What is known about the issue that gave rise to the request for Screen Prints is taken entirely from materials provided by Defendants.

The letter sent with the Subpoena by counsel for the Defendants, states:

"The requested information regarding the software program(s) used by EXP will help prove to PRS and its counsel that software within this industry has to incorporate certain fields, commands and functionality to serve the needs of the customer in this industry and that such fields, commands and functionality are not and cannot be owned by any one business in the industry." (Minton Dec., Exhibit A).

Second, the Motion to Compel states the Screen Prints are necessary to "show that the various services and functionality claimed by PRS to be trade secrets are not considered trade secrets under Illinois law because they are so within the realm of general skills and knowledge in the industry." (Motion to Compel, Memorandum of Points and Authorities, page 3, lines 12-14). The Memorandum of Points and Authorities goes on to state that:

"PRS has claimed that the screen shots and reports from Pharma Logistics software proves that Zaccaro misappropriated PRS's trade secrets." Motion to Compel, Memorandum of Points and Authorities, Page 4, lines 18-20).

Based upon the statements in the moving papers, and in the letter accompanying the Subpoena, quoted above, it can be inferred that Plaintiff contends that Defendants' Screen Prints look like Plaintiff's Screen Prints, and/or that Defendants' Screen Prints offer function similar to those offered in Plaintiff's screen images. The defense to these propositions, or at least the defense that is sought to be supported by the Subpoena, is that, even if the Defendants' Screen Prints look like, and perform similarly to, Plaintiff's Screen Prints, there is no misappropriation because everyone else in the industry has screen prints that look roughly the same, and function similarly to the Screen Prints of Plaintiff and Defendants.

Defendants are so confident that industry practice will support their defense they have represented to this Court that "...the screen shots and reports from competitors like EXP *will prove*

(emphasis added) that PRS's and Pharma Logistics's screen shots and reports are generally not unique, but instead incorporate many of the same elements that every software program in the pharmaceutical returns processing industry incorporates." (See Memorandum of Points and Authorities, Page 4, line 20-22). In fact, Defendants have no way of knowing whether that premise will be proven true or not.

Defendants' approach to establishing the defense (i.e. the viewing of EXP Screen Prints) results in the following objections:

    a.    <u>The Request is Vague</u>. Defendants want to view selected EXP Screen Prints represented in the categories set forth on the Sample Screen Prints document. The underlying support for this request is vaguely stated. Initially EXP was informed that Defendants wanted to determine if certain "fields, commands, and functionality" are in the EXP computer system, and represented on the Screen Prints. In the moving papers EXP is informed that what is sought are "services and functionality" contained in the software. These terms are not defined, and EXP is not informed what these terms mean, and whether they can be found in the EXP computer program, and in what location. Only Defendants hold the key as to what screen images will satisfy their curiosity. It is this vagueness which drives Defendants' questionable assertion that they must view the entire screen image.

    b.    <u>The Request is Overbroad</u>. By their own assertion, Defendants seek information that is commonly included in pharmaceutical product reverse distribution software, on an industry-wide basis. They expect to find that certain "fields, commands, and functions" are so commonly included in industry software and computer systems that such fields, commands and functions can now be determined to be "within the realm of general skills and knowledge in the industry." (Motion to Compel, Memorandum of Points and Authorities, page 3, lines 12-14).

The problem is that by trolling for the commonplace, and examining EXP Screen Prints in the process, Defendants are just as likely, in fact more likely, to access information that is unique to the EXP software, and not commonplace in the industry. If Defendants view the entire EXP screen images, they receive so much more information than they are entitled to receive. An inspection of a screen image would reveal, among other things, the following:

--the appearance of the screen; the color, the print and fonts used, horizontal and vertical construction, and the order of information presented;

--the order of the screen within the EXP computer program;

--the data included or to be entered, and the points of entry for such data;

--links to other software pages;

--the location, on each screen, of each function, and ordering of functions ;

--the order of data entry.

Each of these Screen Print features reflect and disclose design decisions by EXP which are unique and proprietary to EXP and which are, arguably, irrelevant to the allegations and defenses in the primary action.

