Exhibit A

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHARMACEUTICAL INVENTORIES, INC., d/b/a PHARMACEUTICAL RETURNS SERVICE, )<br>)<br>)<br>) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 05 C 6483 |
| ) | |
| MICHAEL ZACCARO, an individual, and RETURNS R US, INCORPORATED d/b/a PHARMA LOGISTICS, LTD., )<br>)<br>)<br>) | **JURY DEMAND** |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, COPYRIGHT INFRINGEMENT AND OTHER RELIEF

Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service

("PRS"), by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, for its First

Amended Complaint against Defendants, Michael Zaccaro ("Zaccaro") and Returns R Us,

Incorporated d/b/a Pharma Logistics, Ltd. ("Pharma"), states as follows:

### PARTIES

1.      Plaintiff PRS is an Illinois corporation which currently operates under the

assumed name, Pharmaceutical Returns Service. PRS' principal place of business is located in

Kane County, Illinois. PRS is in the pharmaceutical return and inventory business. John

DeMars ("DeMars") is the President of PRS.

2.      At all times relevant to this action, Defendant Zaccaro was and is a citizen of the

State of Illinois and resides in this district.

3.      At all times relevant to this action, Defendant, Returns R Us Incorporated, d/b/a

Pharma Logistics, Ltd., is an Illinois corporation.

## JURISDICTION AND VENUE

4.    Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C.

§§1331 and 1338 because this action arises under the laws of the United States, particularly 17

U.S.C. §§101, et seq., 15 U.S.C. §§1125 and 18 U.S.C. §1030.  Jurisdiction exists over all other

claims pursuant to 28 U.S.C. §§1367.

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400.

Personal jurisdiction and venue are proper because Zaccaro and Pharma reside in this district,

and a substantial part of the events giving rise to this action occurred in this district.

## FACTS COMMON TO ALL COUNTS

6.    PRS is a service business that provides physical inventory and processing for

credit of outdated pharmaceuticals and proper disposal of non-returnables for pharmacies.  The

typical inventory and returns service includes performing pharmacy inventory on-site and pulling

a pharmacy's outdated pharmaceuticals and over-the-counter medicines which then go to the

PRS office for processing and shipping to the respective manufacturers for pharmacy credit.  On

or about September 1990, DeMars and his brother, Kevin DeMars ("Kevin"), began writing

source code for computer programs (the "PRS Software") that would automate the inventory

process for returns of prescription drugs to manufacturers and distributors for PRS.  The PRS

Software provides PRS with a unique and substantial advantage over its competitors.

7.    In or about the end of 1992, DeMars and Kevin completed the development of a

first version of source code for the PRS software.  The PRS software became operational at that

time.

8.    DeMars installed the PRS software in the in-house processing department of PRS.

Over the next year and a half, the processing department used the PRS software and gave

2

DeMars feedback regarding any bugs or flaws or additional automation required. DeMars made changes to the PRS software as needed.

9.      In or about 1992, PRS hired Zaccaro. Zaccaro was assigned to perform inventories, office work, phone sales and processing of outdated pharmaceuticals. Zaccaro did not aid in the development of the PRS software.

10.     In 1995, DeMars and Kevin completed a revised version of the source code for the PRS Software, which was operable in UNIX and DOS was completed.

11.     Upon information and belief, from in or about 1994 through in or about 1995, Zaccaro became interested in entering the pharmaceutical returns and inventory business. In order to do so, he required software to perform processing of outdated inventory and returns for his business.

12.     At sometime while Zaccaro was employed at PRS, Zaccaro obtained unauthorized access to the PRS source code for the PRS software in both UNIX and DOS and copied the source code and the PRS Software.

13.     In or about July, 1996, Zaccaro terminated his employment with PRS, without explanation or notice.

14.     Shortly after Zaccaro left PRS, Zaccaro created a pharmaceutical returns and inventory business. Zaccaro used the PRS source code and software that he had misappropriated in conjunction with the operation of his business.

15.     In or about 1996 or 1997, Zaccaro hired a programmer to change the look of the software and started "Pharma".

3

16. From 1997 through 2004, PRS began to lose customers to Zaccaro and Pharma because Zaccaro and/or Pharma were selling and/or using PRS source code and software or software substantially similar to the misappropriated PRS software.

17. In February of 2004, Zaccaro, who was President of Pharma, hired Dwight Arant ("Arant"), a business consultant.

18. In or about May 2005, Zaccaro told Arant that while Zaccaro was employed at PRS, he was interested in entering the pharmaceutical returns business. More importantly, Zaccaro also told Arant that while he was employed at his previous employer [PRS], Zaccaro knew someone who could get into the UNIX operating system and the PRS software and take it, which would allow him to open his own business.

19. In or about May 2005, Zaccaro admitted to Arant that he had taken the source code, all databases and software from PRS which he and/or Pharma had been using, licensing and selling to several pharmacies, wholesalers, other returns services and hospitals.

20. In June 2005, Arant contacted DeMars and informed him that Zaccaro had told him that he had taken the source code and software from PRS and used it to start his company.

21. Zaccaro has been and is currently operating "Pharma" using the source code and/or software that is a copy of or substantially similar to the PRS software and/or source code he misappropriated from PRS. Upon information and belief, Zaccaro and/or Pharma plan on selling rights to the source code, software and Pharma to other companies.

22. As the creator and owner of the source code and software, PRS has an exclusive right to use and sell the PRS software. PRS has a legitimate interest in need of protection, *i.e.*, an interest in protecting its software from being stolen, duplicated, licensed, used and/or sold without authorization by any company(ies) or person(s) other than PRS.

4

23.    If Zaccaro and Pharma are allowed to continue to use and/or sell the misappropriated software or any unauthorized duplication thereof, PRS will be irreparably harmed. PRS has lost and continues to lose the ability to maintain exclusive use and sale of the PRS software.

24.    Since money damages are difficult to ascertain at this time, PRS does not have any adequate remedy at law.

25.    PRS will likely succeed on the merits of its claim that it has an exclusive right to use and sell the PRS software.

26.    PRS is, therefore, entitled to injunctive relief.

### COUNT I
### (COPYRIGHT INFRINGEMENT – ZACCARO)

27.    PRS restates, realleges and incorporates by reference, Paragraphs 1-25 as if they were fully set forth herein.

28.    PRS is the owner of a valid copyright to the PRS software that has been registered with the United States Copyright Office, a copy of which registration is appended hereto as **Exhibit A**. The PRS software is an original piece of authorship fixed in a tangible medium of expression.

29.    Neither Zaccaro nor Pharma are licensed by PRS, and at all relevant times were not licensed by PRS to engage in the activities described herein.

30.    On information and belief, Zaccaro and Pharma intend to continue to infringe PRS's copyright in the PRS software without Plaintiff's consent, in violation of 17 U.S.C. §§ 106 and 501.

31.    Said conduct by Zaccaro and Pharma, on information and belief, was and is willfully done with knowledge of PRS' copyright.

5

WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns

Service, requests that the court:

A.  Declare that Zaccaro and Pharma have infringed PRS's copyright in PRS software;

B.  Order an accounting of all profits of Zaccaro and Pharma and award PRS its actual and/or statutory damages, including increased damages for willful violation;

C.  Enter a permanent injunction under 17 U.S.C. § 502 enjoining Zaccaro and Pharma, and anyone acting in concert with either, including all their respective employees, servants, agents, distributors and persons in active concert with them from using and/or selling the PRS software;

D.  Enter an injunction enjoining Zaccaro and Pharma from using and/or selling any software that is the same as or substantially similar to the PRS copyright of its software;

E.  Enter an injunction enjoining Zaccaro and Pharma from using and/or selling any software that uses elements that are the same as or substantially similar to the PRS copyright of its software;

F.  Award PRS its costs and attorneys' fees; and

G.  Enter such other relief the court deems just and appropriate.

## COUNT II
## (CLAIM FOR INJUNCTIVE RELIEF – ZACCARO AND RETURNS R US, INC., D/B/A PHARMA LOGISTICS, LTD.)

32.  PRS restates, realleges and incorporates by reference, Paragraphs 1-25 as if they were fully set forth herein.

33.  As the owner of the software, PRS has an exclusive right to use and sell the PRS software. PRS has a legitimate interest in need of protection, in particular, an interest in protecting its software from being stolen, duplicated, licensed, used and/or sold without authorization by any compan(ies) or person(s) other than PRS.

34.    If Zaccaro or Pharma are allowed to continue to use, license and/or sell the stolen software or any unauthorized duplication thereof, PRS will be irreparably harmed. PRS has lost and continues to lose the ability to maintain exclusive use and sale of the PRS software.

35.    Since money damages are difficult to ascertain at this time, PRS does not have any adequate remedy at law.

36.    PRS will likely succeed on the merits of its claim that it has an exclusive right to use and sell the PRS software.

WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service, requests that the court:

A.    Enter an injunction enjoining Zaccaro and Pharma from using, licensing and/or selling the PRS software;

B.    Enter an injunction enjoining Zaccaro and Pharma from using, licensing and/or selling any software that is based upon or is a duplication of the PRS software;

C.    Enter an injunction enjoining Zaccaro and Pharma from using, licensing and/or selling any software that uses or duplicates elements of the PRS software;

D.    Enter an injunction enjoining Zaccaro and Pharma from including the PRS software, any software that is based upon or is a duplication of the PRS software and any software that uses elements of the PRS software as part of transaction for the sale of Pharma to any other entity; and

E.    Enter such other relief the court deems just and appropriate.

## COUNT III
## (VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT)

37.    PRS repeats and realleges Paragraphs 1 through 30 above as if fully set forth herein.

38.    PRS operates "protected computers" within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, in that PRS' computers are used in interstate commerce and

7

communication. 18 U.S.C. §1030 (e)(2)(B). The Computer Fraud and Abuse Act provides for a

civil cause of action against anyone who:

> (5)(B) intentionally accesses a protected computer without authorization, and as a
> result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a
> result of such conduct, causes damage;

18 U.S.C. §1030(a)(5)(B) and (C).

39.    Zaccaro has intentionally accessed PRS' computer system without authorization,

and as a result, has caused damage to PRS' computer system through his use of PRS' computers

without authorization.

40.    PRS has suffered irreparably, and continues to suffer irreparably as the PRS

software, which was copied, has been used, licensed and sold to others, including PRS'

competitors. Damages will continue unless and until Zaccaro and all those to whom he has

licensed or sold the PRS software are enjoined, their access to PRS' computers is completely

foreclosed and any and all information which they have accessed, and any copies of the same,

are recovered.

41.    Though no adequate remedy at law exists in this instance because damages are

difficult to approximate, PRS has been damaged economically by Zaccaro's actions in excess of

$5,000.00.

WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns

Service, requests that the Court:

> A.    Enter a temporary and/or permanent injunction, pursuant to 18 U.S.C. §1030(g),
> without bond, enjoining Zaccaro, and anyone acting in concert with him or on his
> behalf from accessing or attempting to access any computer, of PRS;
>
> B.    Enter an order allowing PRS through the United States Marshals to confiscate any
> and all computers, discs, drives, software and other related devices from Zaccaro
> and impound same in order to determine to what extent Zaccaro has accessed

8

PRS' computers and taken PRS' copyrighted, confidential and proprietary information and copied the same;

C.   Enter an order requiring Zaccaro to preserve any and all evidence of his unauthorized access to PRS' computers;

D.   Enter an order requiring the return of any and all information, in whatever format saved or copied, which Zaccaro has copied, downloaded, or transmitted as a result of his unauthorized access to PRS' computers;

E.   Enter an order awarding Plaintiff compensatory damages in excess of $100,000 for Zaccaro's wrongful actions;

F.   Enter an order awarding Plaintiff punitive damages in the amount of $10 million for Zaccaro's malicious, willful and wanton conduct; and

G.   Enter an order awarding Plaintiff's its attorneys' fees and costs, and such other and further relief as this Honorable Court finds reasonable.

## COUNT IV
## (VIOLATION OF ILLINOIS TRADE SECRETS ACT – ZACCARO AND PHARMA)

42.   PRS restates, realleges and incorporates by reference, Paragraphs 1-30 as if they were fully set forth herein.

43.   The PRS software, created and owned by PRS, is a trade secret of PRS.

44.   Zaccaro misappropriated the PRS software through improper acquisition, disclosure and/or use of the PRS software for use with his then-newly formed company, Pharma.

45.   PRS has been damaged by Zaccaro's misappropriation and Pharma's use of the PRS software.

WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service, requests that the court:

A.   Enter judgment for damages against Zaccaro and Pharma and all of their respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with them, in an amount to be proven at trial;

B.   Enter an injunction enjoining Zaccaro, Pharma and all of their respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with them, from using and/or selling the PRS software;

9

C.   Enter an injunction enjoining Zaccaro, Pharma and all of their respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with them, from using and/or selling any software that is based upon or is a duplication of the PRS software;

D.   Enter an injunction enjoining Zaccaro, Pharma and all of their respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with them, from using and/or selling any software that uses or duplicates elements of the PRS software;

E.   Award all costs and attorneys' fees to PRS; and

F.   Enter such other relief the court deems just and appropriate.

## COUNT V
## (VIOLATION OF SECTION 43(A) OF THE LANHAM ACT (15 U.S.C. §§1125(A)) – ZACCARO)

46.   PRS restates, realleges and incorporates by reference, Paragraphs 1-30 as if they were fully set forth herein.

47.   Zaccaro has misappropriated the PRS software and misrepresented it or an unauthorized copy that is substantially similar to the PRS software or elements thereof as his own and that of Pharma's, his company.

48.   In doing so, Zaccaro and Pharma have used a false designation of the origin of the software they have used and/or sold.

49.   Zaccaro and Pharma have used a false designation of the origin of the software they have used and/or sold in interstate commerce.

50.   Zaccaro and Pharma have used and/or sold the software in connection with goods or services.

51.   The designation has caused confusion, mistake or deception as to the origin, sponsorship or approval of Zaccaro's and Pharma's goods, services or commercial activities by other persons and/or entities.

52.   PRS has been damaged as a result.

10

WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns

Service, requests that the court:

    A.    Enter judgment for damages against Zaccaro and Pharma for all profits they obtained resulting from any violation of 15 U.S.C. §§1125(a), in an amount to be proven at trial;

    B.    Enter judgment for damages against Zaccaro and Pharma for all other damages sustained by PRS as a result of any violation of 15 U.S.C. §§1125(a), in an amount to be proven at trial;

    C.    Award all costs and attorneys' fees to PRS; and

    D.    Enter such other relief the court deems just and appropriate.

## COUNT VI
### (VIOLATION OF SECTION THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT – ZACCARO)

53.    PRS restates, realleges and incorporates by reference, Paragraphs 1, 10 and 21 as

if they were fully set forth herein.

54.    Zaccaro has misrepresented the software or elements thereof it currently uses and

which they have used since starting Pharma as its own.

55.    Zaccaro has made false, misleading or deceptive statements regarding PRS'

services to several of PRS' customers.

56.    In doing so, Zaccaro has disparaged the services or business of PRS by a false or

misleading representation of fact.

WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns

Service, requests that the court:

    A.    Enter an injunction enjoining Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, from using and/or selling the PRS software and/or any duplication of or software resembling the PRS software;

    B.    Award all costs and attorneys' fees to PRS; and

C.    Enter such other relief the court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a jury demand on all issues so triable.

                             PHARMACEUTICAL INVENTORIES, INC.,
                             d/b/a PHARMACEUTICAL RETURNS SERVICE


                             By:_____
                                      One of its attorneys

Dated: February _____, 2006


John M Riccione
Paul A. Greenberg
Elvis D. Gonzalez
Aronberg Goldgehn Davis & Garmisa
Attorneys for Pharmaceutical Inventories, Inc.,
  d/b/a Pharmaceutical Returns Service
One IBM Plaza - Suite 3000
Chicago, Illinois 60611
(312) 828-9600

390389.v3

12

# EXHIBIT A

# Certificate of Registration

Case ...03-JS    Document 1    Filed 08/08/200...    Page 25 of 76

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM TX**
For a Literary Work
UNITED STATES COPYRIGHT OFFICE
REGN

TXu 1 – 169 – 722

**EFFECTIVE DATE OF REGISTRATION**

8      29      05
Month    Day    Year

---

**ARATE CONTINUATION SHEET**

## 1

**TITLE OF THIS WORK ▼**

Processing Software for Outdated Pharmaceuticals

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give    Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

## 2

**a**

**NAME OF AUTHOR ▼**
Kevin Demara

**DATES OF BIRTH AND DEATH**
Year Born ▼ 9/11/1966    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼
Source Code

**NOTE**

Under the law, the author of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**
Pharmaceutical Inventories Inc

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼
Source Code

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

## 3

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
2001 ◀ Year

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶    Day ▶    Year ▶    ◀ Nation

## 4

See instructions before completing this space

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2.

Pharmaceutical Inventories Inc
443 W. Fullerton
Elmhurst IL 60126

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.

Written Assignment from Kevin Demara to Pharmaceutical Inventories Inc on 8/22/05

APPLICATION RECEIVED
AUG 2 9 2005

ONE DEPOSIT RECEIVED
AUG 2 9 2005

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**EXHIBIT**

**A**

---

**MORE ON BACK ▶**  Complete all applicable spaces (numbers 5-11) on the reverse side of this page    See detailed instructions    Sign the form at line 10

**DO NOT WRITE HERE**
Page 1 of 2 pages

Amended by C O  from phone call to Brian
Sodikoff on September 15, 2005

<table>
<tr><td>EXAMINED BY</td><td></td><td>FORM TX</td></tr>
<tr><td>CHECKED BY</td><td></td><td></td></tr>
<tr><td>☐ CORRESPONDENCE<br>   ☐ Yes</td><td></td><td>FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY</td></tr>
</table>

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work  or for an earlier version of this work  already been made in the Copyright Office?
☐ Yes  ☐ No   If your answer is  Yes   why is another registration being sought? (Check appropriate box) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work, as shown by space 6 on this application
If you answer is  Yes   give   **Previous Registration Number ▼**                    **Year of Registration ▼**

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work  complete only 6b for a compilation
a  **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates ▼
  Source Code written before 1999  as outlined in table accompanying application

b  **Material Added to This Work** Give a brief  general statement of the material that has been added to this work  and in which copyright is claimed ▼
  Source Code written after 1999 — 2000  as outlined in table accompanying application —  New and revised programming text

**6**

— **space deleted** —

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS** A signature on this form at space 10  and a check in one
of the boxes here in space 8 constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and
under the conditions and limitations prescribed by the regulations of the Copyright Office  (1) copies of the work identified in space 1 of this application in Braille (or similar tactile
symbols)  or (2) phonorecords embodying a fixation of a reading of that work  or (3) both
a ☐ Copies and Phonorecords          b ☐ Copies Only          c ☐ Phonorecords Only

**8**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account
**Name ▼**                                              **Account Number ▼**

**9**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent    Name/Address/Apt/City/State/ZIP ▼
Brian J  Sodikoff
Welsh & Katz  Ltd
120 S  Riverside Plaza, 22nd Floor, Chicago, IL  60606
                         Area Code and Telephone Number ▶

**CERTIFICATION*** I the undersigned  hereby certify that I am the
   Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Pharmaceutical Inventories  Inc
                          Name of author or other copyright claimant  or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge

Type or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date
Brian J  Sodikoff                                              date ▶ 8-23-05

   Handwritten signature (X) ▼
   _Brian Sodikoff_

**10**

**MAIL
CERTIFI
CATE TO**

Name ▼
Brian J  Sodikoff
Welsh & Katz, Ltd
Number/Street/Apartment Number ▼
120 S  Riverside Plaza  22nd Floor
City/State/ZIP ▼
Chicago  IL  60606

Certificate
will be
mailed in
window
envelope

**11**

17 U S C  section 506(e)  Any person who knowingly makes a  false representation of a material fact in the application for copyright registration provided for by section 409  or in any written statement filed in
connection with the application  shall be fined not more than $2 500

Exhibit B

Exhibit B

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PHARMACEUTICAL INVENTORIES,    )
INC., d/b/a PHARMACEUTICAL    )
RETURNS    )
SERVICE,    )
    )
            Plaintiff,    )    **Case No.: 05 C 6483**
    )
vs.    )    **JURY DEMAND**
    )
MICHAEL ZACCARO, an individual, and    )
RETURNS R US, INCORPORATED d/b/a    )
PHARMA LOGISTICS, LTD.,    )
    )
            Defendants.