A screen image, when examined, is examined in its entirety. It is not possible to segregate between those items of data or screen functions that might be commonplace, and those that are unique to the EXP software program. Defendants get all information in one viewing. It is this potential for examination of EXP proprietary information, unrelated to the issues in the litigation, that makes the request for EXP Screen Prints improper under Rule 26, and subject to restriction under Rule 45.

    c.    <u>The Production of EXP Screen Prints Will Not be Dispositive of the Issues Between Plaintiff and Defendants</u>. Defendants already know what functions they are looking for on

the EXP Screen Prints, and where they expect to find them. An examination of their "Sample Screen Reports" discloses, under each screen requested, what information Defendants think should be found. Counsel for Defendants declares that any company within this industry must use software that "has to" incorporate certain fields, commands and functionality. (Minton Dec. Ex. A, Letter of July 13, 2007). This premise, as support for an examination of EXP Screen Prints, fails on two counts: First, as noted in the Declaration of Gus Changaris, there is no industry requirement that certain information "has to" be incorporated in the software. (Chagaris Dec., Page 7, line 11c). Secondly, even if certain items were incorporated in the software, there is no industry requirement that such information be included in certain Screen Prints associated with the software. In both instances, the company creating the software will make elections about what information to include, and where to include it. These decisions, and their reflection in the ultimate software design, are proprietary to each company and should be protected by this Court. If, in fact, the items described in the Sample Screen Prints list are included in most competitors' software, then Defendants have already made a determination that these items are required, or are routinely used in the industry, and they will not need to resort to EXP's Screen Prints to validate their theory.

Further, and as a consequence of the foregoing, Defendants will still require the testimony of an expert, and not the Screen Prints of EXP, to establish whether the "services and functionality claimed by PRS to be trade secrets are not considered trade secrets under Illinois law because they are within the realm of general skills and knowledge in the industry." (Defendants' Memorandum of Points and Authorities, Page 3, line 12-14). EXP is not informed as to the "services and functionality" claimed by PRS to be trade secrets, nor will the EXP screen images establish what is within the realm of general skills and knowledge of the industry. As noted, there is no mandatory "must-be-included" features in reverse distribution industry software. Whatever appears in EXP

software reflects decisions made by EXP as to what their own software should include; not what should be included as an industry standard.

4. <u>Production of Documents in Compliance with the Subpoena creates an Undue Burden on EXP.</u>

Under Rule 45 this Court has the authority to quash a subpoena if it "requires disclosure of privileged of a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P.45(c)(3)(B). In considering a claim of undue burden, the Court should be guided by the following principles:

    a. "In evaluating 'undue burden,' a court is required to weigh the burden to the subpoenaed party against the value of the information to the serving party." <u>Ebbert v. Nassau County</u>, 2007 WL 674725, at *4 (E.D.N.Y. 2007).

    b. "Whether a subpoena poses an undue burden depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with the documents are described, and the burden imposed." (Id).

    c. Courts "accord special weight to the burden on non-parties of producing documents for others involved in litigation." <u>Ebbert</u>, 2007 WL 674725, at *4.

An examination of the Subpoena, and the modified request for information, indicates that the request is vague, overbroad, irrelevant, and impermissibly burdensome on the responding party. Further, it seeks production of information that is so valuable to EXP that the risk of disclosure exposes EXP to potentially catastrophic consequences.

It is submitted that the decision in <u>In re Vitamins Antitrust Litigation</u>, 267 F.Supp.2d 738 (S.D. Oh. 2003) supports the EXP position. In that action a defendant served a subpoena on a

non-party competitor seeking discovery of certain confidential information and trade secrets. (Id. at 739). The non-party moved to quash the subpoena on the basis that the subpoena would subject it to an undue burden and "would require disclosure of trade secrets for which (the defendant had) no substantial need." (Id. at 740). Although the subpoena was accompanied by a protective order, the recipient non-party argued that the parties to the primary litigation could not be trusted to enforce it. (Id. at 741).

The <u>Vitamins</u> court quashed the subpoena, on the following theories:

--The trade secrets were the lifeblood of the (recipient non-party's) financial well-being. (Id. at 741-42)

--The fact that the other defendants in the litigation were direct competitors legitimately heightened the non-party recipient's concerns. (Id. at 742)

--The fact that the Court had "no enforcement power of the extant protective order," meant that it would be unable to protect the non-party's interests were its terms to be breached. (Id. at 742).

Applied to this proceeding, it is submitted that an undue burden would be placed upon EXP in the production of documents demanded, both on the basis that the information to be produced are trade secrets of EXP, that EXP will be compelled to spend time and money in the production of the records, that the Subpoena is overbroad and overreaching, and that the information obtained will be of minimal value to Defendants.

5.      <u>Defendants Have Received Documents from Competitors, and from EXP, that Satisfy the Subpoena and Preclude the Need from Additional Screen Images from EXP.</u> In considering whether EXP should be compelled to produce Screen Prints with proprietary and

confidential information, it is well to consider what information is already in the hands of Defendants.