## DEFENDANT MICHAEL ZACCARO'S ANSWER TO PLAINTIFF'S
## FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF,
## COPYRIGHT INFRINGEMENT AND OTHER RELIEF

Defendant, Michael Zaccaro ("Zaccaro"), by and through his attorneys, Latham &

Watkins LLP, hereby responds to the First Amended Complaint For Injunctive Relief, Copyright

Infringement And Other Relief (the "First Amended Complaint") of Plaintiff, Pharmaceutical

Return Service ("PRS") as follows:

## ANSWER

**PARAGRAPH NO. 1**:  Plaintiff PRS is an Illinois corporation which currently operates under the assumed name, Pharmaceutical Returns Service.  PRS' principal place of business is located in Kane County, Illinois. PRS is in the pharmaceutical return and inventory business. John DeMars ("DeMars") is the President of PRS.

**RESPONSE**:  Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 1 and, on that basis, denies such allegations.

**PARAGRAPH NO. 2**:  At all times relevant to this action, Defendant Zaccaro was and is a citizen of the State of Illinois and resides in this district.

**RESPONSE**:  Zaccaro admits the allegations in Paragraph No. 2.

**PARAGRAPH NO. 3**:  At all times relevant to this action, Defendant, Returns R Us Incorporated, d/b/a Pharma Logistics, Ltd., is an Illinois corporation.

**RESPONSE**:  Zaccaro admits that Returns 'R' Us, Inc., d/b/a Pharma Logistics, Ltd. ("Pharma

Logistics") is an Illinois corporation.

**PARAGRAPH NO. 4**:  Federal subject matter jurisdiction exists in this action pursuant to 28 U.S.C. §§1331 and 1338 because this action arises under the laws of the United States, particularly 17 U.S.C. §§101, et seq., 15 U.S.C. §§1125 and 18 U.S.C. §1030.  Jurisdiction exists over all other claims pursuant to 28 U.S.C. §§ 1367.

**RESPONSE**:  Paragraph No. 4 includes assertions of law, not allegations of fact, and thus no

response is required.  To the extent Paragraph No. 4 is construed to include allegations of fact,

Zaccaro admits such allegations.

**PARAGRAPH NO. 5**:  Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400.  Personal jurisdiction and venue are proper because Zaccaro and Pharma reside in this district, and a substantial part of the events giving rise to this action occurred in this district.

**RESPONSE**:  Paragraph No. 5 includes assertions of law, not allegations of fact, and thus no

response is required.  To the extent Paragraph No. 5 is construed to include allegations of fact,

Zaccaro admits such allegations.

**PARAGRAPH NO. 6**:  PRS is a service business that provides physical inventory and processing for credit of outdated pharmaceuticals and proper disposal of non-returnables for pharmacies.  The typical inventory and returns service includes performing pharmacy inventory on-site and pulling a pharmacy's outdated pharmaceuticals and over-the-counter medicines which then go to the PRS office for processing and shipping to the respective manufacturers for pharmacy credit.  On or about September 1990, DeMars and his brother, Kevin DeMars ("Kevin"), began writing source code for computer programs (the "PRS Software") that would automate the inventory process for returns of prescription drugs to manufacturers and distributors for PRS.  The PRS Software provides PRS with a unique and substantial advantage over its competitors.

**RESPONSE**:  Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 6 and, on that basis, denies such allegations.

**PARAGRAPH NO. 7**:  In or about the end of 1992, DeMars and Kevin completed the development of a first version of source code for the PRS software.  The PRS software became operational at that time.

2

**RESPONSE**: Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 7 and, on that basis, denies such allegations.

**PARAGRAPH NO. 8**: DeMars installed the PRS software in the in-house processing department of PRS. Over the next year and a half, the processing department used the PRS software and gave DeMars feedback regarding any bugs or flaws or additional automation required. DeMars made changes to the PRS software as needed.

**RESPONSE**: Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 8 and, on that basis, denies such allegations.

**PARAGRAPH NO. 9**: In or about 1992, PRS hired Zaccaro. Zaccaro was assigned to perform inventories, office work, phone sales and processing of outdated pharmaceuticals. Zaccaro did not aid in the development of the PRS software.

**RESPONSE**: Zaccaro admits the allegations in Paragraph No. 9.

**PARAGRAPH NO. 10**: In 1995, DeMars and Kevin completed a revised version of the source code for the PRS Software, which was operable in UNIX and DOS was completed.

**RESPONSE**: Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 10 and, on that basis, denies such allegations.

**PARAGRAPH NO. 11**: Upon information and belief, from in or about 1994 through in or about 1995, Zaccaro became interested in entering the pharmaceutical returns and inventory business. In order to do so, he required software to perform processing of outdated inventory and returns for his business.

**RESPONSE**: Zaccaro admits that he became interested in entering the pharmaceutical returns

and inventory business by the spring of 1996. Zaccaro denies any and all remaining allegations

in Paragraph No. 11.

**PARAGRAPH NO. 12**: At sometime while Zaccaro was employed at PRS, Zaccaro obtained unauthorized access to the PRS source code for the PRS software in both UNIX and DOS and copied the source code and the PRS Software.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 12.

**PARAGRAPH NO. 13**: In or about July, 1996, Zaccaro terminated his employment with PRS, without explanation or notice.

3

**RESPONSE**: Zaccaro admits that he left his employment with PRS in or about June, 1996.

Zaccaro denies the remaining allegations in Paragraph No. 13.

**PARAGRAPH NO. 14**: Shortly after Zaccaro left PRS, Zaccaro created a pharmaceutical returns and inventory business. Zaccaro used the PRS source code and software that he had misappropriated in conjunction with the operation of his business.

**RESPONSE**: Zaccaro admits that he formed Pharma Logistics as an Illinois corporation and

that Pharma Logistics started doing pharmacy returns and inventory business in December of

1996. Zaccaro denies the remaining allegations in Paragraph No. 14.

**PARAGRAPH NO. 15**: In or about 1996 or 1997, Zaccaro hired a programmer to change the look of the software and started "Pharma".

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 15.

**PARAGRAPH NO. 16**: From 1997 through 2004, PRS began to lose customers to Zaccaro and Pharma because Zaccaro and/or Pharma were selling and/or using PRS source code and software or software substantially similar to the misappropriated PRS software.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 16.

**PARAGRAPH NO. 17**: In February of 2004, Zaccaro, who was President of Pharma, hired Dwight Arant ("Arant"), a business consultant.

**RESPONSE**: Zaccaro admits that Pharma Logistics engaged Dwight Arant as a business

consultant in February of 2004. Zaccaro denies the remaining allegations in Paragraph No. 17.

**PARAGRAPH NO. 18**: In or about May 2005, Zaccaro told Arant that while Zaccaro was employed at PRS, he was interested in entering the pharmaceutical returns business. More importantly, Zaccaro also told Arant that while he was employed at his previous employer [PRS], Zaccaro knew someone who could get into the UNIX operating system and the PRS software and take it, which would allow him to open his own business.

**RESPONSE**: Zaccaro admits that he told Arant that he became interested in entering the

pharmaceutical returns business while he was employed at PRS. Zaccaro denies the remaining

allegations in Paragraph No. 18.

**PARAGRAPH NO. 19**: In or about May 2005, Zaccaro admitted to Arant that he had taken the source code, all databases and software from PRS which he and/or Pharma had been using, licensing and selling to several pharmacies, wholesalers, other returns services and hospitals.

4

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 19.

**PARAGRAPH NO. 20**: In June 2005, Arant contacted DeMars and informed him that Zaccaro had told him that he had taken the source code and software from PRS and used it to start his company.

**RESPONSE**: Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 20 and, on that basis, denies such allegations.

**PARAGRAPH NO. 21**: Zaccaro has been and is currently operating "Pharma" using the source code and/or software that is a copy of or substantially similar to the PRS software and/or source code he misappropriated from PRS. Upon information and belief, Zaccaro and/or Pharma plan on selling rights to the source code, software and Pharma to other companies.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 21.

**PARAGRAPH NO. 22**: As the creator and owner of the source code and software, PRS has an exclusive right to use and sell the PRS software. PRS has a legitimate interest in need of protection, *i.e.*, an interest in protecting its software from being stolen, duplicated, licensed, used and/or sold without authorization by any company(ies) or person(s) other than PRS.

**RESPONSE**: Whatever exclusive rights PRS may have in such source code and software is an

assertion of law, not an allegation of fact, and thus no response is required to such an assertion.

Zaccaro is without knowledge or information sufficient to form a belief as to the truth or falsity

of the factual allegations in Paragraph No. 22 and, on that basis, denies such allegations.

**PARAGRAPH NO. 23**: If Zaccaro and Pharma are allowed to continue to use and/or sell the misappropriated software or any unauthorized duplication thereof, PRS will be irreparably harmed. PRS has lost and continues to lose the ability to maintain exclusive use and sale of the PRS software.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 23.

**PARAGRAPH NO. 24**: Since money damages are difficult to ascertain at this time, PRS does not have any adequate remedy at law.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 24 because PRS is not entitled to

any remedy for the claims stated in its First Amended Complaint, whether such remedies were

sought at law or in equity.

5

**PARAGRAPH NO. 25**: PRS will likely succeed on the merits of its claim that it has an exclusive right to use and sell the PRS software.

**RESPONSE**: Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 25 and, on that basis, denies such allegations.

**PARAGRAPH NO. 26**: PRS is, therefore, entitled to injunctive relief.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 26.

## COUNT I

## (COPYRIGHT INFRINGEMENT – ZACCARO)

**PARAGRAPH NO. 27**: PRS restates, realleges and incorporates by reference, Paragraphs 1-25 as if they were fully set forth herein.

**RESPONSE**: Zaccaro incorporates its responses to Paragraph Nos. 1-25 as and for its response

to Paragraph No. 27.

**PARAGRAPH NO. 28**: PRS is the owner of a valid copyright to the PRS software that has been registered with the United States Copyright Office, a copy of which registration is appended hereto as **Exhibit A**. The PRS software is an original piece of authorship fixed in a tangible medium of expression.

**RESPONSE**: Zaccaro admits that PRS purports to attach a copy of a copyright registration as

Exhibit A to its amended complaint. Zaccaro is without knowledge or information sufficient to

form a belief as to the truth or falsity of the remaining allegations in Paragraph No. 28 and, on

that basis, denies such allegations.

**PARAGRAPH NO. 29**: Neither Zaccaro nor Pharma are licensed by PRS, and at all relevant times were not licensed by PRS to engage in the activities described herein.

**RESPONSE**: Zaccaro admits the allegations in Paragraph No. 29. Zaccaro affirmatively states

that Pharma Logistics did not need a license from PRS to engage in the activities that it has

engaged in since its incorporation.

**PARAGRAPH NO. 30**: On information and belief, Zaccaro and Pharma intend to continue to infringe PRS's copyright in the PRS software without Plaintiffs consent, in violation of 17 U.S.C. §§ 106 and 501.

6

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 30.

**PARAGRAPH NO. 31**: Said conduct by Zaccaro and Pharma, on information and belief, was and is willfully done with knowledge of PRS' copyright.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 31.

**PRAYER FOR RELIEF**:    WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service, requests that the court:

      A.    Declare that Zaccaro and Pharma have infringed PRS's copyright in PRS software;

      B.    Order an accounting of all profits of Zaccaro and Pharma and award PRS its actual and/or statutory damages, including increased damages for willful violation;

      C.    Enter a permanent injunction under 17 U.S.C. § 502 enjoining Zaccaro and Pharma, and anyone acting in concert with either, including all their respective employees, servants, agents, distributors and persons in active concert with them from using and/or selling the PRS software;

      D.    Enter an injunction enjoining Zaccaro and Pharma from using and/or selling any software that is the same as or substantially similar to the PRS copyright of its software;

      E.    Enter an injunction enjoining Zaccaro and Pharma from using and/or selling any software that uses elements that are the same as or substantially similar to the PRS copyright of its software;

      F.    Award PRS its costs and attorneys' fees; and

      G.    Enter such other relief the court deems just and appropriate.

**RESPONSE**: This paragraph constitutes one of PRS's prayers for relief to which no response is required.  To the extent that the prayer for relief purports to state any factual allegations, Zaccaro denies them.

## COUNT II
## (CLAIM FOR INJUNCTIVE RELIEF - ZACCARO AND RETURNS R US, INC., D/B/A PHARMA LOGISTICS, LTD.)

**PARAGRAPH NO. 32**: PRS restates, realleges and incorporates by reference, Paragraphs 1-25 as if they were fully set forth herein.

**RESPONSE**: Count II has been dismissed by the Court and therefore no response to Paragraph

No. 32 is necessary. To the extent Paragraph No. 32 is incorporated into other counts, Zaccaro

incorporates its responses to Paragraph Nos. 1-25 as and for its response to Paragraph No. 32.

**PARAGRAPH NO. 33**: As the owner of the software, PRS has an exclusive right to use and
sell the PRS software. PRS has a legitimate interest in need of protection, in particular, an
interest in protecting its software from being stolen, duplicated, licensed, used and/or sold
without authorization by any compan(ies) or person(s) other than PRS.

**RESPONSE**: Count II has been dismissed by the Court and therefore no response to Paragraph

No. 33 is necessary. To the extent Paragraph No. 33 is incorporated into other counts, Zaccaro

responds as follows: Whatever exclusive rights PRS may have in its software is an assertion of

law, not an allegation of fact, and thus no response is required to such an assertion. Zaccaro is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

factual allegations in Paragraph No. 33 and, on that basis, denies such allegations.

**PARAGRAPH NO. 34**: If Zaccaro or Pharma are allowed to continue to use, license and/or sell
the stolen software or any unauthorized duplication thereof, PRS will be irreparably harmed.
PRS has lost and continues to lose the ability to maintain exclusive use and sale of the PRS
software.

**RESPONSE**: Count II has been dismissed by the Court and therefore no response to Paragraph

No. 34 is necessary. To the extent Paragraph No. 34 is incorporated into other counts, Zaccaro

denies the allegations in that paragraph.

**PARAGRAPH NO. 35**: Since money damages are difficult to ascertain at this time, PRS does
not have any adequate remedy at law.

**RESPONSE**: Count II has been dismissed by the Court and therefore no response to Paragraph

No. 35 is necessary. To the extent Paragraph No. 35 is incorporated into other counts, Zaccaro

denies the allegations in Paragraph No. 35 because PRS is not entitled to any remedy for the

claims stated in its First Amended Complaint, whether such remedies were sought at law or in

equity.

8

**PARAGRAPH NO. 36**: PRS will likely succeed on the merits of its claim that it has an exclusive right to use and sell the PRS software.

**RESPONSE**: Count II has been dismissed by the Court and therefore no response to Paragraph

No. 36 is necessary. To the extent Paragraph No. 36 is incorporated into other counts, Zaccaro

denies the allegations in that paragraph.

**PRAYER FOR RELIEF:** WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a

Pharmaceutical Returns Service, requests that the court:

    A.    Enter an injunction enjoining Zaccaro and Pharma from using, licensing and/or selling the PRS software;

    B.    Enter an injunction enjoining Zaccaro and Pharma from using, licensing and/or selling any software that is based upon or is a duplication of the PRS software;

    C.    Enter an injunction enjoining Zaccaro and Pharma from using, licensing and/or selling any software that uses or duplicates elements of the PRS software;

    D.    Enter an injunction enjoining Zaccaro and Pharma from including the PRS software, any software that is based upon or is a duplication of the PRS software and any software that uses elements of the PRS software as part of transaction for the sale of Pharma to any other entity; and

    E.    Enter such other relief the court deems just and appropriate.

**RESPONSE**: This paragraph constitutes one of PRS's prayers for relief to which no response is

required. Moreover, Count II has been dismissed by the Court and therefore no response to the

prayer for relief under Count II is necessary. To the extent that the prayer for relief purports to

state any factual allegations and such factual allegations are incorporated in other portions of the

First Amended Complaint, Zaccaro denies such allegations.

## COUNT III

### (VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT)

**PARAGRAPH NO. 37**: PRS repeats and realleges Paragraphs 1 through 30 above as if fully set forth herein.

**RESPONSE**: Zaccaro incorporates its responses to Paragraph Nos. 1-30 as and for its response

to Paragraph No. 37.

**PARAGRAPH NO. 38**: PRS operates "protected computers" within the meaning of the
Computer Fraud and Abuse Act, 18 U.S.C. § 1030, in that PRS' computers are used in interstate
commerce and communication. 18 U.S.C. §1030 (e)(2)(B). The Computer Fraud and Abuse Act
provides for a civil cause of action against anyone who:

> (5)(B) intentionally accesses a protected computer without authorization, and as a
> result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a
> result of such conduct, causes damage;

18 U.S.C. § 1030(a)(5)(B) and (C).

**RESPONSE**: Paragraph No. 38 includes assertions of law, not allegations of fact, and thus no

response is required to such assertions. To the extent Paragraph No. 38 is construed to include

allegations of fact, Zaccaro is without knowledge or information sufficient to form a belief as to

the truth or falsity of the factual allegations in Paragraph No. 38 and, on that basis, denies such

allegations.

**PARAGRAPH NO. 39**: Zaccaro has intentionally accessed PRS' computer system without
authorization, and as a result, has caused damage to PRS' computer system through his use of
PRS' computers without authorization.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 39.

**PARAGRAPH NO. 40**: PRS has suffered irreparably, and continues to suffer irreparably as the
PRS software, which was copied, has been used, licensed and sold to others, including PRS'
competitors. Damages will continue unless and until Zaccaro and all those to whom he has
licensed or sold the PRS software are enjoined, their access to PRS' computers is completely
foreclosed and any and all information which they have accessed, and any copies of the same,
are recovered.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 40.

**PARAGRAPH NO. 41**: Though no adequate remedy at law exists in this instance because
damages are difficult to approximate, PRS has been damaged economically by Zaccaro's actions
in excess of $5,000.00.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 41.

**PRAYER FOR RELIEF:** WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service, requests that the Court:

A.    Enter a temporary and/or permanent injunction, pursuant to 18 U.S.C. §1030(g), without bond, enjoining Zaccaro, and anyone acting in concert with him or on his behalf from accessing or attempting to access any computer, of PRS;

B.    Enter an order allowing PRS through the United States Marshals to confiscate any and all computers, discs, drives, software and other related devices from Zaccaro and impound same in order to determine to what extent Zaccaro has accessed PRS' computers and taken PRS' copyrighted, confidential and proprietary information and copied the same;

C.    Enter an order requiring Zaccaro to preserve any and all evidence of his unauthorized access to PRS' computers;

D.    Enter an order requiring the return of any and all information, in whatever format saved or copied, which Zaccaro has copied, downloaded, or transmitted as a result of his unauthorized access to PRS' computers;

E.    Enter an order awarding Plaintiff compensatory damages in excess of $100,000 for Zaccaro's wrongful actions;

F.    Enter an order awarding Plaintiff punitive damages in the amount of $10 million for Zaccaro's malicious, willful and wanton conduct; and

G.    Enter an order awarding Plaintiffs its attorneys' fees and costs, and such other and further relief as this Honorable Court finds reasonable.

**RESPONSE:** This paragraph constitutes one of PRS's prayers for relief to which no response is required. To the extent that the prayer for relief purports to state any factual allegations, Zaccaro denies them.

## COUNT IV
## (VIOLATION OF ILLINOIS TRADE SECRETS ACT - ZACCARO AND PHARMA)

**PARAGRAPH NO. 42:** PRS restates, realleges and incorporates by reference, Paragraphs 1-30 as if they were fully set forth herein.

**RESPONSE:** Zaccaro incorporates its responses to Paragraph Nos. 1-30 as and for its response to Paragraph No. 42.

**PARAGRAPH NO. 43:** The PRS software, created and owned by PRS, is a trade secret of PRS.

11

**RESPONSE**: Zaccaro is without knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph No. 43 and, on that basis, denies such allegations.

**PARAGRAPH NO. 44**: Zaccaro misappropriated the PRS software through improper
acquisition, disclosure and/or use of the PRS software for use with his then-newly formed
company, Pharma.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 44.

**PARAGRAPH NO. 45**: PRS has been damaged by Zaccaro's misappropriation and Pharma's
use of the PRS software.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 45.