EXP is informed and believes that Defendants have received certain information from other industry competitors in response to the Defendants subpoenas. It is possible that certain responding competitors have produced computer screen images to Defendants. Defendants should disclose all screen images received from competitors prior to seeking screen images from EXP.

On or about July 26, 2007, counsel for EXP produced 11 specimen EXP reports, generated from the EXP software, to Defendants. It was pointed out, at the time of production, that these reports were generally circulated among customers, and provided to competitors by customers, and were widely available in the industry. (See Attachments to Letter to Matthew W. Walch, Myers, Dec., Exhibit D). A comparison of these reports, with the Sample Screen Print page issued by Defendants, discloses that much of the information that Defendants would have expected to find in the EXP software is, in fact, in the EXP software. Information about customers, pharmacies, manufacturers, job orders, data entered, in-dates, hazardous waste, is all set forth in the reports. This information will allow Defendants to support their argument that certain functions have to be included in the software of a reverse distribution industry competitor. This is as much as Defendants should be entitled to receive.

To grant Defendants' motion to compel would give them access, not only to the information they already have, but to other proprietary information unrelated to the establishment of their defense which would be gleaned from a review of the screen image. These proprietary features would include the methods of processing the data, the interaction of various items of data, location of links, shortcuts, and connections that are designed into the EXP

software, among other things, all of which is proprietary to EXP, trade secrets of EXP, and well beyond anything necessary for Defendants to establish their defense.

In short, Defendants have been informed by EXP about many of the features included in the software as a whole. Defendants are not entitled to review the screen images, or to ascertain how these features are used in the EXP software, and where they appear.

It should be noted that there are some features of reverse distribution industry software that would be expected to be found in any software system employed by any competitive company in the industry. Obviously, if product returns relate to a certain manufacturer, that manufacturer's name, address, account code, and product information should be reflected. Similarly, information about customers entrusting product to the distributor for return should be listed (again, name, address, account code, and product information). That the EXP software reflects this information has already been disclosed to Defendants in the form of reports referenced above. Defendants are now free to argue that some items of information are so basic to any software design that they should not be considered to be trade secrets. However, the present request of Defendants for screen images runs the risk that more than the basic data inclusions in the EXP software will be disclosed. Such disclosures are unnecessary to Defendants' defense, and create an unwarranted risk of harm to EXP if disclosed.

6.  <u>The Restricting Order Does Not Protect EXP.</u>

The Restricting Order offers scant comfort to EXP. The parties receiving such information are competitors of EXP, they may challenge the protective designations placed by EXP, they may or may not elect to perform the terms of the Order, and in the event of breach, EXP will have to bring its claim in the Illinois proceeding. In fact, if the information is produced, and ultimately disclosed, EXP will be irreparably harmed, and further protective

OPPOSITION OF THIRD PARTY EXP PHARMACEUTICAL SERVICES CORP. TO DEFENDANT MICHAEL ZACCARO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION : Page 15

efforts may prove to be costly and overwhelmingly difficult. Further, the Restricting Order offers no process or mechanism for the protection of EXP confidential information if the information is used at the time of trial. It should be noted that, as explained in the Defendants moving papers, they intend to use the Screen Prints sought from EXP "at the trial." (Memorandum of Points and Authorities, page 3, line 10). The most effective protection for EXP is to deny the Motion to Compel, and allow EXP to protect its trade secrets and proprietary information from the view of competitors, and their representatives.

## SUMMARY

Defendants seek the "crown jewels" of EXP. The demands of the Subpoena are based upon a false claim of relevancy, are vague and overbroad as written, and will subject EXP to undue burden in the form of administrative costs, and the potential harm resulting from the disclosure of its software, screen images, and reports. EXP has provided copies of its reports that are generally available in commerce, and it is expected that Defendants have already viewed similar reports from other competitors. In short, Defendants have the ability to collect data from other sources, and may have already done so, before turning to EXP. Further, the data already possessed by Defendants will allow them to establish their defense without reference to actual EXP screen images. These screen images, if disclosed, offer more information to Defendants than is necessary for their defense, and creates a risk that proprietary and trade secret information of EXP may be compromised.

This Court should view with great caution the practice of a competitor-litigant, subjecting an entire industry to subpoenas which are minimally connected to the case at hand, and which, in the act of compelling a response, put other non-party competitors at a risk of loss and a competitive disadvantage.

1     The Motion to Compel should be denied.

                                         Respectfully submitted,

*[signature]*

Paul I. Myers III
Attorney for
EXP Pharmaceutical Services Corp.

---

OPPOSITION OF THIRD PARTY EXP PHARMACEUTICAL SERVICES CORP. TO DEFENDANT MICHAEL ZACCARO'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION : Page 17