**PRAYER FOR RELIEF:** WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a
Pharmaceutical Returns Service, requests that the court:

    A.    Enter judgment for damages against Zaccaro and Pharma and all of their
respective employees, servants, agents, companies, licensees, distributors and
persons acting in concert with them, in an amount to be proven at trial;

    B.    Enter an injunction enjoining Zaccaro, Pharma and all of their respective
employees, servants, agents, companies, licensees, distributors and persons acting
in concert with them, from using and/or selling the PRS software;

    C.    Enter an injunction enjoining Zaccaro, Pharma and all of their respective
employees, servants, agents, companies, licensees, distributors and persons acting
in concert with them, from using and/or selling any software that is based upon or
is a duplication of the PRS software;

    D.    Enter an injunction enjoining Zaccaro, Pharma and all of their respective
employees, servants, agents, companies, licensees, distributors and persons acting
in concert with them, from using and/or selling any software that uses or
duplicates elements of the PRS software;

    E.    Award all costs and attorneys' fees to PRS; and

    F.    Enter such other relief the court deems just and appropriate.

**RESPONSE**: This paragraph constitutes one of PRS's prayers for relief to which no response is

required. To the extent that the prayer for relief purports to state any factual allegations, Zaccaro

denies them.

## COUNT V

### (VIOLATION OF SECTION 43(A) OF THE LANHAM ACT (15 U.S.C. §§1125(A))-ZACCARO)

**PARAGRAPH NO. 46**: PRS restates, realleges and incorporates by reference, Paragraphs 1-30 as if they were fully set forth herein.

**RESPONSE**: Zaccaro incorporates its responses to Paragraph Nos. 1-30 as and for its response

to Paragraph No. 46.

**PARAGRAPH NO. 47**: Zaccaro has misappropriated the PRS software and misrepresented it or an unauthorized copy that is substantially similar to the PRS software or elements thereof as his own and that of Pharma's, his company.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 47.

**PARAGRAPH NO. 48**: In doing so, Zaccaro and Pharma have used a false designation of the origin of the software they have used and/or sold.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 48.

**PARAGRAPH NO. 49**: Zaccaro and Pharma have used a false designation of the origin of the software they have used and/or sold in interstate commerce.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 49.

**PARAGRAPH NO. 50**: Zaccaro and Pharma have used and/or sold the software in connection with goods or services.

**RESPONSE**: Zaccaro admits Pharma Logistics has used or sold software in connection with

goods and services. Zaccaro denies that either he or Pharma Logistics have used any PRS

software as implied by the allegations in Paragraph No. 50. Zaccaro denies any remaining

allegations in Paragraph No. 50.

**PARAGRAPH NO. 51**: The designation has caused confusion, mistake or deception as to the origin, sponsorship or approval of Zaccaro's and Pharma's goods, services or commercial activities by other persons and/or entities.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 51.

**PARAGRAPH NO. 52**: PRS has been damaged as a result.

13

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 52.

**PRAYER FOR RELIEF**: WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service, requests that the court:

   A.    Enter judgment for damages against Zaccaro and Pharma for all profits they obtained resulting from any violation of 15 U.S.C. §§ 1125(a), in an amount to be proven at trial;

   B.    Enter judgment for damages against Zaccaro and Pharma for all other damages sustained by PRS as a result of any violation of 15 U.S.C. §§ 1125(a), in an amount to be proven at trial;

   C.    Award all costs and attorneys' fees to PRS; and

   D.    Enter such other relief the court deems just and appropriate.

**RESPONSE**: This paragraph constitutes one of PRS's prayers for relief to which no response is required. To the extent that the prayer for relief purports to state any factual allegations, Zaccaro denies them.

## COUNT VI
## (VIOLATION OF SECTION THE ILLINOIS
## DECEPTIVE TRADE PRACTICES ACT -ZACCARO)

**PARAGRAPH NO. 53**: PRS restates, realleges and incorporates by reference, Paragraphs 1, 10 and 21 as if they were fully set forth herein.

**RESPONSE**: Zaccaro incorporates its responses to Paragraph Nos. 1, 10 and 21 as and for its response to Paragraph No. 53.

**PARAGRAPH NO. 54**: Zaccaro has misrepresented the software or elements thereof it currently uses and which they have used since starting Pharma as its own.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 54.

**PARAGRAPH NO. 55**: Zaccaro has made false, misleading or deceptive statements regarding PRS' services to several of PRS' customers.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 55.

**PARAGRAPH NO. 56**: In doing so, Zaccaro has disparaged the services or business of PRS by a false or misleading representation of fact.

**RESPONSE**: Zaccaro denies the allegations in Paragraph No. 56.

14

**PRAYER FOR RELIEF:** WHEREFORE, Plaintiff, Pharmaceutical Inventories, Inc., d/b/a Pharmaceutical Returns Service, requests that the court:

A.   Enter an injunction enjoining Zaccaro and all of his respective employees, servants, agents, companies, licensees, distributors and persons acting in concert with him, from using and/or selling the PRS software and/or any duplication of or software resembling the PRS software;

B.   Award all costs and attorneys' fees to PRS; and

C.   Enter such other relief the court deems just and appropriate.

**RESPONSE**:  This paragraph constitutes one of PRS's prayers for relief to which no response is required.  To the extent that the prayer for relief purports to state any factual allegations, Zaccaro denies them.

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to PRS's First Amended Complaint and each claim alleged therein, Zaccaro alleges as follows:

### First Affirmative Defense

#### (Failure to State a Claim for Relief)

PRS's First Amended Complaint in whole or in part fails to state a claim upon which relief may be granted.

### Second Affirmative Defense
#### (Fair Use)

PRS's First Amended Complaint is barred in whole or in part by the doctrine of fair use.

15

## Third Affirmative Defense

### (Statute of Limitations)

PRS's purported claims are barred, in whole or in part, by the applicable limitations period:

## Fourth Affirmative Defense

### (Laches)

PRS's purported claims, and each of them, are barred in whole or in part by application of the doctrine of laches, owing to an unreasonable delay in bringing the action and Zaccaro's prejudice as a result of that delay.

## Fifth Affirmative Defense

### (Estoppel)

PRS's purported claims, and each of them, are barred in whole or in part by application of the doctrine of estoppel.

## Sixth Affirmative Defense

### (Waiver)

PRS's purported claims, and each of them, are barred in whole or in part by application of the doctrine of waiver, due to PRS's knowledge, acts and omissions, namely that PRS has acquiesced, unduly delayed, and generally failed to act on its own behalf to protect its alleged rights.

16

### Seventh Affirmative Defense

#### (Acquiescence)

PRS's purported claims, and each of them, are barred in whole or in part by application of the doctrine of acquiescence, in that PRS has acquiesced implicitly to those purported acts of which it now complains.

### Eighth Affirmative Defense

#### (Unclean Hands)

PRS's purported claims, and each of them, are barred in whole or in part by application of the doctrine of unclean hands.

### Ninth Affirmative Defense

#### (Justification and Privilege)

PRS's purported claims, and each of them, are barred in whole or in part because Zaccaro's actions respecting the subject matters alleged in the Complaint, and each of them, to the extent that they were taken at all, were undertaken in good faith, and constitute lawful, proper, and justified means to further its purpose of engaging in and continuing its business.

### Tenth Affirmative Defense

#### (Other Parties Responsible)

If anyone is legally responsible for any and all of the alleged acts, or the harm or damage alleged suffered by PRS, it is someone other than Zaccaro, and the liability of Zaccaro, if any, should be reduced proportionally.

## Eleventh Affirmative Defense

### (Non-Willful Conduct)

Any and all acts alleged to have been committed by Zaccaro, if performed, were performed with lack of knowledge and lack of willful intent.

## Twelfth Affirmative Defense

### (Remote, Speculative And Contingent Damages)

To the extent that PRS claims damages that will be incurred in the future, such damages may not be recovered as they are remote, speculative and contingent.

## Thirteenth Affirmative Defense

### (Double Recovery)

PRS's causes of action, and each of them, are barred to the extent Plaintiff is seeking double recovery for the same alleged wrongs.

## Fourteenth Affirmative Defense

### (Preemption)

Plaintiff's state law claims are preempted in whole or in part by federal law.

## Fifteenth Affirmative Defense

### (Preemption – Illinois Deceptive Trade Secret Act)

Plaintiff's state causes of action other than its Illinois Deceptive Trade Secret Act are preempted under the Illinois Deceptive Trade Secret Act.

## Sixteenth Affirmative Defense

### (Punitive Damages Unconstitutional)

To the extent Plaintiff seeks punitive damages, this violates the rights of Zaccaro under the United States and Illinois Constitutions in that:

18

- Punitive damages violate Zaccaro's right to procedural due process under the Fourteenth Amendment of the United States Constitution;

- Punitive damages violate Zaccaro's right to protection from "excessive fines," as provided by the Eighth Amendment to the United States Constitution and further violate Defendants' right to substantive due process as provided by the Fifth and Fourteenth Amendments to the United States Constitution; and

- The imposition of punitive damages upon proof under a standard less than "beyond a reasonable doubt" violates Defendants' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

## Seventeenth Affirmative Defense

### (Failure to Mitigate)

Zaccaro is informed and believes, and on that basis alleges, that PRS, in the exercise of reasonable diligence, could have mitigated the alleged damages to itself, but failed to exercise such reasonable diligence and did not mitigate its alleged damages. Therefore, PRS is barred from recovery, in whole or in part.

## Eighteenth Affirmative Defense

### (Reservation)

Zaccaro reserves the right to rely on all further affirmative defenses that become available or appear during discovery proceedings in this action, and Zaccaro reserves the right to amend this Answer for the purpose of asserting any such additional affirmative defenses.

*    *    *

19

The pleading of the defenses described above shall not be construed as an undertaking by Zaccaro of any burden that would otherwise be the responsibility of PRS. The inclusion of any defense herein is not an admission that such defense would be waived if not included. Additionally, the omission herein of certain other defenses does not waive PRS's right to assert those defenses in the future.

*    *    *

WHEREFORE, Zaccaro respectfully requests that this Court enter judgment in his favor, dismiss the Amended Complaint with prejudice, award Zaccaro the costs and fees that he has incurred in the defense of this matter, and grant such further relief as the Court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Zaccaro hereby demands a trial by jury.

Date:  August 11, 2006                    Respectfully submitted,


                                          /s/ Matthew W. Walch
                                          One of the Attorneys for Defendant
                                          Michael Zaccaro

Matthew W. Walch
Cameron R. Krieger
Latham & Watkins LLP
233 South Wacker Drive
Sears Tower, Suite 5800
Chicago, Illinois 60606
Telephone:  (312) 876-7603
E-mail:  matthew.walch@lw.com
E-mail:  cameron.krieger@lw.com

## CERTIFICATE OF SERVICE

I, Cameron R. Krieger, an attorney, hereby certify that on August 11, 2006, I electronically

filed DEFENDANT MICHAEL ZACCARO'S ANSWER TO PLAINTIFF'S FIRST AMENDED

COMPLAINT FOR INJUNCTIVE RELIEF, COPYRIGHT INFRINGEMENT AND OTHER

RELIEF with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

- **John Michael Riccione**
  jriccione@agdglaw.com
- **Elvis Gonzalez**
  egonzalez@agdglaw.com

/s/ Cameron R. Krieger
Cameron R. Krieger

Exhibit C

Matthew W. Walch
Direct Dial: (312) 876-7603
matthew.walch@lw.com

# LATHAM&WATKINS LLP

Sears Tower, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois 60606
Tel: +312.876.7700  Fax: +312.993.9767
www.lw.com

FIRM / AFFILIATE OFFICES
Barcelona        New Jersey
Brussels         New York
Chicago          Northern Virginia
Frankfurt        Orange County
Hamburg          Paris
Hong Kong        San Diego
London           San Francisco
Los Angeles      Shanghai
Madrid           Silicon Valley
Milan            Singapore
Moscow           Tokyo
Munich           Washington, D.C.

July 13, 2007

## VIA HAND DELIVERY

EXP Pharmaceutical Services Corp.
C/O Gus J. Changaris Or Person Authorized To Accept Service
48021 Warm Springs Boulevard
Fremont, California 94539

Re:    *Pharmaceutical Inventories, Inc., v. Zaccaro*, Case No. 05 6483

To Whom it May Concern:

Enclosed please find a subpoena issued to EXP Pharmaceutical Services Corp. ("EXP") in the above-captioned case. As described in Exhibit A, the subpoena seeks the production of documents sufficient to show the design and screen layouts of any pharmaceutical returns software owned by EXP as well as the production of a sample report generated by such software. In certain discovery responses served in the above-referenced case, the plaintiff has alleged that Mr. Zaccaro copied the "look and feel" of PRS's software by using certain fields, commands and functionality that are commonplace in the pharmaceutical returns industry. The requested information regarding the software program(s) used by EXP will help prove to PRS and its counsel that software within this industry has to incorporate certain fields, commands and functionality to serve the needs of the customer in this industry and that such fields, commands and functionality are not and cannot be owned by any one business in this industry.

Please note that we fully appreciate the potential highly confidential nature of the requested information, and to that end we have enclosed a copy of the Restricting Order entered by the court in this case. Pursuant to this Restricting Order, none of the parties in the underlying litigation will be able to see any information designated as Highly Confidential Information. Indeed, access to such information is limited to outside counsel for the parties, Independent Experts, court personnel and court reporters and all such persons are explicitly bound by the terms of the Restricting Order. For your information, Section 7.8 specifically addresses the application of the protective order to documents produced by non-parties to the litigation.

The subpoena also asks for the deposition of a company representative. Such a deposition would be necessary only if we have to verify the genuineness and establish the admissibility of any documents that EXP would produce in response to the subpoena. We would be happy to discuss a Rule 901 verification if that would be more convenient and if plaintiff's

LATHAM&WATKINSᴸᴸᴾ

counsel would agree to such a verification and otherwise agree to the admissibility of the information produced by EXP.

Please do not hesitate to call me if you want to discuss the subpoena or the enclosed Restricting Order any further.

Sincerely,

Matthew W. Walch

Enclosure

cc:    George Jackson (outside counsel for Pharmaceutical Inventories, Inc.)

CH9555111

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHARMACEUTICAL INVENTORIES, INC., d/b/a PHARMACEUTICAL RETURNS SERVICE, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 05 C 6483 |
| v. | ) ) | Judge Gottschall |
| | ) | Magistrate Judge Ashman |
| MICHAEL ZACCARO and RETURNS R US INCORPORATED d/b/a PHARMA LOGISTICS, LTD., | ) ) ) | |
| Defendants. | ) ) | |

## EXHIBIT A TO SUBPOENA DUCES TECUM

## INSTRUCTIONS AND DEFINITIONS

1.      The term "document," as used herein, shall mean all material defined in Federal Rule of Civil Procedure 34 and each and every writing or record of every type that is or has been in the possession, custody or control of a responding party or to which a responding party or its counsel has access, including without limitation correspondence, memoranda, stenographic or handwritten notes, drafts, studies, blueprints, journals, invoices, sales slips, vouchers, production records, service records, warranty records, catalogs, advertisements, bulletins, pamphlets, books, publications, pictures, films, voice or other recordings, maps, reports, storage discs or other data records.

2.      The phrase "referring or relating to," as used herein, shall mean all information, facts and/or documents that directly, indirectly or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to and/or are otherwise connected with the subject matter about which a request is being made.

3.    The term "EXP," as used herein, shall mean EXP/Pharmaceutical Services Corp., as well as its agents, attorneys, representatives, employees, officers, directors, shareholders and any other person or persons acting for or purportedly acting on its behalf.

4.    The words "and" and "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these requests any information that might be deemed outside their scope by any other construction.

5.    The term "pharmaceutical returns software" shall mean any computer software that assists in performing any of the following functions with respect to the management of expired, short dated or recalled pharmaceuticals and physician samples:  (1) receive; (2) count; (3) data capture; (4) inventory; (5) determine credit status; (6) determine waste status; (7) generate Returned Goods Authorizations; (8) create debit memo numbers; (9) reconcile credit transactions; (10) generate rebate checks; (11) generate credit letters; (12) generate credit reports; (13) generate inventory management reports; (14) interpret and apply manufacturer return policies; (15) store manufacturer returned goods policies; and (16) validate for credit or disposal.

6.    Unless stated differently in any of the individual document requests, the relevant time frame for each document request is between 1994 and the present.

## SPECIFICATIONS

1.    Training or user manuals for any pharmaceutical returns software owned or licensed by EXP.

2.    Documents sufficient to show the overall design of any pharmaceutical returns software owned or licensed by EXP.

3.    Documents sufficient to show representative computer screen layouts for any pharmaceutical returns software owned or licensed by EXP.

2

4.    Representative sample reports generated by any pharmaceutical returns software owned or licensed by EXP.

Received Time Jul. 16.  9:31AM

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

DISTRICT OF      CALIFORNIA

PHARMACEUTICAL INVENTORIES, INC.

V.

MICHAEL ZACCARO AND RETURNS R US

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05 C 6483 (N.D. Ill.)

TO:   EXP Pharmaceutical Services Corp.
C/O Gus J. Changaris/Person Authorized To Accept Service
48021 Warm Springs Boulevard
Fremont, California 94539

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| *(Deposition for person most knowledgeable of authenticity of produced documents) | DATE AND TIME |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   505 Montgomery Street, Suite 2000 San Francisco, CA 94111 (to be recorded by stenographic means)* | DATE AND TIME 8/13/2007 9:00 am |
| --- | --- |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

PLEASE SEE EXHIBIT A ATTACHED HERETO.

| PLACE    505 Montgomery Street, Suite 2000 San Francisco, CA 94111 | DATE AND TIME 8/13/2007 9:00 am |
| --- | --- |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _Matt W. W , Attorney for Michel Zaccaro_ | DATE 7/13/2007 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
MATTHEW W. WALCH, LATHAM & WATKINS LLP, 233. S. WACKER DRIVE, SUITE 5800, CHICAGO, IL 60606

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number

Ex C-3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHARMACEUTICAL INVENTORIES,              )
INC., d/b/a PHARMACEUTICAL               )
RETURNS SERVICE,                         )
                                         )       Case No. 05 C 6483
            Plaintiff,                   )       Judge Gottschall
                                         )       Magistrate Judge Ashman
                                         )
      v.                                 )
MICHAEL ZACCARO, an Individual, and      )
RETURNS R US, INCORPORATED d/b/a         )
PHARMA LOGISTICS, LTD.                   )
                                         )
            Defendant.                   )
                                         )

## RESTRICTING ORDER

This matter having come before the Court on the separate motions of Plaintiff

Pharmaceutical Inventories, Inc. d/b/a Pharmaceutical Returns Service ("PRS") and Defendant

Michael Zaccaro ("Mr. Zaccaro") for entry of a restricting order, the Court hereby holds pursuant

to Fed. R. Civ. P. 26(c) and Local Rule 26.2 that certain documents or other information or

materials in the encaptioned lawsuit, that have been or will be exchanged in discovery or

otherwise, are confidential and/or proprietary or contain confidential and/or proprietary

information. These documents, materials and information are properly usable by the other

parties solely in connection with such lawsuit and should otherwise be kept and remain

confidential through the course of the litigation and thereafter and not be used for any other

purpose. The following restrictive provisions govern certain documents or other information and

materials that are confidential and/or proprietary, or that contain confidential and/or proprietary

information as defined below, be, and hereby are, imposed upon all discovery and litigation

proceedings described herein, whether such discovery and litigation proceedings be directed at a

party to the litigation or at any other person or entity. The parties have agreed on this form of the Restricting Order.

## I.    DEFINITIONS

1.1.    When used herein, the word "document" means all written, recorded, or graphic matter whatever, including but not limited to interrogatory answers, responses to requests for admission, documents produced in response to document requests or voluntarily, including writings, drawings, graphs, charts, maps, recordings or other materials within the contemplation of Fed. R. Civ. P. 34, deposition testimony, deposition transcripts and exhibits, trial exhibits, hearing or trial transcripts, any portion or summary of any of the foregoing, and any other papers that quote from, reflect, reveal or summarize any of the foregoing.

1.2.    "Confidential Information" means such information that is used by a party in, or pertaining to, its business or its personal dealings, which information is not generally known and which that party would normally not reveal to third parties or, if disclosed, would require such third parties to maintain in confidence. Confidential Information includes, but is not limited to, the following:

(a)    Documentation relating to copyrights owned by the parties to this action, and any assignments of the copyrights;

(b)    Documents relating to licenses of any of the exclusive rights in the parties' Software or Source Code;

(c)    Other private, confidential and/or proprietary information that the parties believe in good faith should be kept Confidential.

1.3.    When used herein, "Confidential Material" means any and all documents or things that contain, reflect or reveal Confidential Information.

1.4.    When used herein, "Highly Confidential Information" means particularly sensitive technical, financial, and business documents, information, and material, both business

2

and personal that relate to proprietary information that the producing party reasonably believes is of such nature and character that disclosure of such information would be harmful to the producing party. Highly Confidential Information includes, but is not limited to, the following:

(a)    The pharmaceutical returns processing software utilized by Returns "R" Us, Inc., d/b/a Pharma Logistics ("the Pharma Logistics Software")'

(b)    The pharmaceutical returns processing software utilized by PRS ("the PRS Software");

(c)    Documentation related to any modifications to the Pharma Logistics Software and/or the PRS Software;

(d)    All design documentation for the Pharma Logistics Software and the PRS Software;

(e)    All current and prior versions of the Pharma Logistics Software source code and the PRS Software source code;

(f)    Documentation related to work performed on the Pharma Logistics Software;

(g)    The parties' customer files;

(h)    Files on the hard drives of the parties' personal, home and business computers, and DeMars' business computers, to the extent that they contain any of the foregoing information;

(i)    Income tax returns;

1.5.    When used herein, "Highly Confidential Material" means any and all documents or things that contain, reflect or reveal Highly Confidential Information.

1.6.    When used herein, the term "lawsuit" shall include the above-captioned action, and any ancillary proceedings such as those brought in connection with subpoenas to non-parties, including without limitation, motions to compel or motions for protective orders by or in connection with subpoenas to non-parties.

3

## 2.    USE OF INFORMATION AND MATERIAL

All Confidential and Highly Confidential Information or Material discovered or produced in this lawsuit shall be used by the receiving party solely for the prosecution and/or defense of the lawsuit and for purposes of evaluation of settlement and for settlement negotiations, and not for any other purpose, including without limitation, any competitive or business purpose. Nothing contained herein shall restrict or prevent any party from disclosing or otherwise using any information or documents not obtained under this Stipulation, in which case this Stipulation shall not apply to such information or documents

## 3.    DESIGNATION OF CONFIDENTIAL OR HIGHLY CONFIDENTIAL INFORMATION OR MATERIAL

3.1.    Standard Designation Procedure. Confidential Information and Material disclosed or discovered in this lawsuit may be designated by the counsel of the disclosing party as such and thus made subject to the limitations of this Order. Except for Confidential Information disclosed during the course of a deposition or hearing in this lawsuit, Confidential Information shall be so designated in writing by the counsel for the party making the designation prior to or at the time of the disclosure of such information. Confidential Material shall be so designated by stamping or otherwise placing on the face of the document(s) the legend "[PRS or ZACCARO or PHARMA LOGISTICS or THIRD-PARTY] CONFIDENTIAL INFORMATION: SUBJECT TO RESTRICTING ORDER." All things containing Confidential Information that cannot be conveniently labeled shall be designated as Confidential by letter to the receiving party.

3.2.    Highly Confidential Information. A party may further designate certain categories of Confidential Information, specified in paragraph 1.4 above, as Highly Confidential Information if the counsel for the disclosing party in good faith believes that such a designation

4

is necessary to prevent the party from potentially incurring serious economic, competitive injury, or an unwarranted invasion of privacy. Highly Confidential Material disclosed or discovered in this lawsuit may be designated by the counsel of the disclosing party as such and thus made subject to the limitations of this Order. Highly Confidential Information shall be so designated in writing. Highly Confidential Material shall be so designated by stamping or otherwise placing on the face of the document(s) the legend "[PRS or ZACCARO or PHARMA LOGISTICS or THIRD-PARTY] HIGHLY CONFIDENTIAL: ATTORNEYS' EYES ONLY." All things containing Highly Confidential Information that cannot be conveniently labeled shall be designated as Highly Confidential by letter to the receiving party.

    3.3.    Copies and Derivative Items. Any copy made of any document or thing so designated, or any document or thing created (e.g., any abstract, summary, memorandum or exhibit) containing information designated pursuant to this Order shall bear on its face the appropriate legend specified in paragraphs 3.1 and 3.2. All things containing Confidential or Highly Confidential Information that cannot be conveniently labeled shall be designated as such by letter to the receiving party.

    3.4.    Inspections. If, during the course of discovery in this action, a party hereto, or its representative, is authorized to inspect another party's facilities, any documents or things generated as a consequence of any such inspection shall be deemed by the inspecting party to be Highly Confidential Information and shall be treated as such.

    3.5.    Designation of Information Disclosed during Depositions or Hearings. Confidential or Highly Confidential Information disclosed during the course of a deposition or hearing in this lawsuit, including the use of documents or materials designated as Confidential or Highly Confidential at any depositions or hearing, shall be so designated by advising other

5

parties and the court reporter at the conclusion of such deposition or hearing that the information disclosed is confidential and that the transcript, or a portion thereof, should be treated as Confidential or Highly Confidential under this Order and by instructing the court reporter at the conclusion of the deposition or hearing to note the appropriate designation on the transcript. Further, a party may also designate a transcript, or portion thereof, as Confidential or Highly Confidential by advising the other parties and the court reporter, in writing, of such designation within 30 days after receipt of the transcript and instructing the court reporter to add the appropriate legend to the transcript. During such 30-day period, all deposition and hearing transcripts shall be treated as Highly Confidential under paragraph 4 herein.

      3.6.   Court filings. Documents containing Confidential or Highly Confidential Information or Material shall NOT be filed with the Clerk of Court. Such documents requiring the Court's review shall be submitted to chambers *in camera* in a sealed envelope bearing the caption of the case, case number, the title of the motion or response to which the submitted confidential information pertains, and the name and telephone number of counsel submitting the documents. A redacted copy of the pleading shall be filed with the Clerk of Court for the record. The parties are ordered to retain copies of all documents containing Confidential or Highly Confidential Information or Material that are provided in discovery under this Order. The disclosing party shall maintain the original documents intact for any further review.

## 4.   TREATMENT OF CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION AND MATERIAL

      4.1.   Confidential Information and Material. The only individuals who shall be permitted to learn of Confidential Information or to view another party's or non-party's Confidential Material produced pursuant to this Order or to learn about their contents or

6

substance, other than the person or entity producing or providing such Confidential Information or Material and the other parties to the lawsuit, are:

  4.1.1.  Any trial, appellate, or magistrate judge of any Court presiding over the lawsuit or any proceeding ancillary to the lawsuit, and any clerk, secretary, reporter or other personnel employed by such Court;

  4.1.2.  Outside and inside legal counsel for the parties who are participating in the prosecution or defense of the lawsuit, and legal assistants, clerical personnel, secretaries and other regular or temporary employees or agents working under the direction of such attorneys and to whom it is necessary that Confidential Information or Material be disclosed;

  4.1.3.  Stenographic reporters, copying services, and imaging services in the lawsuit;

  4.1.4.  Independent consultants or experts advising the parties' outside legal counsel concerning the lawsuit (and only when essential to the experts' or consultants' activities in connection therewith), including any person designated or to be designated as a controlled expert witness in the lawsuit;

  4.1.5.  Mock jurors, focus group members, and the like selected by counsel or trial consultants or jury consultants in preparation for proceedings in the lawsuit;

  4.1.6.  Employees of each party who have a legitimate need to know or review the Confidential Information or Material in connection with this lawsuit;

  4.1.7.  Any former employee of the designating party or any former employee of such party who was involved with the matters the item is directed to at the time the events to which the item is directed occurred.

Received Time Jul. 16.  9:31AM

4.1.8.  Any individual who authored or received the item prior to its production to the receiving party.

4.2.    Highly Confidential Information and Material.  The only individuals who shall be permitted to learn of Highly Confidential Information or to view another party's or non-party's Highly Confidential Material produced pursuant to this Order or to learn about their contents or substance, other than the person or entity producing or providing such Highly Confidential Information or Material, are:

4.2.1.  Persons described in subparagraph 4.1.1;

4.2.2.  Outside legal counsel for the parties who are participating in the prosecution or defense of the lawsuit, and legal assistants, clerical personnel, secretaries and other regular or temporary employees or agents working under the direction of such attorneys and to whom it is necessary that Highly Confidential Information or Material be disclosed;

4.2.3.  Persons described in subparagraph 4.1.3;

4.2.4.  Persons described in subparagraph 4.1.4;

4.2.5.  Any individual who authored or received the item prior to its production to the receiving party.

4.3.    Except for the persons authorized by this paragraph 4, no other employees, agents or representatives of any party, nor any other persons or entities, shall be permitted access to any Confidential or Highly Confidential Information or Material.

4.4.    All persons to whom Confidential or Highly Confidential Information or Material are disclosed or given shall maintain the confidentiality of same, subject to the terms of this Order.

8

4.5.    Except for persons described in subparagraphs 4.1.1, 4.1.2, 4.1.3, 4.1.6, 4.1.8, 4.2.1. 4.2.2, 4.2.3, and 4.2.5 above, all persons to whom any Confidential or Highly Confidential Information or Material are disclosed shall, prior to any disclosure to them, execute a "Restricting Agreement" in the form attached hereto as Exhibit A.  Said signed agreement shall be retained by counsel for the receiving party until termination of the lawsuit, or until such copy is reasonably requested by the designating party for use in an investigation of a violation of this Restricting Order.

4.6.    Before any disclosure of Confidential Information or Material to any person described in subparagraph 4.1.5, any such person shall execute a "Non-Disclosure Agreement" in the form attached as Exhibit B.  Said signed agreement shall be retained by counsel for the receiving party until termination of the lawsuit, or until such copy is reasonably requested by the designating party for use in an investigation of a violation of this Restricting Order.  No documents or physical things embodying Confidential Information or Material shall be left in the possession of any such person.

4.7.    In the event counsel for any party determines that any person other than those referred to in this paragraph 4 should have access to Confidential or Highly Confidential Information or Material, counsel shall confer with counsel for all other parties in an effort to resolve the matter.  In the absence of agreement, any party may move the Court to allow such access.

4.8.    Nothing shall prevent disclosure of an item designated as Confidential or Highly Confidential Information or Material to any entity by the party who designated such item as Confidential or Highly Confidential.

Received Time Jul. 16.  9:31AM

4.9.    Nothing shall prevent disclosure beyond the terms of this Order if the party designating the information consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders such disclosure.

4.10.    The receiving party and its counsel shall incur no liability for disclosures made prior to notice of any designation of confidentiality, except for the 30-day period described in Paragraph 3.5.

4.11.    Nothing in this Order shall prevent or otherwise restrict any counsel from rendering advice to counsel's client and, in the course thereof, relying generally on counsel's examination of materials designated confidential under this Order; provided, however, that in rendering such advice and otherwise communicating with such client, counsel shall not make a specific disclosure of any materials or information so designated as Highly Confidential Information.

4.12.    In the event that any person in receipt of Confidential or Highly Confidential Information or Material shall receive a written request, subpoena, or Court Order seeking disclosure of such information, such person shall immediately upon receipt of such request, subpoena or Court Order, notify counsel for the designating party of the request, subpoena or Court Order, and shall provide counsel for the designating party with a copy of the same.

4.13.    All persons described in subparagraph 4.1.4 to whom any Highly Confidential Information or Material is disclosed shall not accept employment with or provide any services to either party or any third party in direct competition with either party for one (1) year following the termination of this lawsuit.

5.    **GREATER PROTECTION AND LIMITATION OF ACCESS**

10

5.1.    Nothing contained in this Order shall constitute a waiver of any party's right to assert that particular Confidential or Highly Confidential Information or Material is entitled to greater protection and/or limitation of access than afforded by this Order, including an assertion that certain such information or materials should not be produced at all.

5.2.    In the event that counsel for any party asserts that Confidential or Highly Confidential Information or Material is entitled to such greater protection and/or limitation of access, counsel shall confer with counsel for all other parties in an effort to resolve the matter. If resolved by agreement, counsel shall submit a stipulated form of Order to the Court reflecting any terms of agreement providing any such greater protection or limitations of access than otherwise provided by this Order. In the absence of agreement, any party may move the Court for an Order further protecting, limiting or denying access.

## 6.    INFORMATION DESIGNATED IMPROPERLY

6.1.    The restrictions set forth in this Order shall not apply to:

6.1.1.    Any information which at the time of disclosure is available to the public;

6.1.2.    Any information which after disclosure becomes available to the public through no act, or failure to act, on behalf of the receiving party, its counsel or independent consultant; and

6.1.3.    Any information which the receiving party, its counsel or independent consultants can show (i) was lawfully known by the receiving party before it was disclosed by the disclosing party, (ii) as a matter of written record was independently developed by the receiving party, (iii) was obtained from the furnishing party without having been identified as Confidential or Highly Confidential Information, or (iv) was received after the time of disclosure hereunder from a third party having the right to make such disclosure and was not required to be held in confidence.

11

6.2.    Any party or an interested member of the public may challenge any designation of confidentiality by giving written notice to the designating party (which notice shall specify with particularity the document or other matter pursuant to which the challenge is made). Within ten (10) days of receipt of such notice, counsel for the party that produced the material must determine whether to withdraw the designation. If the designation is withdrawn, counsel for the designating party shall give written notice of the change and shall substitute undesignated copies of the items. If counsel for the designating party does not withdraw the designation, the party making the challenge may file a motion with the Court with respect thereto. The parties agree that before seeking any relief from the Court they will make a good faith effort to resolve any disputes concerning the appropriate treatment of such materials. Until this Court enters an order changing the designation, the material shall be treated in accordance with their initial designation.

6.3.    No party shall be obligated to challenge the propriety or correctness of the designation of information as Confidential or Highly Confidential Information or Material and a failure to do so shall not preclude a subsequent challenge to such status. The burden of proof with respect to the propriety or correctness in the designation of information or material as Confidential or Highly Confidential shall rest on the designating party, except that the burden of proving the exceptions set forth in Paragraph 6.1 shall rest on the party asserting the exceptions.

6.4.    A party that inadvertently fails to designate Confidential or Highly Confidential Information or Material at the time of its production shall have thirty (30) days thereafter in which to correct its failure, or for good cause shown after the expiration of the thirty days. Such correction, and notice thereof, shall be made in writing, accompanied by substitute

12

copies of each affected item, designated as described above, or any claim of confidentiality under this Order will be deemed waived.

6.5.    If a producing party inadvertently discloses to a receiving party information that is privileged or otherwise immune from discovery, said producing party shall promptly upon discovery of such disclosure so advise the receiving party in writing and request that the item or items of information be returned, and no party to this action shall thereafter assert that such disclosure waived any privilege or immunity. It is further agreed that the receiving party will return such inadvertently produced item or items of information and all copies thereof within ten (10) days of the earliest of (i) discovery by the receiving party of its inadvertent production, or (ii) receiving a written request for the return of such item or items of information unless the receiving party has, within that 10 day period, submitted an application to the court asserting that the information was properly produced and that the assertion of privilege or immunity is not valid.

7.    **MISCELLANEOUS**

7.1.    The fact that a document or transcript contains both Confidential or Highly Confidential Information or Material and other non-confidential information or material does not affect the protected nature of the Confidential or Highly Confidential Information and Material therein, and with regard to the procedures in this Order, the entire document shall be treated as Confidential or Highly Confidential Information or Material, unless only portions thereof are designated, in accordance herewith. Upon request of a receiving party, the producing party shall designate those portions of a document or transcript which contain Confidential or Highly Confidential Information or Material.

7.2.    This Order does not supersede any existing confidentiality agreement to which a party is bound, which shall continue in full force; however, production or disclosure of

13

Confidential or Highly Confidential Information or Material under this Order shall be deemed to be disclosure pursuant to a Court Order. In the event that any agreement with a third party prohibits such production without consent, then the party from whom production is sought shall, in good faith, seek consent from such third party. If consent is not provided within 10 days after such request, the party from whom the information is sought shall notify the party requesting the information, who may thereafter apply to the court, by order to show cause with notice to the third party, for an order compelling production of the information. In the event that any agreement with a third party requires such third party to be given notice and an opportunity to object to such production, then the party from whom the information is sought shall promptly advise such third party of the request and shall produce the information unless the party or the third party applies to the court for a protective order within 10 days after receiving such notice or such other time as the agreement provides.

      7.3.    The provisions of Paragraph 7.1 requiring entire documents and, during the 30-day period addressed in Paragraph 3.5, entire deposition transcripts to be treated as Confidential or Highly Confidential Material even when only portions thereof contain Confidential or Highly Confidential Information are intended to protect and control dissemination of the Confidential or Highly Confidential Information. Confidential or Highly Confidential portions of any such transcript or document shall be disclosed only to persons entitled to see the same pursuant to this Order. Portions of any such document or transcript that are not designated as Confidential or Highly Confidential Information may be copied or quoted in connection with the lawsuit (after redaction of any designated Confidential or Highly Confidential Information appearing on the same page) without further action being required

14

under this Order. The parties should endeavor, however, to avoid over-designating documents or transcripts as Confidential or Highly Confidential to the extent possible.

7.4.    Any party shall have the right to apply to the Court, after efforts by counsel to resolve the matter, for an Order permitting further disclosure or declassification of Confidential or Highly Confidential Information or Material hereunder upon a showing that such is necessary to an adequate preparation of the movant's case, is otherwise necessary to protect the interests of such party, that the designation of Confidential or Highly Confidential Information or Material was unnecessary, unjustified or otherwise inappropriate within the contemplation of this Order, or for any other just cause. The party requesting disclosure or declassification shall adhere to all terms of this Order except to the extent permitted by the Court's ruling on such application.

7.5.    Nothing in this Order shall constitute an admission by any party or impose a duty upon any party to produce any documents, information and materials that are not discoverable pursuant to the Federal Rules of Civil Procedure for reasons other than the confidentiality concerns addressed by this Order.

7.6.    Nothing in this Order shall be construed to affect the admissibility of any document, material or information at any trial or hearing. Any request for confidentiality, closure, or sealing of any hearing or trial must be made to the judge then presiding.

7.7.    Upon conclusion of the lawsuit, including all appeals therefrom, all Confidential or Highly Confidential Information or Material produced by a party (including any duplicates thereof) shall, at the option of the producing party be destroyed. Counsel shall verify proper disposition thereof.

Received Time Jul. 16.    9:31AM

7.8.    Any non-party from whom discovery is sought in the lawsuit may invoke the protection of this Order to designate documents or other information and materials as Confidential or Highly Confidential Information or Material hereunder. In such event, the non-party agrees to be bound by the terms of this Order, and all parties agree that the non-party's Confidential or Highly Confidential Information and Material shall be treated in a manner consistent with this Order in all respects.

7.9.    After the conclusion of this action, including without limitation, any appeal or retrial, this Order shall continue to be binding upon the parties hereto, and all persons to whom designated materials have been disclosed or communicated. This Court retains jurisdiction over the parties hereto indefinitely with respect to any dispute regarding the improper use of information produced under this Order.

7.10.    Local Rule 26.2 Statement.

7.10.1. The identity of the persons who are to have access to the documents without further order of court are as follows: Any attorneys, paralegals or staff associated with either Aronberg Goldgehn Davis & Garmisa, or Latham & Watkins LLP, including but not limited to John M. Riccione, Elvis Gonzalez, Matthew W. Walch and Cameron R. Krieger.

7.10.2. Instructions for the disposition of the filed restricted documents following the conclusion of the case: Following the final disposition of the case in the District Court, the party who initially produced these documents and who initially requested such documents be designated as confidential or restricted by the District Court must file a motion for the return of previously sealed or restricted documents within 60 days after the case is closed. Any documents that are not so withdrawn will become part of the public case file.

16

SO ORDERED.

Sept 27, 2006

United States Magistrate Judge Ashman

Prepared by:

Matthew W. Walch
Cameron R. Krieger
LATHAM & WATKINS LLP
233 South Wacker Drive Suite 5800
Chicago, Illinois 60606
Telephone:    (312) 876-7700
Facsimile:    (312) 993-9767

*Attorneys for Defendants*

17

## EXHIBIT A: RESTRICTING AGREEMENT

I, _____, hereby acknowledge that I have received a copy of the Restricting Order entered in *Pharmaceutical Inventories, Inc. d/b/a Pharmaceutical Returns Service, v. Michael Zaccaro, et al.* Case No. 05 C 6483, In the United States District Court for the Northern District of Illinois. I have read that Order, I understand the terms, conditions, and restrictions imposed by that Order on one who is given access to confidential documents and information represented by the parties as confidential pursuant to that Order, and I agree to be bound by all of the terms, conditions, and restrictions imposed by that Order.

I will return all documents, material and information designated as confidential I receive to counsel who provided them to me. I acknowledge that the return or subsequent destruction of such documents, material, and information shall not relieve me from any of the obligations imposed on me by that Order.

I further acknowledge that I understand that I may be subject to sanctions imposed by the Court, including an order of contempt, if I fail to abide by and comply with that Order.

Dated: _____    _____
                                   Name

                                   _____
                                   Occupation

                                   Business Address and Telephone:

                                   _____
                                   _____
                                   _____
                                   _____

## EXHIBIT B: NON-DISCLOSURE AGREEMENT

I, _____, hereby acknowledge:

1.     I understand that the focus group study in which I have been requested to participate will result in the receipt by me of information considered by third parties to be confidential and proprietary.

2.     In consideration of my selection to participate in the focus group and my receipt of compensation for my participation in that study, I agree to keep all information disclosed to me during the course of such study as confidential, and I will not disclose such information to any other person.

Dated: _____

_____
Name

Business Address and Telephone:

_____
_____
_____
_____

Exhibit D

# Myers, Hawley, Morley, Myers & McDonnell

**An Association of Attorneys**

166 Main Street
Los Altos, California 94022-2905
TELEPHONE: 650-948-1600 -- FACSIMILE: 650-949-3581
E-Mail: *chicolaw@att.net*
July 26, 2007

**Via Overnight Mail, Fax, and E-mail**

Matthew W. Walch, Esq.
Latham and Watkins
Sears Tower, Suite 5800
233 S. Wacker Drive
Chicago, IL 60606

Re:    Pharmaceutical Inventories, Inc. v. Zaccaro, Case No. 05 6483

Dear Mr. Walch:

This office represents EXP Pharmaceutical Services Corp. ("EXP"). We are in receipt of your Subpoena Duces Tecum issued in the above-entitled proceeding and received by EXP on July 16, 2007. This letter will serve as an objection by EXP to the Subpoena, as provided for in FRCP 45(c)(2)(B) on the grounds set forth below. Provided, however, EXP has agreed to produce certain of the reports it generates and provides to its customers which relate to your stated need for EXP's information. Considering the grave risk of harm and loss to EXP if the information sought is produced, we would submit that you, and any other person reviewing this subpoena, strongly consider whether relevant information can be sought in a form and manner less intrusive to the rights of EXP.

## I.    Background.

As you are aware, EXP is a competitor of Pharmaceutical Inventories, Inc. (also known as Pharmaceutical Returns), and your clients, Mr. Zaccaro and Pharma Logistics. The industry in which each of these companies operates is highly competitive such that the slightest exchange of information can create a substantial advantage to the party receiving such information. We consider that, regardless of the Restricting Order (and there are aspects to the Restricting Order that we believe offer inadequate protection to EXP), the potential harm to EXP from the inadvertent disclosure of the information sought is so great that care should be taken to determine that the information is absolutely necessary, and cannot be generated from other sources.

1

Over the past five years EXP has spent several million dollars in the design, development, and implementation of computer software and related documentation to control the operation of its business and manage its accounts (collectively the "Software"). The Software was created without reference to the software of any other competitor. EXP considers its Software and the documentation with respect to that software to be highly proprietary trade secrets. The Software is not disclosed to customers, and is maintained by specific employees at EXP.

EXP is not a party to this proceeding. As far as we know, there is no connection between EXP and any party to this proceeding, except that they are competitors. We are unaware of any allegation that would establish an evidentiary link between the parties and EXP.

## II.    Request.

The Subpoena demands production of four categories of information, namely:

1. Training or user manuals for any pharmaceutical returns software owned or licensed by EXP.

2. Documents sufficient to show the overall design of any pharmaceutical returns software owned or licensed by EXP.

3. Documents sufficient to show representative computer screen layouts for any pharmaceutical returns software owned or licensed by EXP.

4. Representative sample reports generated by any pharmaceutical returns software owned or licensed by EXP.

Your letter indicates that your clients need the items requested in the Subpoena because the "plaintiff has alleged that Mr. Zacarro copied the 'look and feel' of PRS' software by using certain fields, commands and functionality that are commonplace in the pharmaceutical returns industry" (emphasis added).

## III.   Objections.

EXP objects to the Subpoena on the grounds that:

### A.    General Objections.

1.      EXP objects to your Instructions and Definitions to the extent that they purport to impose any requirement beyond those contained in the Federal Rules of Civil Procedure.

2

2.      EXP objects to the Subpoena on the grounds that it fails to comply with the dictates of Rule 45, and that it specifically fails to include language in the subpoena that is mandated by Rule 45. For this reason the Subpoena is patently invalid.

3.      EXP objects to Instructions 3, 4, 5 and 6 to the extent that they seek information or materials that are (a) not relevant to a claim or defense in the underlying lawsuit or reasonably calculated to lead to the discovery of admissible evidence, (b) available from a party to the litigation, (c) available from a public source, (d) subject to attorney-client, attorney work-product, or joint interest protections; or (e) privileged, confidential, or trade-secret information. Further, EXP cannot be expected to know – or figure out – all information in the possession, custody or control of "its agents, attorneys, representatives, employees, officers, directors, shareholders and any other person or persons acting for or purportedly acting on its behalf." (Definition and Instructions, Item No. 3).

## B.      Specific Objections.

1.      **Highly Confidential Trade Secrets of EXP.** Like Mr. Zaccaro, EXP considers (a) its Software one of its most valuable assets, (b) relies upon the functionality of its program to differentiate itself from its competitors, and (c) considers its Software to be a highly proprietary trade secret. Under California law, and federal law for that matter, the Software is a trade secret. Improper use or disclosure of the Software could have a devastating impact on EXP. Considering how important the Software is to EXP, we would respectfully submit that the probative value of the information sought does not outweigh the rights of EXP to have their trade secret and confidential information protected. Quashal or modification of the subpoena is required under FRCP 45(c)(3).

2.      **Undue Burden.** The subpoena creates an undue burden on EXP.

a.      **Time.** Instruction 6 of the subpoena seeks documents for a period from 1994 to the present. Over this fourteen year period EXP has used numerous versions of software to manage its accounts. These versions have been either lost to EXP, or would be extremely expensive to resurrect. The only purpose in resurrecting this software, if that were possible, would be to comply with the mandate of this Subpoena.

b.      **Scope.** For this fourteen year period, Zaccaro seeks all training and user manuals, design documents, and representative computer screen layouts. These documents, if possible to produce, will require numerous hours of employee time, and run to several thousand pages of documents.

c.      **Cost of Compliance.** As noted above, the pharmaceutical returns industry is highly competitive. EXP is not a large company compared to others in the industry. It keeps a minimal administrative staff designed to cover the work at hand. There are no legions of staffers readily available to research and coordinate compliance with this Subpoena. To properly respond, EXP would have to either hire new staff, or

take existing staff away from other work. This seems particularly unfair in light of the fact that this litigation does not involve EXP, and yet they are compelled to spend time and money producing information at the request of a competitor.

**3.    Overbroad**. The Subpoena is overbroad in its scope. For a fourteen year period Zaccaro seeks all training and user manuals for any software owned or licensed by EXP, documents which establish the overall design of such software, all "computer screen layouts for software owned or licensed by EXP," and all reports. A sophisticated form of software, such as developed and currently in use by EXP, has over two hundred thousand lines of code, has over three hundred screens, may be used to generate approximately one hundred reports, and would fill over eight thousand document pages, if printed in its entirety. Further, the Subpoena seeks such information, not only for the current Software, but software over the past fourteen years. The production of such materials may require several hundreds of hours of employee time. It should be noted that nowhere has your clients agreed to compensate EXP for this mammoth effort.

**4.    Need**. EXP respectfully objects on the basis that the information sought is not necessary for the litigation of the dispute between the parties. Both Plaintiff and Defendant, and their experts, know what fields, commands and functions are commonplace in pharmaceutical returns software. As you suggest in your letter, it is to be expected that businesses operating in the pharmaceutical returns industry would at a minimum incorporate the same functions set forth in the Section 5 of the Instructions and Definitions Section of the Subpoena (the "Listed Functions") in the software programs. It is respectfully submitted, and I am sure it can be adequately proved by evidence already in your possession, that every successful company in the pharmaceutical returns business must be able to incorporate in their software the Listed Functions. A competitor's inability to cover those items in its reports would result in potential losses to the company, or inaccurate billings to the customer.

As a method of accommodating your request, however, and in response to your Specification, Item No. 4, enclosed you will find a series of representative sample reports generated by EXP's Software that are provided to EXP's customers; we are objecting to the production of reports that are maintained internally at EXP. We believe that the enclosed sample reports provide you with everything that is germane to your proceeding, or that EXP could be reasonably expected to provide. Our reports, on their face, indicate the look, function, scope, and relationship of various account information that is produced for customers and kept by EXP. As to the general custom and the practice in the industry, our reports will give you, and your experts, that information, and reference to other information from EXP should not be necessary. The fact that the Software incorporates the Listed Functions, but not how EXP achieves the functions, can be extrapolated from these reports EXP.

## IV.    Conclusion.

Based upon the foregoing we respectfully object to the Subpoena. We are hopeful that the materials provided are sufficient to satisfy the needs of the litigants and will allow EXP to avoid the production of documents that would be expensive to produce, which would disclose confidential information and trade secrets of EXP, and which would be of minimal probative value in the litigation. In light of these objections, and if your clients feel the necessity to file a motion to compel, we would ask that the Court consider these objections, and appoint a Special Master, under FRCP 53, to review the requested material at EXP's offices in Fremont, California, before compelling EXP to disclose confidential information to counsel and experts in this litigation.

We would be prepared to stipulate to the appointment of a Special Master, at the expense of the parties to the litigation, to advise the Court on issues of relevancy and whether an undue burden is imposed on EXP by virtue of the scope and breadth of the subpoena.

In light of our Local Rule 37.1, and our genuine desire to resolve this matter without resort to proceedings before the Court, we would ask that you contact us in an effort to resolve all issues raised in the Subpoena.

Very truly yours,

PAUL I. MYERS III

cc:    Gus J. Changaris
       Alexander Myers, Esq.

## Attachments to Letter to Matthew W. Walch, Esq
### Dated July 26, 2007
### Specimen Reports from EXP

Attached are specimen reports from EXP. These reports are produced by EXP and circulated among its customers and manufacturers. These reports were generated as sample reports for production to Matthew W. Walch, Esq. and Latham and Watkins, counsel for Michael Zaccaro.

1.    Drug Waste Report (Non-Schedule - 4 pages; Schedule – 2 pages).

2.    Hazardous Waste Report (1 page).

3.    Indate Report (1 page).

4.    Processed Indates Report (1page).

5.    Processed Recall Report (1 page).

6.    Returned Non-Schedule Drug Report (3 pages).

7.    Returned Drug Summary Report (2 pages).

8.    Returned Drug Summary Report (2 pages).

9.    Returned Schedule Drug Report (1 page).

10.   Returned Drug Summary (3 pages).

11.   Return Through Wholesaler Report (1 page).

**EXP** *PHARMACEUTICAL SERVICES CORP.*

18021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
          (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:        01/26/2007
Order No:    EXP-499-2007-1
Pickup Date: 01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
DEA #     RE0190188
Site:     ABC HOSPITAL
W/S:      ABC WHOLESALER, ABC CITY
          12345 WHOLESALER ST., , ABC CITY, CA 90000

### Schedule Drug Waste Report

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|-----|----|----|----|------|--------------|------------|----------|---------|------|-------|-------|
| **ABBOTT HOSPITAL PRODUCTS** | | | | | | | | | | | |
| 00074427902 | RX | 1% | 00025 | SOL | LIDOCAINE HCL | | | | 8.0 | 0.74 | 4.12 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 00074428202 | RX | 2% | 00025 | SOL | LIDOCAINE HCL | | | | 5.0 | 1.13 | 3.95 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 00074534434 | RX | 4.2% | 00010 | SOL | SODIUM BICARBONATE | | | | 6.0 | 5.42 | 22.74 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 00173054301 | RX | 10 MG/ML | 00010 | INJ | NIMBEX | | 12/01/04 | | 2.0 | 1,788.97 | 2,504.56 |
| *Manufacturer does not credit for products beyond this period past expiration* | | | | | | | | | | | |
| | | | | | | **ABBOTT HOSPITAL PRODUCTS TOTAL:** | | | | | **$2,535.37** |
| **ABBOTT PHARMACEUTICAL** | | | | | | | | | | | |
| 00074376960 | RX | 300 MG | 00060 | CAP | OMNICEF | | | | 40.0 | 4.12 | 115.39 |
| *Product is not returnable* | | | | | | | | | | | |
| 00074438010 | RX | 2 MG/ML | 00010 | SOL | NIMBEX | | | | 40.0 | 18.22 | 510.05 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 00074518211 | RX | 0.075 MG | 00100 | TAB | SYNTHROID | | | | 67.0 | 0.44 | 20.50 |
| *Product is not returnable* | | | | | | | | | | | |
| | | | | | | **ABBOTT PHARMACEUTICAL TOTAL:** | | | | | **$645.93** |
| **AKORN, INC.** | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | S | 01/01/05 | | 1.0 | 7.13 | 4.99 |
| *Manufacturer does not credit for products beyond this period past expiration* | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | | | | 3.0 | 7.13 | 14.97 |
| *Damaged Package* | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | | | | 2.0 | 7.13 | 9.98 |
| *Lot number of this product not returnable* | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | | | | 6.0 | 7.13 | 29.95 |
| *Manufacturer does not accept returns* | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | | | | 5.0 | 7.13 | 24.96 |
| *Manufacturer does not accept returns from 3rd party companies* | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | | | | 1.0 | 7.13 | 4.99 |
| *Manufacturer does not credit for this product* | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | | | | 5.0 | 7.13 | 24.96 |
| *Manufacturer only accepts returns from direct purchase customers* | | | | | | | | | | | |
| | | | | | | **AKORN, INC. TOTAL:** | | | | | **$114.79** |

## Schedule Drug Waste Report

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ALLERGAN, INC.** | | | | | | | | | | | |
| 00023218105 | RX | 0.5% | 00001 | SOL | ACULAR | | | | 2.0 | 50.09 | 70.13 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | ALLERGAN, INC. TOTAL: | | | | **$70.13** |
| **AMIDE PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 52152017902 | RX | 10 MG | 00100 | TAB | BETAXOLOL HCL | | | | 70.0 | 0.88 | 43.26 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | AMIDE PHARMACEUTICALS, INC. TOTAL: | | | | **$43.26** |
| **AMPHASTAR - IMS CRITICAL CARE** | | | | | | | | | | | |
| 00548203900 | RX | 0.1 MG/M | 00025 | SOL | ATROPINE SULFATE | | 11/30/05 | 10.0 | | 5.47 | 38.29 |
| *Manufacturer does not credit for expired products* | | | | | | | | | | | |
| | | | | | | | AMPHASTAR - IMS CRITICAL CARE TOTAL: | | | | **$38.29** |
| **AMPHASTAR PHARMACEUTICALS (IMS)** | | | | | | | | | | | |
| 00548906100 | RX | 1 MG/ML | 00001 | SOL | EPINEPHRINE HCL | | 01/31/06 | | 3.0 | 5.98 | 12.56 |
| *Manufacturer does not credit for products beyond this period past expiration* | | | | | | | | | | | |
| | | | | | | | AMPHASTAR PHARMACEUTICALS (IMS) TOTAL: | | | | **$12.56** |
| **B. BRAUN MEDICAL INC.** | | | | | | | | | | | |
| 00264151031 | RX | 5% | 00001 | SOL | DEXTROSE | | | | 38.0 | 11.28 | 300.05 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | B. BRAUN MEDICAL INC. TOTAL: | | | | **$300.05** |
| **BAUSCH & LOMB PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 24208058060 | RX | 3 MG/ML | 00001 | SOL | GENTAMICIN SULFATE | | | | 63.0 | 8.17 | 360.30 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | BAUSCH & LOMB PHARMACEUTICALS, INC. TOTAL: | | | | **$360.30** |
| **BEDFORD LABORATORIES** | | | | | | | | | | | |
| 55390000401 | RX | 1 MG | 00001 | PDS | GLUCAGEN DIAGNOSTIC KIT | | | | 1.0 | 71.39 | 49.97 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | BEDFORD LABORATORIES TOTAL: | | | | **$49.97** |
| **BIOMARIN PHARMACEUTICAL INC.** | | | | | | | | | | | |
| 59439045502 | RX | 15 MG/5 M | 00001 | SOL | ORAPRED | | | | 1.0 | 77.50 | 54.25 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | BIOMARIN PHARMACEUTICAL INC. TOTAL: | | | | **$54.25** |
| **BRACCO DIAGNOSTICS INC.** | | | | | | | | | | | |
| 00270141215 | RX | 61% | 00010 | SOL | ISOVUE-M 300 | | | | 1.0 | 78.80 | 55.16 |
| *Manufacturer does not accept returns* | | | | | | | | | | | |
| | | | | | | | BRACCO DIAGNOSTICS INC. TOTAL: | | | | **$55.16** |

# Schedule Drug Waste Report

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ETHEX CORPORATION** | | | | | | | | | | | |
| 58177000204 | RX | 150 MG | 00100 | CER | DISOPYRAMIDE PHOSPHATE | | | | 60.0 | 0.93 | 39.16 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | ETHEX CORPORATION TOTAL: | | | | **$39.16** |
| **GENEVA PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 00781143613 | RX | 1 MG | 00100 | TAB | FLUPHENAZINE HCL | | | | 12.0 | 0.63 | 5.29 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 59772727104 | RX | 500 MG | 00100 | CAP | CEFADROXIL | | | | 85.0 | 3.05 | 181.48 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | GENEVA PHARMACEUTICALS, INC. TOTAL: | | | | **$186.77** |
| **HEALTHPOINT** | | | | | | | | | | | |
| 00064300025 | RX | 2% | 00001 | OIN | AKNE-MYCIN | | | | 2.0 | 32.80 | 45.92 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | HEALTHPOINT TOTAL: | | | | **$45.92** |
| **HOSPIRA, INC.** | | | | | | | | | | | |
| 00074302401 | RX | 50 MG | 00100 | PDS | NITROPRESS | | | | 6.0 | 1.60 | 6.72 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 00074741903 | RX | 10%-0.9% | 00012 | SOL | LMD W/0.9% SODIUM CHLORIDE | | | | 3.0 | 26.42 | 55.49 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | HOSPIRA, INC. TOTAL: | | | | **$62.21** |
| **MERCK & CO., INC.** | | | | | | | | | | | |
| 00006353904 | RX | 10 MG/ML | 00010 | SOL | PEPCID | | 01/01/04 | | 4.0 | 4.51 | 12.64 |
| *Manufacturer does not credit for products beyond this period past expiration* | | | | | | | | | | | |
| | | | | | | | MERCK & CO., INC. TOTAL: | | | | **$12.64** |
| **MGI PHARMA, INC.** | | | | | | | | | | | |
| 58063045701 | RX | 50 MG/ML | 00006 | SOL | DIDRONEL I.V. | | | | 4.0 | 67.00 | 187.60 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | MGI PHARMA, INC. TOTAL: | | | | **$187.60** |
| **MONARCH PHARMACEUTICALS** | | | | | | | | | | | |
| 51570011156 | RX | 2.5 MG | 00100 | CAP | ALTACE | | | | 43.0 | 1.08 | 32.54 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | MONARCH PHARMACEUTICALS TOTAL: | | | | **$32.54** |
| **QUALITEST PHARM., INC.** | | | | | | | | | | | |
| 00603242321 | RX | 0.2 MG-0.8 | 00100 | TAB | BELLASPAS | | | | 50.0 | 0.56 | 19.71 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 00603554121 | RX | 30 MG-600 | 00100 | TER | Q-BID DM | | | | 25.0 | 0.42 | 7.41 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | QUALITEST PHARM., INC. TOTAL: | | | | **$27.12** |

## Schedule Drug Waste Report

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ROCHE LABORATORIES** | | | | | | | | | | | |
| 00004081095 | RX | 12 MG/ML | 00001 | PDR | TAMIFLU | | | 6.0 | | 31.56 | 132.55 |
| *Product is not returnable* | | | | | | | | | | | |
| 00004691106 | RX | 0.1 MG/M | 00010 | SOL | ROMAZICON | | | | 2.0 | 574.56 | 804.38 |
| *Damaged Package* | | | | | | | | | | | |
| 0004691106 | RX | 0.1 MG/M | 00010 | SOL | ROMAZICON | | | | 1.0 | 574.56 | 402.19 |
| *Defaced Package* | | | | | | | | | | | |
| | | | | | | | ROCHE LABORATORIES  TOTAL: | | | | **$1,339.13** |
| **ROSS PRODUCTS DIVISION, PHARMACEUTI** | | | | | | | | | | | |
| 00074231650 | RX | 250 U/GM | 00001 | OIN | SANTYL | | | 2.0 | | 30.85 | 43.19 |
| *Product is not returnable* | | | | | | | | | | | |
| | | | | | | ROSS PRODUCTS DIVISION, PHARMACEUTI  TOTAL: | | | | | **$43.19** |
| **UDL LABORATORIES, INC.** | | | | | | | | | | | |
| 51079029820 | RX | 250 MG | 00100 | SGL | VALPROIC ACID | | | 111.0 | | 0.79 | 61.69 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 51079048720 | RX | 5 MG | 00100 | TAB | FLUPHENAZINE HCL | | | | 2.0 | 132.74 | 185.84 |
| *Defaced Package* | | | | | | | | | | | |
| | | | | | | UDL LABORATORIES, INC.  TOTAL: | | | | | **$247.53** |
| | | | | | | | | Grand Total: | | | **$6,503.86** |

## Schedule Drug Waste Report

Page: 1 of 2

**EXP** PHARMACEUTICAL SERVICES CORP

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
         (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:        01/26/2007
Order No:    EXP-499-2007-I
Pickup Date: 01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
DEA # :   RE0190188
Site:     ABC HOSPITAL
W/S:      ABC WHOLESALER, ABC CITY
          12345 WHOLESALER ST., , ABC CITY, CA 90000

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ABBOTT HOSPITAL PRODUCTS** | | | | | | | | | | | |
| 00074603004 | CII | 10 MG/ML | 00010 | SOL | MEPERIDINE HCL | | | 2.0 | | 11.77 | 16.48 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | ABBOTT HOSPITAL PRODUCTS | | TOTAL: | | **$16.48** |
| **BAXTER ANESTHESIA & CRITICAL CARE** | | | | | | | | | | | |
| 10019002701 | CIV | 5 MG/ML | 00010 | SOL | MIDAZOLAM HCL | | | 25.0 | | 3.36 | 58.80 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| 10019005043 | CII | 50 MCG/M | 00010 | SOL | SUFENTANIL CITRATE | | | 35.0 | | 10.80 | 264.60 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | BAXTER ANESTHESIA & CRITICAL CARE | | TOTAL: | | **$323.40** |
| **MALLINCKRODT PHARMACEUTICAL DIVISIO** | | | | | | | | | | | |
| 00406035762 | CIII | 500 MG-5 | 100100 | TAB | APAP/HYDROCODONE BITARTRAT5233TG | 01/01/05 | | | 2.0 | 43.75 | 61.25 |
| *Manufacturer does not credit for products beyond this period past expiration* | | | | | | | | | | | |
| | | | | | | | MALLINCKRODT PHARMACEUTICAL DIVISIO | | TOTAL: | | **$61.25** |
| **MYLAN PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 00378912398 | CII | 75 MCG/H | 00005 | TDM | FENTANYL | | | | 2.0 | 201.05 | 281.47 |
| *Defaced Package* | | | | | | | | | | | |
| | | | | | | | MYLAN PHARMACEUTICALS, INC. | | TOTAL: | | **$281.47** |
| **NOVARTIS PHARMACEUTICALS CORPORATIO** | | | | | | | | | | | |
| 00078043105 | CII | 10 MG | 00100 | CAP | FOCALIN XR | REPACK | 08/31/06 | 1.0 | | 3.25 | 2.28 |
| *Product must be in original package* | | | | | | | | | | | |
| | | | | | | | NOVARTIS PHARMACEUTICALS CORPORATIO | | TOTAL: | | **$2.28** |
| **QUALITEST PRODUCTS, INC.** | | | | | | | | | | | |
| 00603128558 | CIII | 5 MG-60 M | 00000 | SYR | H-C TUSSIVE-D | | | 0.94 | | 58.57 | 38.54 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | | QUALITEST PRODUCTS, INC. | | TOTAL: | | **$38.54** |
| **ROXANE LABORATORIES, INC.** | | | | | | | | | | | |
| 00054309036 | CIV | 10MG/ML | 00001 | SPR | BUTORPHANOL TARTRATE | REPACK | | 2.0 | | 79.26 | 110.96 |
| *Manufacturer does not accept returns* | | | | | | | | | | | |
| 00054816303 | CII | 40 MG/ML | 00005 | SOL | COCAINE HCL | REPACK | | 1.50 | | 20.37 | 21.39 |
| *Product must be in original package* | | | | | | | | | | | |
| | | | | | | | ROXANE LABORATORIES, INC. | | TOTAL: | | **$132.36** |
| **TEVA PHARMACEUTICALS USA** | | | | | | | | | | | |
| 00093035001 | CIII | 300 MG-6 | 00100 | TAB | ACETAMINOPHEN/CODEINE | | | 93.0 | | 0.64 | 41.58 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |

## Schedule Drug Waste Report

| NDC | Rx Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|------|-----|------|------|------|------|------|------|------|------|------|
| **TEVA PHARMACEUTICALS USA** | | | | | | | | | | |
| 00093952401 | CIV 37.5 MG | 00100 | TAB | PEMOLINE | | | 94.0 | | 1.51 | 99.61 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | |
| | | | | | | TEVA PHARMACEUTICALS USA | TOTAL: | | | $141.19 |
| **UDL LABORATORIES, INC.** | | | | | | | | | | |
| 51079038720 | CIV 2 MG | 00100 | TAB | LORAZEPAM | | | | 2.0 | 132.05 | 184.87 |
| *Damaged Package* | | | | | | | | | | |
| | | | | | | UDL LABORATORIES, INC. | TOTAL: | | | $184.87 |

Grand Total: $1,181.83

## Hazardous Waste Report

Page: 1 of 1

**EXP** PHARMACEUTICAL SERVICES CORP.
48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
        (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:        01/26/2007
Order No:    EXP-499-2007-1
Pickup Date: 01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
Site:     ABC HOSPITAL
DEA # :   RE0190188
W/S:      ABC WHOLESALER, ABC CITY
          12345 WHOLESALER ST., , ABC CITY, CA 90000

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|-----|----|----|----|----|----|----|----|----|----|----|----|
| **AMERICAN REGENT LABORATORIES, INC.** | | | | | | | | | | | |
| 00517857110 | RX | 99.5% | 00010 | SOL | ALCOHOL DEHYDRATED | | | 21.0 | | 8.13 | 119.44 |
| *Manufacturer does not accept returns* | | | | | | | | | | | |
| | | | | | | AMERICAN REGENT LABORATORIES, INC. | | | TOTAL: | | **$119.44** |
| **CETYLITE INDUSTRIES, INC.** | | | | | | | | | | | |
| 10223020101 | RX | 14%-2%-2% | 00001 | SPR | CETACAINE | | | 4.0 | | 65.00 | 182.00 |
| *Manufacturer does not credit for partial package quantities* | | | | | | | | | | | |
| | | | | | | CETYLITE INDUSTRIES, INC. | | | TOTAL: | | **$182.00** |
| **TAYLOR PHARMACEUTICALS** | | | | | | | | | | | |
| 11098051002 | RX | 1 MG/ML | 00010 | SOL | PHYSOSTIGMINE SALICYLATE | | | 8.0 | | 3.19 | 17.86 |
| *Product is not returnable* | | | | | | | | | | | |
| | | | | | | TAYLOR PHARMACEUTICALS | | | TOTAL: | | **$17.86** |

Grand Total: **$319.31**

## Indate Report
***Product(s) being held until qualified for Returns***

Page 1 of 1

*EXP* PHARMACEUTICAL
SERVICES
CORP.

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
         (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:         01/26/2007
Order No:     EXP-499-2007-1
Pickup Date:  01/19/2007

Customer:  ABC HOSPITAL
           10 HOSPITAL LANE
           ANYTOWN, CA 01234
DEA # :    RE0190188
Site:      ABC HOSPITAL
W/S:       ABC WHOLESALER, ABC CITY
           12345 WHOLESALER ST., , ABC CITY, CA 90000

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|-----|----|----|----|----|----|----|----|----|----|----|----|
| **AMGEN INC.** | | | | | | | | | | | |
| 55513054601 | RX | 480 MCG/1.6 | 1 | SOL | NEUPOGEN | P035850 | 09/30/07 | | 6.00 | 315.10 | 1,323.42 |
| | | | | | | | | AMGEN INC. TOTAL: | | | $1,323.42 |
| ***JANSSEN PHARMACEUTICA PRODUCTS, L.P*** | | | | | | | | | | | |
| 50458032001 | RX | 2 MG | 100 | TAB | RISPERDAL | 4AG727 | 09/30/07 | 21.00 | | 4.64 | 68.21 |
| | | | | | | | JANSSEN PHARMACEUTICA PRODUCTS, L.P TOTAL: | | | | $68.21 |
| **MYLAN PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 0378181701 | RX | 0.175 MG | 100 | TAB | LEVOTHYROXINE SODIUM | 123-DH | 09/30/07 | | 1.00 | 43.80 | 30.66 |
| | | | | | | | MYLAN PHARMACEUTICALS, INC. TOTAL: | | | | $30.66 |
| **ORGANON PHARMACEUTICALS** | | | | | | | | | | | |
| 00052045015 | RX | 10 MG/ML | 10 | SOL | ZEMURON | 901150 | 08/30/07 | | 3.00 | 204.27 | 428.97 |
| | | | | | | | ORGANON PHARMACEUTICALS TOTAL: | | | | $428.97 |

Grand Total:    $1,851.26

## Processed Indates Report

Page 1 of 1

**EXP** *PHARMACEUTICAL SERVICES CORP.*

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
          (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:         01/26/2007
Order No:     EXP-499-2007-1
Pickup Date:  01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
DEA # :   RE0190188
Site:     ABC HOSPITAL
W/S:      ABC WHOLESALER, ABC CITY
          12345 WHOLESALER ST., , ABC CITY, CA 90000

***PRODUCTS FORMERLY INDATED, NOW QUALIFY FOR RETURN***
***PRODUCTS INCLUDED ON APPLICABLE REPORTS***

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|-----|----|----------|------|------|--------------|------------|----------|---------|------|-------|-------|
| **ASTRA ZENECA** | | | | | | | | | | | |
| 00186300167 | RX | 0.5% | 1 | SOL | DYCLONE | 5552581 | 11/30/06 | | 2.00 | 32.58 | 45.61 |
| | | | | | | | | | ASTRA ZENECA TOTAL: | | $45.61 |
| **SCHEIN PHARMACEUTICAL, INC.** | | | | | | | | | | | |
| 00364223401 | RX | 40 MG | 100 | TAB | MEGESTROL ACETATE | 544PI | 09/30/06 | | 5.00 | 100.80 | 352.80 |
| | | | | | | | | SCHEIN PHARMACEUTICAL, INC. TOTAL: | | | $352.80 |
| **WARNER CHILCOTT LABORATORIES, GENER** | | | | | | | | | | | |
| 00047087424 | RX | 10 MG | 100 | TAB | MEDROXYPROGESTERONE ACETAT | 00P091 | 11/30/06 | | 1.00 | 46.68 | 32.68 |
| | | | | | | | WARNER CHILCOTT LABORATORIES, GENER TOTAL: | | | | $32.68 |

*Grand Total:*    $431.09

## Processed Recall Report

Page 1 of 1

**EXP** *PHARMACEUTICAL SERVICES CORP*

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
        (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:         01/26/2007
Order No:     EXP-499-2007-1
Pickup Date: 01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
DEA # :   RE0190188
Site:     ABC HOSPITAL
W/S:      ABC WHOLESALER, ABC CITY
          12345 WHOLESALER ST., , ABC CITY, CA 90000

***RECALLED PRODUCTS BEING RETURNED***
***PRODUCTS INCLUDED ON APPLICABLE REPORTS***

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Quantity Partial | Full | Price | Total |
|-----|----|----|----|----|----|----|----|----|----|----|----|
| **BEDFORD LABORATORIES** | | | | | | | | | | | |
| 55390005701 | RX | 900 MG/18 M | 1 | INJ | AMIODARONE HCL | 475953 | 03/31/05 | | 2.00 | 14.40 | 20.16 |
| | | | | | | | | BEDFORD LABORATORIES TOTAL: | | | $20.16 |
| **MORTON GROVE PHARMACEUTICALS,  INC.** | | | | | | | | | | | |
| 60432013716 | RX | 15 MG/5 ML ( | 1 | SYR | PREDNISOLONE | 26504A | 04/30/06 | | 4.00 | 111.00 | 310.80 |
| | | | | | | | | MORTON GROVE PHARMACEUTICALS,  INC. TOTAL: | | | $310.80 |
| **SCHERING PLOUGH CORPORATION** | | | | | | | | | | | |
| 00085131601 | RX | 80 MCG | 1 | KIT | PEG-INTRON | 3-IRG-303 | 05/01/06 | | 5.00 | 372.04 | 1,302.14 |
| | | | | | | | | SCHERING PLOUGH CORPORATION TOTAL: | | | $1,302.14 |

Grand Total: $1,633.10

## Returned Non-Schedule Drug Report

Page: 1 of 3

**EXP** PHARMACEUTICAL SERVICES CORP.

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
         (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190188

Date:        01/26/2007
Order#:      EXP-499-2007-1
Pickup Date: 01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
Site:     ABC HOSPITAL
DEA#:     RE0190188
W/S:      ABC WHOLESALER, ABC CITY
          12345 WHOLESALER ST., , ABC CITY, CA 90000

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp. Date | Quantity Partial | Full | Price | Total |
|-----|----|----------|------|------|--------------|------------|-----------|------------------|------|-------|-------|
| **AKORN, INC.** | | | | | | | | | | | |
| 17478021612 | RX | 0.1% | 00001 | SOL | AK-CON | 81054F | 02/28/06 | | 3.0 | 7.13 | 14.97 |
| 17478028435 | RX | 3 MG/GM | 00001 | OIN | GENTAK | 4C27A | 02/28/06 | | 5.0 | 14.60 | 51.10 |
| 17478070102 | RX | 25 MG | 00001 | KIT | IC-GREEN ANGIOGRAPHY | CGN25 | 03/31/06 | | 3.0 | 635.95 | 1,335.50 |
| | | | | | | | AKORN, INC. TOTAL: | | | | **$1,401.57** |
| **ALLERGAN, INC.** | | | | | | | | | | | |
| 11980077905 | RX | 0.3% | 00001 | SOL | OCUFLOX | 29937 | 02/28/06 | | 4.0 | 34.55 | 96.74 |
| | | | | | | | ALLERGAN, INC. TOTAL: | | | | **$96.74** |
| **APOTHECON PRODUCTS** | | | | | | | | | | | |
| 00003029320 | RX | 40 MG/ML | 00001 | SUS | KENALOG-40 | 3A71164 | 01/31/06 | | 3.0 | 31.48 | 66.11 |
| 00003029320 | RX | 40 MG/ML | 00001 | SUS | KENALOG-40 | B64381 | 01/31/06 | | 3.0 | 31.48 | 66.11 |
| | | | | | | | APOTHECON PRODUCTS TOTAL: | | | | **$132.22** |
| **ASTRA ZENECA** | | | | | | | | | | | |
| 00186013701 | RX | 0.5% | 00001 | SOL | XYLOCAINE-MPF | 3A71164 | 01/31/06 | 8.0 | | 10.93 | 61.21 |
| 00186198804 | RX | 0.25 MG/2 ML | 00030 | SUS | PULMICORT RESPULES | 409030 | 08/01/06 | | 4.0 | 126.00 | 352.80 |
| 00186300167 | RX | 0.5% | 00001 | SOL | DYCLONE | 5552581 | 11/30/06 | | 2.0 | 32.58 | 45.61 |
| 00186502228 | RX | 20 MG | 00100 | ECC | NEXIUM | ERDD25 | 02/28/06 | 67.0 | | 4.00 | 187.44 |
| 00310021020 | RX | 2.5 MG | 00006 | TAB | ZOMIG | NAC341 | 02/28/06 | | 3.0 | 88.19 | 185.20 |
| | | | | | | | ASTRA ZENECA TOTAL: | | | | **$832.26** |
| **BAUSCH & LOMB PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 24208054005 | RX | 0.1% | 00001 | SOL | DIPIVEFRIN HCL | 035211 | 01/31/06 | | 3.0 | 14.07 | 29.55 |
| 24208068615 | RX | 4% | 00001 | SOL | PILOCARPINE HYDROCHLORIDE | 645041 | 03/31/06 | | 1.0 | 11.15 | 7.81 |
| | | | | | | | BAUSCH & LOMB PHARMACEUTICALS, INC. TOTAL: | | | | **$37.35** |
| **BEDFORD LABORATORIES** | | | | | | | | | | | |
| 55390000401 | RX | 1 MG | 00001 | PDS | GLUCAGEN DIAGNOSTIC KIT | PW60267 | 03/31/06 | | 1.0 | 71.39 | 49.97 |
| 55390005701 | RX | 900 MG/18 ML | 00001 | INJ | AMIODARONE HCL | 475953 | 03/31/05 | | 2.0 | 14.40 | 20.16 |
| 55390046001 | RX | 500 MG | 00001 | PDS | ACETAZOLAMIDE SODIUM | DE2252 | 03/01/06 | | 2.0 | 31.20 | 43.68 |
| | | | | | | | BEDFORD LABORATORIES TOTAL: | | | | **$113.81** |
| **BERLEX LABORATORIES, INC.** | | | | | | | | | | | |
| 50419045304 | RX | 0.075 MG/24 HRS | 00004 | TDM | CLIMARA | EDC33 | 02/28/06 | | 3.0 | 29.50 | 61.95 |
| | | | | | | | BERLEX LABORATORIES, INC. TOTAL: | | | | **$61.95** |

## Returned Non-Schedule Drug Report

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp. Date | Quantity Partial | Quantity Full | Price | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **BOEHRINGER INGELHEIM PHARMACEUTICAL** | | | | | | | | | | | |
| 00597007017 | RX | 0.65 MG/INH | 00001 | ARO | ALUPENT | 030473W | 05/31/06 | | 3.0 | 28.73 | 60.33 |
| | | | | | BOEHRINGER INGELHEIM PHARMACEUTICAL TOTAL: | | | | | | **$60.33** |
| **CUMBERLAND PHARMACEUTICALS** | | | | | | | | | | | |
| 66220010730 | RX | 200 MG/ML | 00004 | SOL | ACETADOTE | 040524 | 04/30/06 | | 3.0 | 541.25 | 1,136.63 |
| | | | | | CUMBERLAND PHARMACEUTICALS TOTAL: | | | | | | **$1,136.63** |
| **ENDO LABORATORIES** | | | | | | | | | | | |
| 63481007370 | RX | 10 MG | 00100 | TAB | MOBAN | 6822HH | 08/31/05 | | 1.0 | 164.31 | 115.02 |
| | | | | | ENDO LABORATORIES TOTAL: | | | | | | **$115.02** |
| **FOUGERA** | | | | | | | | | | | |
| 00168033215 | RX | 0.05% | 00001 | CRE | FLUTICASONE PROPIONATE | N687 | 04/30/06 | | 3.0 | 22.18 | 46.58 |
| | | | | | FOUGERA TOTAL: | | | | | | **$46.58** |
| **FOUGERA E. & CO.** | | | | | | | | | | | |
| 00168001631 | | 0.5% | 00001 | OIN | HYDROCORTISONE | K949 | 04/30/06 | | 3.0 | 2.00 | 4.20 |
| 00168002938 | RX | | 00001 | OIN | HC W/BACITRACIN-NEOMYCIN-POLYMYXIN | J10 | 04/30/06 | | 2.0 | 6.36 | 8.90 |
| | | | | | FOUGERA E. & CO. TOTAL: | | | | | | **$13.10** |
| **FUJISAWA HEALTHCARE, INC.** | | | | | | | | | | | |
| 00469823412 | RX | 2 ML | 00001 | SOL | ADENOCARD | 06-441-EV | 01/01/06 | | 8.0 | 39.69 | 222.26 |
| | | | | | FUJISAWA HEALTHCARE, INC. TOTAL: | | | | | | **$222.26** |
| **LILLY, ELI & CO.** | | | | | | | | | | | |
| 00002411233 | RX | 2.5 MG | 00100 | TAB | ZYPREXA | 8ED32A | 04/01/06 | 6.0 | | 5.00 | 21.01 |
| 00002411733 | RX | 10 MG | 00100 | TAB | ZYPREXA | 8ECV369 | 03/01/06 | 58.0 | | 8.98 | 364.63 |
| | | | | | LILLY, ELI & CO. TOTAL: | | | | | | **$385.64** |
| **MONARCH PHARMACEUTICALS** | | | | | | | | | | | |
| 61570030031 | RX | 1:1000 | 00001 | SOL | ADRENALIN | 009N4N | 03/31/06 | | 2.0 | 20.06 | 28.08 |
| 61570041451 | RX | 150 MG | 00001 | PDS | COLY-MYCIN M | 011443M | 02/28/06 | | 3.0 | 60.80 | 127.68 |
| | | | | | MONARCH PHARMACEUTICALS TOTAL: | | | | | | **$155.76** |
| **MORTON GROVE PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 60432013716 | RX | 15 MG/5 ML (16 OZ.) | 00001 | SYR | PREDNISOLONE | 26504A | 04/30/06 | | 4.0 | 111.00 | 310.80 |
| 60432052804 | RX | 2.5% | 00001 | LOT | SELENIUM SULFIDE | 26489A | 04/30/06 | | 2.0 | 11.40 | 15.96 |
| 60432054760 | RX | 1% | 00001 | SHA | LINDANE | 26163A | 03/31/06 | | 3.0 | 16.12 | 33.85 |
| | | | | | MORTON GROVE PHARMACEUTICALS, INC. TOTAL: | | | | | | **$360.61** |
| **ORTHO BIOTECH** | | | | | | | | | | | |
| 59676031201 | RX | 10,000 U/ML | 00006 | SOL | PROCRIT | P00912 | 05/01/06 | | 1.0 | 1,602.72 | 1,121.90 |
| | | | | | ORTHO BIOTECH TOTAL: | | | | | | **$1,121.90** |
| **PHARMACIA CORPORATION** | | | | | | | | | | | |
| 00009004902 | RX | 2 MG | 00100 | TAB | MEDROL | 82STR5 | 01/31/06 | 50.0 | | 0.48 | 16.83 |
| 00009076502 | RX | 500 MG | 00001 | PDS | SOLU-MEDROL | 52KK | 01/31/06 | | 2.0 | 11.70 | 16.38 |

## Returned Non-Schedule Drug Report

Page:  3  of  3

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp. Date | Quantity Partial | Quantity Full | Price | Total |
|-----|----|----|----|----|----|----|----|----|----|----|----|
| **PHARMACIA CORPORATION** | | | | | | | | | | | |
| 00009379401 | RX | 0.1 MG/ML | 00001 | SOL | CORVERT | P00 | 02/28/06 | | 1.0 | 253.31 | 177.32 |
| 0009019009 | RX | 125 MG | 00001 | PDS | SOLU-MEDROL | 80JTP | 04/30/06 | | 1.0 | 3.41 | 2.39 |
| | | | | | | | PHARMACIA CORPORATION TOTAL: | | | | **$212.91** |
| **ROCHE LABORATORIES** | | | | | | | | | | | |
| 00004691106 | RX | 0.1 MG/ML | 00010 | SOL | ROMAZICON | DDD | 01/01/06 | | 1.0 | 574.56 | 402.19 |
| | | | | | | | ROCHE LABORATORIES TOTAL: | | | | **$402.19** |
| **ROXANE LABORATORIES, INC.** | | | | | | | | | | | |
| 00054001720 | RX | 10 MG (UD) | 00100 | TAB | PREDNISONE | IK552 | 02/28/06 | | 1.0 | 13.31 | 9.32 |
| 00054350547 | RX | 4% | 00001 | SOL | LIDOCAINE HCL | IINK55 | 01/31/06 | | 1.0 | 7.04 | 4.93 |
| 00054808425 | RX | 50 MG | 00100 | TAB | AZATHIOPRINE | IJDF3 | 02/01/06 | 35.0 | | 1.44 | 35.32 |
| | | | | | | | ROXANE LABORATORIES, INC. TOTAL: | | | | **$49.57** |
| **SANGSTAT** | | | | | | | | | | | |
| 00074726950 | RX | 100 MG/ML (50 ML) | 00001 | SOL | GENGRAF | E1463W | 04/01/06 | | 1.0 | 261.52 | 183.06 |
| | | | | | | | SANGSTAT TOTAL: | | | | **$183.06** |
| **SCHEIN PHARMACEUTICAL, INC.** | | | | | | | | | | | |
| 00364223401 | RX | 40 MG | 00100 | TAB | MEGESTROL ACETATE | 544PI | 09/30/06 | | 5.0 | 100.80 | 352.80 |
| | | | | | | | SCHEIN PHARMACEUTICAL, INC. TOTAL: | | | | **$352.80** |
| **SCHERING PLOUGH CORPORATION** | | | | | | | | | | | |
| 00085051701 | RX | 0.05% | 00001 | CRE | DIPROLENE AF | IEEW401 | 03/31/06 | | 1.0 | 35.00 | 24.50 |
| 00085131601 | RX | 80 MCG | 00001 | KIT | PEG-INTRON | 3-IRG-303 | 05/01/06 | | 5.0 | 372.04 | 1,302.14 |
| | | | | | | | SCHERING PLOUGH CORPORATION TOTAL: | | | | **$1,326.64** |
| **TAYLOR PHARMACEUTICALS** | | | | | | | | | | | |
| 11098051002 | RX | 1 MG/ML | 00010 | SOL | PHYSOSTIGMINE SALICYLATE | A412G | 04/30/06 | | 2.0 | 31.90 | 44.66 |
| | | | | | | | TAYLOR PHARMACEUTICALS TOTAL: | | | | **$44.66** |
| **WARNER CHILCOTT LABORATORIES, GENER** | | | | | | | | | | | |
| 00047087424 | RX | 10 MG | 00100 | TAB | MEDROXYPROGESTERONE ACETATE | 00P091 | 11/30/06 | | 1.0 | 46.68 | 32.68 |
| | | | | | | | WARNER CHILCOTT LABORATORIES, GENER TOTAL: | | | | **$32.68** |
| **WYETH-AYERST LABORATORIES** | | | | | | | | | | | |
| 00008070301 | RX | 50 MG | 00100 | TAB | EFFEXOR | Z552 | 07/31/05 | 35.0 | | 1.46 | 35.83 |
| | | | | | | | WYETH-AYERST LABORATORIES TOTAL: | | | | **$35.83** |
| | | | | | | | Grand Total: | | | | **$8,934.07** |

*No. Of Manufacturers:* 26

**EXP Pharmaceutical Services Corp.**
48021 Warm Springs Blvd.
Fremont, CA 94539
Phone: (800) 350-0397 / (510) 476-0909
Fax: (510) 933-1470
DEA # : RE0190188

## Returned Drug Summary Report

Date: 01/26/07

Order No: EXP-499-2007-1

Pickup Date: 01/19/07

Customer Name & Address:
ABC HOSPITAL
10 HOSPITAL LANE
ANYTOWN, CA 01234
DEA # : RE0190188
Site: ABC HOSPITAL

Wholesaler: ABC WHOLESALER, ABC CITY
12345 WHOLESALER ST., , ABC CITY, CA 90000

| MANUFACTURER NAME | RETURNED TOTAL | RECEIVED AMOUNT |
|---|---|---|
| ABBOTT HOSPITAL PRODUCTS | $304.16 | |
| AKORN, INC. | $1,401.57 | -------------------------- |
| ALLERGAN, INC. | $96.74 | -------------------------- |
| APOTHECON PRODUCTS | $132.22 | -------------------------- |
| ASTRA ZENECA | $832.26 | -------------------------- |
| BAUSCH & LOMB PHARMACEUTICALS, INC. | $37.35 | -------------------------- |
| BEDFORD LABORATORIES | $113.81 | -------------------------- |
| BERLEX LABORATORIES, INC. | $61.95 | -------------------------- |
| BOEHRINGER INGELHEIM PHARMACEUTICAL | $60.33 | -------------------------- |
| CELLTECH PHARMACEUTICALS, INC. | $17.70 | -------------------------- |
| CEPHALON, INC | $234.18 | -------------------------- |
| CUMBERLAND PHARMACEUTICALS | $1,136.63 | -------------------------- |
| ENDO LABORATORIES | $115.02 | -------------------------- |
| FOREST PHARMACEUTICALS - CONTROLS | $100.80 | -------------------------- |
| FOUGERA | $46.58 | -------------------------- |
| FOUGERA E. & CO. | $13.10 | -------------------------- |
| FUJISAWA HEALTHCARE, INC. | $222.26 | -------------------------- |
| LILLY, ELI & CO. | $385.64 | -------------------------- |
| MONARCH PHARMACEUTICALS | $155.76 | -------------------------- |
| MORTON GROVE PHARMACEUTICALS, INC. | $360.61 | -------------------------- |
| MYLAN PHARMACEUTICALS, INC. | $686.99 | -------------------------- |
| ORTHO BIOTECH | $1,121.90 | -------------------------- |
| PHARMACIA CORPORATION | $212.91 | -------------------------- |
| ROCHE LABORATORIES | $402.19 | -------------------------- |
| ROXANE LABORATORIES, INC. | $238.67 | -------------------------- |
| SANGSTAT | $183.06 | -------------------------- |
| SANOFI-SYNTHELABO INC. | $176.96 | -------------------------- |
| SCHEIN PHARMACEUTICAL, INC. | $352.80 | -------------------------- |
| SCHERING PLOUGH CORPORATION | $1,326.64 | -------------------------- |
| TAYLOR PHARMACEUTICALS | $44.66 | -------------------------- |
| WARNER CHILCOTT LABORATORIES, GENER | $32.68 | -------------------------- |
| WATSON PHARMA, INC. | $283.44 | -------------------------- |

### EXP Pharmaceutical Services Corp.
### Returned Drug Summary Report

Date:  01/26/07

Customer Name:
ABC HOSPITAL
Site:  ABC HOSPITAL

Order No:  EXP-499-2007-1

| MANUFACTURER NAME | RETURNED TOTAL | RECEIVED AMOUNT |
|---|---|---|
| WYETH-AYERST LABORATORIES | $35.83 | ----------------------------- |
| | ------------------- | |
| GRAND TOTAL: | $10,927.41 | |

**EXP Pharmaceutical Services Corp.**
48021 Warm Springs Blvd.
Fremont, CA 94539
Phone: (800) 350-0397 / (510) 476-0909
Fax: (510) 933-1470
DEA # : RE0190188

## Returned Drug Summary Report

Date:  01/26/07

Order No:  EXP-499-2007-1

Pickup Date:  01/19/07

Customer Name & Address:
ABC HOSPITAL
10 HOSPITAL LANE
ANYTOWN, CA 01234
DEA # : RE0190188
Site:  ABC HOSPITAL

Wholesaler:  ABC WHOLESALER, ABC CITY
12345 WHOLESALER ST., , ABC CITY, CA 90000

| MANUFACTURER NAME | RETURNED TOTAL | RECEIVED AMOUNT |
|---|---|---|
| ABBOTT HOSPITAL PRODUCTS | $304.16 | |
| AKORN, INC. | $1,401.57 | |
| ALLERGAN, INC. | $96.74 | |
| APOTHECON PRODUCTS | $132.22 | |
| ASTRA ZENECA | $832.26 | |
| BAUSCH & LOMB PHARMACEUTICALS, INC. | $37.35 | |
| BEDFORD LABORATORIES | $113.81 | |
| BERLEX LABORATORIES, INC. | $61.95 | |
| BOEHRINGER INGELHEIM PHARMACEUTICAL | $60.33 | |
| CELLTECH PHARMACEUTICALS, INC. | $17.70 | |
| CEPHALON, INC | $234.18 | |
| CUMBERLAND PHARMACEUTICALS | $1,136.63 | |
| ENDO LABORATORIES | $115.02 | |
| FOREST PHARMACEUTICALS - CONTROLS | $100.80 | |
| FOUGERA | $46.58 | |
| FOUGERA E. & CO. | $13.10 | |
| FUJISAWA HEALTHCARE, INC. | $222.26 | |
| LILLY, ELI & CO. | $385.64 | |
| MONARCH PHARMACEUTICALS | $155.76 | |
| MORTON GROVE PHARMACEUTICALS,  INC. | $360.61 | |
| MYLAN PHARMACEUTICALS, INC. | $686.99 | |
| ORTHO BIOTECH | $1,121.90 | |
| PHARMACIA CORPORATION | $212.91 | |
| ROCHE LABORATORIES | $402.19 | |
| ROXANE LABORATORIES, INC. | $238.67 | |
| SANGSTAT | $183.06 | |
| SANOFI-SYNTHELABO INC. | $176.96 | |
| SCHEIN PHARMACEUTICAL, INC. | $352.80 | |
| SCHERING PLOUGH CORPORATION | $1,326.64 | |
| TAYLOR PHARMACEUTICALS | $44.66 | |
| WARNER CHILCOTT LABORATORIES, GENER | $32.68 | |
| WATSON PHARMA, INC. | $283.44 | |

## EXP Pharmaceutical Services Corp.
### Returned Drug Summary Report

Date: 01/26/07

Customer Name:
ABC HOSPITAL
Site: ABC HOSPITAL

Order No: EXP-499-2007-1

| MANUFACTURER NAME | RETURNED TOTAL | RECEIVED AMOUNT |
|---|---|---|
| WYETH-AYERST LABORATORIES | $35.83 | ------------------------------ |
| | ------------------- | |
| GRAND TOTAL: | $10,927.41 | |

## Returned Schedule Drug Report

Page: 1 of 1

**EXP PHARMACEUTICAL SERVICES CORP.**

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
       (510) 476-0909
Fax   : (510) 933-1470
DEA # : RE0190188

Date:          01/26/2007
Order#:        EXP-499-2007-1
Pickup Date:   01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN, CA 01234
Site:   ABC HOSPITAL
DEA#:   RE0190188
W/S:    ABC WHOLESALER, ABC CITY
        12345 WHOLESALER ST., , ABC CITY, CA 90000

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp. Date | Quantity Partial | Full | Price | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **ABBOTT HOSPITAL PRODUCTS** | | | | | | | | | | | |
| 00074194101 | CIV | 30 MG/ML | 00025 | SOL | TALWIN LACTATE | 140803A | 02/01/06 | | 2.0 | 126.17 | 176.64 |
| 00074321302 | CIV | 5 MG/ML | 00005 | SOL | DIAZEPAM | 17-138-DK | 05/01/06 | | 10.0 | 9.74 | 68.18 |
| 00074381412 | CII | 0.5 MG/ML | 00005 | SOL | MORPHINE SULFATE | 22-501-DK | 04/01/06 | | 2.0 | 42.39 | 59.35 |
| | | | | | | ABBOTT HOSPITAL PRODUCTS TOTAL: | | | | | **$304.16** |
| **CELLTECH PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 53014053107 | CII | 5 MG | 00100 | TAB | METHYLPHENIDATE HCL | 21195 | 12/31/05 | 93.0 | | 0.27 | 17.70 |
| | | | | | | CELLTECH PHARMACEUTICALS, INC. TOTAL: | | | | | **$17.70** |
| **CEPHALON, INC** | | | | | | | | | | | |
| 63459020001 | CIV | 200 MG | 00100 | TAB | PROVIGIL | KJ-11-21L | 12/01/05 | 3.0 | | 5.51 | 11.58 |
| 63459050430 | CII | 0.4 MG | 00030 | LOZ | ACTIQ | P52107 | 02/28/06 | 30.0 | | 10.60 | 222.60 |
| | | | | | | CEPHALON, INC TOTAL: | | | | | **$234.18** |
| **FOREST PHARMACEUTICALS - CONTROLS** | | | | | | | | | | | |
| 00456520001 | CII | 5 MG/400 MG | 00100 | TAB | COMBUNOX | 26508A | 09/30/06 | | 1.0 | 144.0 | 100.80 |
| | | | | | | FOREST PHARMACEUTICALS - CONTROLS TOTAL: | | | | | **$100.80** |
| **MYLAN PHARMACEUTICALS, INC.** | | | | | | | | | | | |
| 00378505001 | CIV | 30 MG | 00100 | CAP | TEMAZEPAM | 1L1363 | 05/01/06 | 97.0 | | 0.81 | 55.10 |
| 00378912298 | CII | 50 MCG/HR | 00005 | TDM | FENTANYL | 456789 | 08/31/06 | 15.0 | | 26.36 | 276.78 |
| 00378912398 | CII | 75 MCG/HR | 00005 | TDM | FENTANYL | AD-456 | 11/30/06 | 2.0 | | 40.21 | 56.29 |
| 00378912498 | CII | 100 MCG/HR | 00005 | TDM | FENTANYL | 98765 | 12/31/06 | 8.0 | | 53.36 | 298.82 |
| | | | | | | MYLAN PHARMACEUTICALS, INC. TOTAL: | | | | | **$686.99** |
| **ROXANE LABORATORIES, INC.** | | | | | | | | | | | |
| 00054816302 | CII | 4% | 00001 | SOL | COCAINE HCL | 556794B | 06/30/06 | 9.0 | | 25.18 | 158.63 |
| 00054885825 | CIV | 0.125 MG | 00100 | TAB | TRIAZOLAM | 457339A | 03/31/06 | 68.0 | | 0.64 | 30.46 |
| | | | | | | ROXANE LABORATORIES, INC. TOTAL: | | | | | **$189.10** |
| **SANOFI-SYNTHELABO INC.** | | | | | | | | | | | |
| 00024033206 | CII | 50 MG/5 ML | 00001 | SYR | DEMEROL HYDROCHLORIDE | 2015JJ | 11/01/05 | | 1.0 | 111.15 | 77.81 |
| 00024540134 | CIV | 5 MG | 00100 | TAB | AMBIEN | TJ14B | 03/31/06 | 65.0 | | 2.18 | 99.16 |
| | | | | | | SANOFI-SYNTHELABO INC. TOTAL: | | | | | **$176.96** |
| **WATSON PHARMA, INC.** | | | | | | | | | | | |
| 52544047030 | CIII | 5 MG/24 HRS | 00030 | TDM | ANDRODERM | 91341125 | 02/28/06 | | 3.0 | 134.97 | 283.44 |
| | | | | | | WATSON PHARMA, INC. TOTAL: | | | | | **$283.44** |

*No. of Manufacturers:* 8

**Grand Total:** **$1,993.33**

# Returned Drug Summary

EXP PHARMACEUTICAL SERVICES CORP.
48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
          (510) 476-0909
Fax   : (510) 933-1470
DEA # : RE0190188

Date:        01/26/2007
Order#:      499-2007-1
Pickup Date: 01/19/2007

Customer: ABC HOSPITAL
          10 HOSPITAL LANE
          ANYTOWN                CA   01234
Site: ABC HOSPITAL
DEA#: RE0190188
W/S: ABC WHOLESALER, ABC CITY
     12345 WHOLESALER ST., , ABC CITY, CA 90000

Page:   1   of   3

| Manufacturer | | Debit Memo# | Anticipated Return Value | Amount Received |
|---|---|---|---|---|
| AKORN, INC. | | EXPNC00532477 | | |
| AKORN, INC. | | | $1,401.57 | .......... |
| TAYLOR PHARMACEUTICALS | | | $44.66 | .......... |
| | | | $1,446.23 | |
| ALLERGAN INCORPORATED | | EXPNC00532493 | | |
| ALLERGAN, INC. | | | $96.74 | .......... |
| | | | $96.74 | |
| ASTELLAS PHARMA, INC. | | EXPNC00532497 | | |
| FUJISAWA HEALTHCARE, INC. | | | $222.26 | .......... |
| | | | $222.26 | |
| ASTRA ZENECA | | EXPNC00532502 | | |
| ASTRA ZENECA | | | $832.26 | .......... |
| | | | $832.26 | |
| BAUSCH & LOMB PHARMACEUTICALS, INC. | | EXPNC00532482 | | |
| BAUSCH & LOMB PHARMACEUTICALS, INC. | | | $37.35 | .......... |
| | | | $37.35 | |
| BEDFORD LABORATORIES | | EXPNC00532480 | | |
| BEDFORD LABORATORIES | | | $93.65 | .......... |
| | | | $93.65 | |
| BEDFORD LABORATORIES | RECALL | EXPNC00532481 | | |
| BEDFORD LABORATORIES | | | $20.16 | .......... |
| | | | $20.16 | |
| Bristol-Myers Squibb Company | | EXPNC00532503 | | |
| APOTHECON PRODUCTS | | | $132.22 | .......... |
| | | | $132.22 | |
| CEPHALON, INC | CII | EXPNC00532483 | | |
| CEPHALON, INC | | | $222.60 | .......... |
| | | | $222.60 | |
| CEPHALON, INC | | EXPNC00532488 | | |
| CEPHALON, INC | | | $11.58 | .......... |
| | | | $11.58 | |

# Returned Drug Summary

| Manufacturer | | Debit Memo# | Anticipated Return Value | Amount Received |
|---|---|---|---|---|
| CRI | | EXPNC00532492 | | |
| BERLEX LABORATORIES, INC. | | | | |
| BOEHRINGER INGELHEIM PHARMACEUTICAL | | | $61.95 | |
| ROCHE LABORATORIES | | | $60.33 | |
| ROXANE LABORATORIES, INC. | | | $402.19 | |
| SANOFI-SYNTHELABO INC. | | | $80.03 | |
| | | | $99.16 | |
| | | | $703.66 | |
| Cumberland Pharmaceuticals Inc. (CPI) | | EXPNC00532479 | | |
| CUMBERLAND PHARMACEUTICALS | | | $1,136.63 | |
| | | | $1,136.63 | |
| ENDO LABORATORIES | | EXPNC00532508 | | |
| ENDO LABORATORIES | | | $115.02 | |
| | | | $115.02 | |
| FOREST PHARMACEUTICALS - CONTROLS | CII | EXPNC00535291 | | |
| FOREST PHARMACEUTICALS - CONTROLS | | | $100.80 | |
| | | | $100.80 | |
| FOUGERA E. & CO. | | EXPNC00532485 | | |
| FOUGERA | | | $46.58 | |
| FOUGERA E. & CO. | | | $13.10 | |
| | | | $59.68 | |
| GENZYME TRANSPLANT | | EXPNC00532484 | | |
| SANGSTAT | | | $183.06 | |
| | | | $183.06 | |
| HOSPIRA, INC. | | EXPNC00532494 | | |
| ABBOTT HOSPITAL PRODUCTS | | | $244.82 | |
| | | | $244.82 | |
| HOSPIRA, INC. | CII | EXPNC00532505 | | |
| ABBOTT HOSPITAL PRODUCTS | | | $59.35 | |
| | | | $59.35 | |
| JOM Pharmaceutical | | EXPNC00532499 | | |
| ORTHO BIOTECH | | | $1,121.90 | |
| | | | $1,121.90 | |
| LILLY, ELI & CO. | | EXPNC00532491 | | |
| LILLY, ELI & CO. | | | $385.64 | |
| | | | $385.64 | |
| MONARCH PHARMACEUTICALS | | EXPNC00532490 | | |
| MONARCH PHARMACEUTICALS | | | $155.76 | |
| | | | $155.76 | |
| MORTON GROVE PHARMACEUTICALS, INC. | RECALL | EXPNC00532504 | | |
| MORTON GROVE PHARMACEUTICALS, INC | | | $310.80 | |
| | | | $310.80 | |

## Returned Drug Summary

Page:   3   of   3

| Manufacturer | | Debit Memo# | Anticipated Return Value | Amount Received |
|---|---|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | | EXPNC00532507 | | |
| MORTON GROVE PHARMACEUTICALS, INC. | | | $49.81 | . . . . . . . . . . . |
| | | | **$49.81** | |
| MYLAN PHARMACEUTICALS, INC. | | EXPNC00532501 | | |
| MYLAN PHARMACEUTICALS, INC. | | | $55.10 | . . . . . . . . . . . |
| | | | **$55.10** | |
| MYLAN PHARMACEUTICALS, INC. | CII | EXPNC00535293 | | |
| MYLAN PHARMACEUTICALS, INC. | | | $631.89 | . . . . . . . . . . . |
| | | | **$631.89** | |
| PFIZER PHARMACEUTICALS | | EXPNC00532498 | | |
| PHARMACIA CORPORATION | | | $212.91 | . . . . . . . . . . . |
| | | | **$212.91** | |
| ROXANE LABORATORIES, INC. | CII | EXPNC00532506 | | |
| ROXANE LABORATORIES, INC. | | | $158.63 | . . . . . . . . . . . |
| | | | **$158.63** | |
| SANOFI-AVENTIS U.S LLC | CII | EXPNC00532500 | | |
| SANOFI-SYNTHELABO INC. | | | $77.81 | . . . . . . . . . . . |
| | | | **$77.81** | |
| SCHERING PLOUGH CORPORATION | RECALL | EXPNC00532478 | | |
| SCHERING PLOUGH CORPORATION | | | $1,302.14 | . . . . . . . . . . . |
| | | | **$1,302.14** | |
| SCHERING PLOUGH CORPORATION | | EXPNC00532489 | | |
| SCHERING PLOUGH CORPORATION | | | $24.50 | . . . . . . . . . . . |
| | | | **$24.50** | |
| SPS - GA | | EXPNC00535292 | | |
| WARNER CHILCOTT LABORATORIES, GENER | | | $32.68 | . . . . . . . . . . . |
| | | | **$32.68** | |
| UCB, INC. | CII | EXPNC00532486 | | |
| CELLTECH PHARMACEUTICALS, INC. | | | $17.70 | . . . . . . . . . . . |
| | | | **$17.70** | |
| WATSON PHARMA, INC. | | EXPNC00532487 | | |
| SCHEIN PHARMACEUTICAL, INC. | | | $352.80 | . . . . . . . . . . . |
| WATSON PHARMA, INC. | | | $283.44 | . . . . . . . . . . . |
| | | | **$636.24** | |
| WYETH PHARMACEUTICALS | | EXPNC00532495 | | |
| WYETH-AYERST LABORATORIES | | | $35.83 | . . . . . . . . . . . |
| | | | **$35.83** | |

| Grand Total | | |
|---|---|---|
| | | $10,927.41 |

**Total No. of Manufacturers: 41**

## Return Through Wholesaler Report

Page: 1 of 1



**EXP** PHARMACEUTICAL SERVICES CORP.

48021 Warm Springs Blvd.
Fremont, CA 94539
Phone : (800) 350-0397
         (510) 476-0909
Fax    : (510) 933-1470
DEA # : RE0190J88

| | |
|---|---|
| Date: | 01/26/07 |
| Order No: | EXP-499-2007-1 |
| Pickup Date: | 01/19/07 |

Customer: ABC HOSPITAL
10 HOSPITAL LANE
ANYTOWN, CA 01234
DEA # : RE0190188
Site: ABC HOSPITAL
W/S: ABC WHOLESALER, ABC CITY
12345 WHOLESALER ST.,, ABC CITY, CA 90000



***PLEASE OBTAIN MRA FROM YOUR WHOLESALER FOR THE FOLLOWING PRODUCTS***
*UPON RECEIPT OF MRA FROM YOUR WHOLESALER, PLEASE SEND MRA TO EXP IMMEDIATELY*

| NDC | Rx | Strength | Size | Form | Product Name | Lot Number | Exp Date | Partial | Quantity Full |
|---|---|---|---|---|---|---|---|---|---|
| **ALLERGAN, INC.** | | | | | | | | | |
| 11980077905 | RX | 0.3% | 00001 | SOL | OCUFLOX | 29937 | 02/28/06 | | 4.00 |
| **BAUSCH & LOMB PHARMACEUTICALS, INC.** | | | | | | | | | |
| 24208054005 | RX | 0.1% | 00001 | SOL | DIPIVEFRIN HCL | 035211 | 01/31/06 | | 3.00 |
| 24208068615 | RX | 4% | 00001 | SOL | PILOCARPINE HYDROCHLORIDE | 645041 | 03/31/06 | | 1.00 |
| **FOUGERA** | | | | | | | | | |
| 00168033215 | RX | 0.05% | 00001 | CRE | FLUTICASONE PROPIONATE | N687 | 04/30/06 | | 3.00 |
| **FOUGERA E. & CO.** | | | | | | | | | |
| 00168001631 | | 0.5% | 00001 | OIN | HYDROCORTISONE | K949 | 04/30/06 | | 3.00 |
| 00168002938 | RX | | 00001 | OIN | HC W/BACITRACIN-NEOMYCIN-POLYMYXIN | J10 | 04/30/06 | | 2.00 |
| **MONARCH PHARMACEUTICALS** | | | | | | | | | |
| 61570030031 | RX | 1:1000 | 00001 | SOL | ADRENALIN | 009N4N | 03/31/06 | | 2.00 |
| 61570041451 | RX | 150 MG | 00001 | PDS | COLY-MYCIN M | 011443M | 02/28/06 | | 3.00 |

Exhibit E

## Chico Myers

| | |
|---|---|
| **From:** | <MATTHEW.WALCH@lw.com> |
| **To:** | <chicolaw@worldnet.att.net> |
| **Sent:** | Monday, August 06, 2007 2:56 PM |
| **Attach:** | dr mww zaccaro sample screen outline(961679_2_CH).DOC |
| **Subject:** | RE: Zaccaro Subpoena; EXP Response |

Dear Mr. Myers:

Following up on our conversation today, I have attached a list of representative screen print information that we are looking for in addition to the reports that you have already provided.  Please contact me if you have any questions regarding these descriptions or need further clarification on what we are looking for.

Thanks,

**Matthew W. Walch**

**LATHAM & WATKINS** LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Direct Dial: +1.312.876.7603
Fax: +1.312.993.9767
Email: matthew.walch@lw.com
http://www.lw.com


**From:** Chico Myers [mailto:chicolaw@worldnet.att.net]
**Sent:** Thursday, July 26, 2007 3:57 PM
**To:** Walch, Matthew (CH)
**Cc:** Alexander P. Myers
**Subject:** Zaccaro Subpoena; EXP Response

Dear Mr. Walch:

   This e-mail follows our conversation of a few minutes ago.  Attached is the EXP response to the Subpoena along with 11 reports generated from the EXP software.  Please review and contact me at your earliest convenience.

   Chico

Chico Myers
Myers, Hawley, Morley, Myers & McDonnell
166 Main Street
Los Altos, CA 94022
Tel. 650-948-1600
Fax. 650-949-3581
e-mail: chicolaw@att.net

*******************

To comply with IRS regulations, we advise you that any discussion of federal tax issues in this email was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any

transaction or matter addressed herein.

For more information please go to http://www.lw.com/docs/irs.pdf

*******************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

Exhibit F

## SAMPLE SCREEN PRINTS

1.  **Facility and/or Wholesaler Information**

    This screen contains information about the pharmacy, facility or wholesaler being processed, including Name, Address, City, State, Zip, Phone Number, Fax Numbers, Contact Names, Contact Titles, DEA Number and may contain additional fields. OKAY TO RELEASE IF PUSHED/REQUIRED.

2.  **Manufacturer Direct Account Numbers**

    Pharmacies purchase certain items direct from the manufacturer. These direct account numbers may be identified and collected in the software. This screen may contain the manufacturer's information and the direct account number used by the pharmacy. EXP DOESN'T HAVE A SCREEN FOR THIS. THE DATA IS IN A REPORT.

3.  **Jobs/Orders**

    Lists the Jobs/Orders that were processed or are going to be processed. Usually identified by a Job/Order or Customer Number. EXP DOESN'T HAVE A SCREEN FOR THIS. THE DATA IS IN A REPORT.

4.  **Data Entry**

    This is where processors spend most of their time. At this screen, NDC number, expiration date, lot number, cost (perhaps) and/or quantity may be entered or collected either by 10 key data entry or scanning. May display information about the drug item including Description, Dosage Form, Package Size, Manufacturer, etc. CONFIDENTIAL INFORMATION.

5.  **Reports**

    Screen where the user would select the reports to be printed. OKAY TO RELEASE IF PUSHED/REQUIRED.

6.  **Manufacturer Information**

    This will include the names of pharmaceutical manufacturers and may also include a list of companies where the expired goods will be returned. It may also include name, address, phone numbers, fax numbers, and other contact info. OKAY TO RELEASE IF PUSHED/REQUIRED.

7.    **Manufacturer Outdate Policies**

This is the screen where the returns company may enter the policies that are established by the manufacturer. Included here may be details like how many months past expiration are acceptable for return, does the manufacturer accept partial containers, do they accept indated product, etc. CONFIDENTIAL INFORMATION.

8.    **Manufacturer/RGA Return Instructions**

Each manufacturer has specific instructions to follow when a packing list is printed by their processing software. These instructions may tell the employee what to do with the product and this information appears on the packing list. EXP DOESN'T HAVE A SCREEN FOR THIS.

9.    **Drug Information**

Each company uses some type of drug database either provided by Micromedex (Redbook), First Data Bank and others. This screen contains that drug information including NDC number, drug name, package size, pricing, dosage form, previous NDC number, DEA Number (if applicable) and other fields. CONFIDENTIAL INFORMATION.

10.   **Disposal Codes**

This is the screen where a company may identify their disposal codes that are applied to drugs in their drug database. OKAY TO RELEASE IF PUSHED/REQUIRED.

11.   **Re-sequencing Jobs/Lines**

When an item is deleted by a user, the item may no longer be seen but there may be a place holder for that item depending on the nature of the program. Running this feature may remove that space and then reorder the lines. EXP DOESN'T HAVE A SCREEN FOR THIS "PROCESS."

12.   **Create Merge/Backup File**

This feature relates to backing up data that has been entered by one person on a non-networked computer. Data may also need to be merged if multiple entries are made. EXP DOESN'T HAVE A SCREEN FOR THIS "PROCESS."

## SAMPLE SCREEN PRINTS

*Release*  **1.**  **Facility and/or Wholesaler Information**

This screen contains information about the pharmacy, facility or wholesaler being processed, including Name, Address, City, State, Zip, Phone Number, Fax Numbers, Contact Names, Contact Titles, DEA Number and may contain additional fields

*None (R)*  **2.**  **Manufacturer Direct Account Numbers**

Pharmacies purchase certain items direct from the manufacturer. These direct account numbers may be identified and collected in the software. This screen may contain the manufacturer's information and the direct account number used by the pharmacy.

*None (R)*  **3.**  **Jobs/Orders**

Lists the Jobs/Orders that were processed or are going to be processed. Usually identified by a Job/Order or Customer Number.

*T.S.*  **4.**  **Data Entry**

This is where processors spend most of their time. At this screen, NDC number, expiration date, lot number, cost (perhaps) and/or quantity may be entered or collected either by 10 key data entry or scanning. May display information about the drug item including Description, Dosage Form, Package Size, Manufacturer, etc.

*Release*  **5.**  **Reports**

Screen where the user would select the reports to be printed.

*Release*  **6.**  **Manufacturer Information**

This will include the names of pharmaceutical manufacturers and may also include a list of companies where the expired goods will be returned. It may also include name, address, phone numbers, fax numbers, and other contact info.

*T.S.*  **7.**  **Manufacturer Outdate Policies**

This is the screen where the returns company may enter the policies that are established by the manufacturer. Included here may be details like how many months past expiration are acceptable for return, does the manufacturer accept partial containers, do they accept indated product, etc.

*None*    **8.    Manufacturer/RGA Return Instructions**

Each manufacturer has specific instructions to follow when a packing list is printed by their processing software. These instructions may tell the employee what to do with the product and this information appears on the packing list.

*T.S.*    **9.    Drug Information**

Each company uses some type of drug database either provided by Micromedex (Redbook), First Data Bank and others. This screen contains that drug information including NDC number, drug name, package size, pricing, dosage form, previous NDC number, DEA Number (if applicable) and other fields.

*Release*    **10.    Disposal Codes**

This is the screen where a company may identify their disposal codes that are applied to drugs in their drug database.

*None*    **11.    Re-sequencing Jobs/Lines**

When an item is deleted by a user, the item may no longer be seen but there may be a place holder for that item depending on the nature of the program. Running this feature may remove that space and then reorder the lines.

*None*    **12.    Create Merge/Backup File**

This feature relates to backing up data that has been entered by one person on a non-networked computer. Data may also need to be merged if multiple entries are made.

## SAMPLE SCREEN PRINTS

1. **Facility and/or Wholesaler Information**

   This screen contains information about the pharmacy, facility or wholesaler being
   processed, including Name, Address, City, State, Zip, Phone Number, Fax Numbers,
   Contact Names, Contact Titles, DEA Number and may contain additional fields. OKAY
   TO RELEASE IF PUSHED/REQUIRED.

2. **Manufacturer Direct Account Numbers**

   Pharmacies purchase certain items direct from the manufacturer. These direct account
   numbers may be identified and collected in the software. This screen may contain the
   manufacturer's information and the direct account number used by the pharmacy. EXP
   DOESN'T HAVE A SCREEN FOR THIS. THE DATA IS IN A REPORT.

3. **Jobs/Orders**

   Lists the Jobs/Orders that were processed or are going to be processed. Usually
   identified by a Job/Order or Customer Number. EXP DOESN'T HAVE A SCREEN FOR
   THIS. THE DATA IS IN A REPORT.

4. **Data Entry**

   This is where processors spend most of their time. At this screen, NDC number,
   expiration date, lot number, cost (perhaps) and/or quantity may be entered or collected
   either by 10 key data entry or scanning. May display information about the drug item
   including Description, Dosage Form, Package Size, Manufacturer, etc.
   CONFIDENTIAL INFORMATION.

5. **Reports**

   Screen where the user would select the reports to be printed. OKAY TO RELEASE IF
   PUSHED/REQUIRED.

6. **Manufacturer Information**

   This will include the names of pharmaceutical manufacturers and may also include a list
   of companies where the expired goods will be returned. It may also include name,
   address, phone numbers, fax numbers, and other contact info. OKAY TO RELEASE IF
   PUSHED/REQUIRED.

7.    **Manufacturer Outdate Policies**

This is the screen where the returns company may enter the policies that are established by the manufacturer. Included here may be details like how many months past expiration are acceptable for return, does the manufacturer accept partial containers, do they accept indated product, etc. CONFIDENTIAL INFORMATION.

8.    **Manufacturer/RGA Return Instructions**

Each manufacturer has specific instructions to follow when a packing list is printed by their processing software. These instructions may tell the employee what to do with the product and this information appears on the packing list. EXP DOESN'T HAVE A SCREEN FOR THIS.

9.    **Drug Information**

Each company uses some type of drug database either provided by Micromedex (Redbook), First Data Bank and others. This screen contains that drug information including NDC number, drug name, package size, pricing, dosage form, previous NDC number, DEA Number (if applicable) and other fields. CONFIDENTIAL INFORMATION.

10.    **Disposal Codes**

This is the screen where a company may identify their disposal codes that are applied to drugs in their drug database. OKAY TO RELEASE IF PUSHED/REQUIRED.

11.    **Re-sequencing Jobs/Lines**

When an item is deleted by a user, the item may no longer be seen but there may be a place holder for that item depending on the nature of the program. Running this feature may remove that space and then reorder the lines. EXP DOESN'T HAVE A SCREEN FOR THIS "PROCESS."

12.    **Create Merge/Backup File**

This feature relates to backing up data that has been entered by one person on a non-networked computer. Data may also need to be merged if multiple entries are made. EXP DOESN'T HAVE A SCREEN FOR THIS "PROCESS."